Sterling then went on to summarise the relevant procedures for the Board as a whole, the Board's Audit, Compensation and Nominating Committees, Sterling's own responsibilities and authorities delegated to Sterling by contract, the need to comply with confidentiality and other restrictions and Company policies, the adopting of revenue and expense budgets and related performance management, requirements for significant payments and commitments and expense reimbursements, and preparations for meetings, including distribution of agendas, proper notice, etc. The effort was intended to remind everyone of the existing requirements and ensure that business was conducted accordingly and with less avoidable waste of time, effort and corporate funds. No one could thereafter deny knowledge of the procedures as an excuse, not that everyone wasn't already aware of the procedures.

As I have previously stated to all of the Board and to U.S. management, both common sense and our own Board and Board Committee rules dictate that proper, prudent procedures be followed in determining the personnel requirements for management and the Board, establishing search criteria, pursuing searches, establishing compensation structures, negotiating compensation, and ultimately selecting and approving the final candidates. Those procedures have been consistently ignored by Kevin Donovan and Eugene Christensen. The actions which they purport to have taken, with or without alleged authorisation of the Board, therefore, are improper and invalid, and subject them and others who have acted with them to potential liability. It is yet to be determined whether their efforts are part of a scheme to stack management and the Board with cronies of California management which has proven to be unequal to the task of operating the Company so that they might forestall investigation and correction by myself and others looking out for the best interests of the Company and its shareholders. If necessary, I will refer that matter to independent professionals and demand all communications and records pertaining to these matters be immediately furnished by Kevin Donovan, Eugene Christensen, and those others who they have involved in these processes.

I hope, Anna, that you now understand this situation more fully and the breadth of the disregard for corporate processes by Kevin Donovan and Eugene Christensen and are disavowing their efforts to retain not just the individuals to whom you referred in your letter but also Tom Schiff, a new CFO, and the so-called new directors who they are seeking to install. Otherwise, you will be subject to the same potential liabilities and, with knowledge of the procedures which have been disregarded and the improper conduct, insurance and indemnification is unlikely to protect against any liability. I would not want to see you in that position and hope that you will respond most quickly on this point as I believe that you have been misled up to now.

       8      <u>Poken</u>---I share all of your concerns regarding Poken. Yet again, this is an example of Kevin Donovan, apparently with Eugene Christensen's complicity based upon Eugene's approval of Kevin's conduct, acting to commit the Company to significant transaction and expense without proper discussion among Board members much less Board approvals and compliance with procedures. As I have previously written to Kevin Donovan, Eugene Christensen and others, I did not receive the alleged Poken agreements, purporting to be effective as of 12 October 2009, until 22 December so I certainly hadn't been part of any Board meeting approving Kevin Donovan entering into those alleged agreements either. There can be no question that an investment of the magnitude proposed should have had to have been formally approved by the Board of Directors. It is outrageous that Kevin Donovan and, apparently, Eugene Christensen have ignored this obvious requirement and, once again, attempted to rush commitments through without proper consideration or procedure.

Recently, I have received a number of emails from Kevin Donovan and/or Eugene Christensen, as well as Joe Zappulla who apparently was engaged to work on this matter some time ago---also without Board approval or authorisation of which I am aware---about how urgent it is to proceed with the Poken transaction. I have responded several times that I have no objection to doing a transaction with Poken provided that we have done proper due diligence so that we understand the business and the business plan and can make an informed decision on the matter as directors. I have finally received information which, upon review, raises many more questions. How can we possibly proceed without a reasonable and provable business plan for the initial joint venture?

The Poken transaction, and the conduct in trying to rush it through without proper procedure, evaluation and diligence, is symptomatic of a dangerous, improper and unacceptable pattern of conduct. Time after time we are advised of matters and instant action is demanded without proper procedures having been followed, using alleged "urgency" as a cover for disregard for those procedures. You will remember, I'm sure, that no more than 4 hours after the untimely death of Lord Steinberg his widow was harassed for statements concerning disposition of Lord Steinberg's estate before his body was even cold, insisted on immediate appointment of replacement Chairmen without notice or consideration due to alleged emergency, and even tried to push through a stock buyback plan without any preparation or notice. The Poken fiasco is only the latest instance of presentation of phoney emergencies in order to justify improper actions in violation of established procedures. The attempt to appoint a new CFO, the employment of consultants you mentioned, and elect new directors without proper procedures are just additional examples of this behaviour, and hardly the only ones.

Yesterday we received yet another demand for "urgent" action because of alleged shareholder questions about why there had not been more news concerning Poken, appointment of a CFO, negotiations with China Lot, and appointment of new Board members over 60 days after someone told shareholders about these things. Who authorised disclosures of sensitive business matters such as that? The Board certainly did not do so. I did not do so. I doubt that you did so (did you?). Disclosures on these matters apparently were made by Kevin Donovan without authorisation and in violation of Company policies, common sense and most likely SEC rules. On at least on one occasion he did so by volunteering to be interviewed on these sensitive matters by a serial blogger, of all things; it is right there on the Internet! This is hardly the only occasion of improper disclosure by Kevin Donovan. There appear to have been repeated leaks of market sensitive information. This can subject the Company and directors to liability. It also undermines our credibility with shareholders and potential investors. I am not certain of the degree to which Eugene Christensen is explicitly complicit in these disclosures, although he could be held responsible as Co-Chairman for allowing Kevin Donovan to proceed as Kevin has done despite my protests. These, too, are matters I will refer to the independent professionals I will arrange.

At this point I believe that the cumulative pattern of misconduct I have described is so serious that there should be immediate resignations from the Board by the responsible individuals. I am willing to negotiate an amicable departure by them because I believe it is in the best interests of the Company to do so. However, I can no longer stand by and allow these actions to ruin this Company and the shareholder value I have worked so hard to establish and grow.

      9.    <u>Indemnification</u>---Anna, I do not know any particulars concerning the indemnification matter of which you speak. If you have been promised an agreement and it has not been forthcoming then this is just another example of incompetence and improper conduct. However, I believe that the Company's standard form of contract includes an indemnification provision so you are probably already subject to an indemnification provision in your favour. I would be happy to discuss this matter further so that your concerns are addressed. However, again, anyone who has supported the improper conduct may have the same potential liabilities and may not have the benefit of indemnification, so it would be prudent for you to make your position clear. I would be happy to discuss this as well.

I am furnishing a copy of this letter to the other Board members as well in the hope that they will handle your requests appropriately and correct their improper conduct to date. However, appropriate measures will need to be taken if they do not do so.

Sincerely,

Lee Cole

1 - 5

**EXHIBIT 2**

Gentlemen:

I am in receipt of the minutes of the so-called February 22, 2010 board meeting and the so-called March 15, 2010 board meeting. I will limit my response at this time but, the tissue of misstatements and improper behaviour in which you continue to engage is breathtaking.

The minutes of meetings which were, respectively, one month ago and one week ago, were delivered in an untimely fashion obviously intended to preclude proper review and response. Delivery on Sunday the day before a Monday meeting is clearly unacceptable and part of your pattern of intentionally obstructive conduct.

The minutes of the February 22nd meeting state that you attempted to retain legal counsel and amend the Company bylaws. Once again, you have attempted actions without following appropriate procedures. Was a bylaws change considered and reviewed by the appropriate Board committee? Was engagement of counsel similarly considered by the appropriate Board committee? Has care been taken to analyze costs or conflicts of interest? Of course not; you persist in ignoring common sense and procedures as you continue unilaterally to take control of a public company without any reference or consideration for the company's procedure and byelaws or the shareholders...

Also, one notes that you apparently have filed a Form 8K on behalf of the Company; quite an interesting development, given the damage that misstatements in that Form 8K caused the Company as it was filed without circulation to the Board for comment and due authorisation. Perhaps, in your continued selective disclosure and secret and improper decision-making you forgot these points?

Your self-serving and self-aggrandizing misstatements and actions continue in the same pattern. S,. How could you possibly state in February 22nd minutes that "Mr. Cole had raised issues as to the validity of the January 7, 2010 meeting, but did not state any specific defect with respect to the notice or conduct of the meeting"? You have received lengthy written explanations of objections to that meeting, quite apart from our oral discussions, so it is appalling that you would state so blatant a falsehood as if making your untrue statement would somehow make it true.

The comments you make in the minutes about myself and audit matters at root are utterly false How can you suggest that I have not furnished financial information without acknowledging the numerous requests made to you for financial documentation in order to complete work on financials? Your failures to respond are documented. Your omission of these facts, and your refusal to furnish the relevant information, is all the more revealing in the context that we have repeatedly expressed our concern that you have inappropriately incurred substantial undisclosed liabilities in the name of the Company and otherwise.

However, if anything, those omissions by you pale in comparison to your brazen misstatement and mischaracterisation of dealings with the Company's accountants. As we have repeatedly informed you (and as the record clearly shows), there was no problem with completion of the Company's financial statements until you surreptitiously and (we believe) maliciously interfered with the audit process. You contacted banks directly, ignoring the CFO and the Audit Committee, acting upon misinformation and then, what is worse, conveyed that misinformation to the Company's auditors again without reference to the proper channels.. Your conduct in this regard is all the more shameful given that it your statement to the auditors that a bank account did not exist was subsequently proven to be incorrect and based upon a misunderstanding which arose when you acted outside the companies proper channels and contacted the bank directly rather than through or even with the myself as CFO. You need only have asked the question and irreparable harm to the Company and its shareholders could have been avoided. Instead, you clearly persist in an effort to seek, establish and, if possible, exaggerate problems to distract attention from your own non performance rather than to take actions in the best interest of the Company and its shareholders.

Your efforts in the February 22nd minutes to retroactively justify improper change of directors of Electronic Game Card Limited (which you initially undertook surreptitiously in December 2009 without any Board approval or discussion whatsoever) and to move accounts of that company failed to disguise actions which were so damaging to EGC. You were well aware of the underlying contracts which you have blatantly breached and yet you persisted in this conduct. You were warned repeatedly that you should not act in violation of contractual obligations and you chose to ignore the warnings and, thereby, incur liability for the damage to the Company and its shareholders. As if this were not enough, you ought to have known not to act to disrupt the company's European business relationships without prior discussion with those who are the generating the business, particularly as they are the only ones generating any income for the Company . Your failure to act sensibly merely emphasises our concern that you appear to be motivated by an agenda that is not to the benefit of the Company or its shareholders.

With regard to the SEC, the statements in the February 22nd minutes are deliberately misleading and false insofar as you neglected to mention the improper contacts by Mr. Donovan and Mr. Morgan with the SEC, in which the misinformation referred to above was apparently passed to the SEC, which have cause harm not only to the Company and its shareholders but to Sterling and Messrs. Cole and Boyne individually.

We will respond separately to the statements concerning Sterling received yesterday, with whose efforts you have consistently interfered despite our repeated requests that you cooperate as required under contract, and your apparently malicious and false statements concerning myself. Obviously, you do not have appropriate authority to simply interfere with the performance of Sterling's functions out of hand given contractual requirements. The suggestion to engage Mr. Schiff as a consultant or as CFO, given his earlier performance and this apparent improper engagement by the Co-Chairmen previously at an absurdly high cost and conflicts is unbelievable. Your continued repeated breaches, despite our best efforts to perform and our repeated requests for cooperation and proper procedure which you have ignored, can't be justified.

Finally, the statement in the February 22nd minutes you have made various unfulfilled requests for case studies, samples, etc. from the London office are patently false. In fact, the London office has provided numerous case studies, samples and pricings. The European business has been dealt with by Limited as provided under contract and confirmed, prior to his untimely demise, with Lord Steinberg, the past Chairman. Your statements are merely a smokescreen---and a poor one, at that---for the complete lack of performance by the U.S. operations and management.

Your misconduct continues to be reflected in the March 15th minutes. Have new Board members actually been appointed? After review and approvals by what committee of the Board? .

Oddly, the March 15th minutes appear to suggest that you did not remove myself as CFO at the so-called February 22nd meeting after all and fail to mention my resignation or the reason for my resignation.

Once again, what process has been followed with regard to approval of a package with Anna Houssel? Clearly it has not been reviewed by appropriate Board committees. Undoubtedly someone would have pointed out that the unrealistically lucrative, budget-busting settlement is problematic for someone who made no contribution to the revenue or income of the company.

Yet again, the March 15th minutes make false statements concerning myself. I have repeatedly requested information from the U.S. office since December, which has not been forthcoming and has repeatedly stated that the information was required in order to complete financial statements. After your failure to cooperate in timely fashion or at all, and your repeated and malicious interference in the audit process and incitement of the SEC, your assertions that I am somehow at fault are totally unacceptable.

The March 15th minutes again make ridiculous statements by suggesting that the complete failure of the U.S. operations and management to generate a single order for any product in the last year can be laid at the doorstep of the London office which had generated all of the Company's income. You statements that you have not had access to information are false and your attempt to excuse your total failure by blaming the only part of the organisation which has produced income is not credible..

I should add that Cole and I submitted our resignations as officers and Mr. Cole's resignation as a director of the Company on March 1 2010 but have nonetheless attempted to continue to assist the Company in good faith, despite your misconduct and lack of cooperation, under the Sterling contracts. Why have you not disclosed those resignations, or filed the appropriate Form 8Ks by now? Why has an 8K concerning the resignation by Ms. Houssels not been filed? You continue to compound your misconduct to the ultimate damage of the Company and its shareholders, but also the individuals in question. Clearly, you have engaged in selective (and frequently improper) disclosure for so long that you don't even feel the need to comply with any disclosure requirements.

Under the circumstances in which you continue to act so improperly I can't lend weight to your behaviour and schemes by participating in meetings with you and can only propose that in the interests of the company and the stockholders that you both resign without delay.

In the meantime, I am copying this to the individuals who you have indicated are being added to the Board in order that they will not suffer from selective disclosure by you of information and asked to act without relevant information.

Very truly yours,

Linden Boyne

2-2

## PROOF OF SERVICE VIA ELECTRONIC MAIL

I am employed in the County of New York, State of New York. I am over the age of eighteen (18) years and not a party to the within action. My business address is 350 Fifth Avenue, Suite 5508, New York, New York 10118.

On September 8, 2010, I served the following document described as:

**CONSOLIDATED AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

on counsel for the parties in this action, addressed as stated below:

Steven D. Hibbard, Esq.
SHEARMAN & STERLING, LLP
525 Market Street, Suite 1500
San Francisco, CA 94105
E-mail: shibbard@shearman.com

*Counsel for Defendants Electronic Game Card, Inc. and Kevin Donovan*

Jerome S. Fortinsky
Brian G. Burke
SHEARMAN & STERLING, LLP
599 Lexington Avenue
New York, NY 10022
E-mail: jfortinsky@shearman.com

*Counsel for Defendants Electronic Game Card, Inc. and Kevin Donovan*

**By Electronic Mail:** By e-mailing true and correct copies, pursuant to the agreement between the attached parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 8, 2010, in New York, New York.

_____
Ilya Glinchenko
The Rosen Law Firm, P.A.