**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES - GENERAL**

Case No. SACV 10-00252 DOC (RNBx)                                            Date: January 12, 2011

Title: DALTON PETRIE et. al. v. ELECTRONIC GAME CARD INC. et. al.

PRESENT:

                        THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                      NONE PRESENT

PROCEEDING (IN CHAMBERS): GRANTING IN PART AND DENYING IN PART DEFENDANT
                        EUGENE CHRISTIANSEN'S MOTION TO DISMISS

        Before the Court are Motions to Dismiss Plaintiffs' Consolidated Amended Complaint filed by Defendants Kevin Donovan, Eugene Christiansen, Paul Farrell, and Anna Houssels in the above-captioned case ("Motions to Dismiss") (Dockets 31, 36, 48 and 52, respectively). The Court finds these matters appropriate for decision without oral argument. Fed.R.Civ. P. 78; Local Rule 7-15. After reviewing the moving, opposing and replying papers thereon, and for the reasons set forth below, the Court hereby GRANTS in part and DENIES in part the Motions to Dismiss.

        **I.**     **BACKGROUND**

        This case is a purported class action filed by Lead Plaintiffs Dr. Thomas Lee, Margaret Yu and Scott Lovell ("Plaintiffs"). The facts, according to Plaintiffs' Consolidated Amended Complaint ("Complaint") (Docket 22) are as follows. Electronic Game Card Inc. ("EGC") is a small Company with no more than ten employees whose business consists of designing and manufacturing "scratch off" devices for various casinos, lotteries and other gaming establishments primarily in the United Kingdom and Europe. *Id.* at ¶ 2, 27. Nearly all of ECG's reported revenues were allegedly derived from its UK and European operating subsidiary, Electronic Game Card, Ltd. ("EGCL"), ¶ 2.

        During the purported class period, which the Complaint defines as lasting from April 5,

2007 to May 18, 2010, Plaintiffs contend that EGC engaged in a fraud to conceal from and misstate to EGC's investors the true financial condition and performance of EGC. *Id.* at ¶ 3. Of particular importance, Plaintiffs allege that EGC filed periodic reports with the SEC wherein EGC falsely represented that EGCL was owned by EGC, even though EGC's ownership was allegedly subject to a secret 2002 agreement signed by Defendant Linden Boyne ("Boyne") that could (and did) cause the company's ownership of EGCL to revert or transfer to a third party, allowing Boyne and his wholly-controlled entity, Greenfield Capital International Limited, to take full control of EGCL. *Id.* at ¶ 4, 48.

Plaintiffs filed suit against EGC, Boyne, Lee Cole ("Cole"), Kevin Donovan ("Donovan"), Eugene Christiansen ("Christiansen"), Anna Houssels ("Houssels"), and the Estate of Lord Leonard Steinberg ("Steinberg"). Boyne allegedly served as EGC's CFO and Secretary from the start of the purported class period until August 31, 2009. *Id.* at ¶ 30 Houssels allegedly became an EGC director in September 2008 and later, on February 1, 2009, Executive Vice President of Sales, until she resigned from the company on February 21, 2010. Farrell apparently served as an EGC director from October 2, 2008 until October 28, 2009. Donovan allegedly became EGC's CEO and director on February 1, 2009. *Id.* at ¶ 32. He replaced Cole, who had served in that capacity since 2003. *Id.* at ¶ 31.

The Complaint contains various allegations detailing the relationships of the parties to one another. The Complaint describes in particular detail the bitter infighting that allegedly took place between Cole and Boyne, on the one hand, and Donovan and Christiansen on the other.

Christiansen, Houssels, Farrell and Donovan (collectively, "Moving Defendants") bring the instant Motions to Dismiss, arguing that Plaintiffs' have failed to state a viable claim against them for violations of Section 10(b) of the Securities and Exchanges Act of 1934 and SEC Rule 10b-5 or for violations of Section 20(a) of the Securities and Exchanges Act.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possible liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court

to draw on its judicial experience and common sense. *Id.*

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

Moving Defendants request that the Court enter an order dismissing Plaintiffs' claims under Section 10(b) of the Securities and Exchanges Act of 1934 ("Section 10(b)") and SEC Rule 10b-5 ("Rule 10b-5"), as well as Plaintiffs' claims under Section 20(a) of the Securities and Exchanges Act ("Section 20(a)"). The Court addresses each cause of action in turn.[1]

#### Section 10(b) and Rule 10b-5 Claims

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege facts showing (1) a material misrepresentation, (2) scienter, (3) a connection with the purchase or sale of security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharms, Ins. v. Broudo*, 544 U.S. 336, 341 (2005). Under the heightened pleading standards of the Private Securities Litigation Reform Act ("PLSRA"), a securities fraud complaint must identify each alleged misrepresentation, specify the reasons it is misleading, and state with particularity facts giving rise to a strong inference that the defendant who made the misrepresentation acted with fraudulent intent. *Telllabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 321 (2007).

---

[1] Each of the parties also filed Requests for Judicial Notice. These request are GRANTED to the extent that they contain information relied on by the Court in the order and are otherwise DENIED AS MOOT.

> 1. **Christiansen**, **Houssels and Farrell**

With respect to Christiansen, Houssels and Farrell, Plaintiffs' Complaint fails to adequately allege the first requirement for Section 10(b) and Rule 10b-5 liability: the making of a material misrepresentation. The majority of the alleged misrepresentations referred to in the Complaint predated Christiansen's, Houssels's and Farrell's arrival at EGC. These Defendants may not be held liable for statements EGC made before they affiliated with the company. *See Middlesex Ret. Sys. v. Quest Software, Inc.*, 527 F. Supp. 2d 1164, 1191 (C.D. Cal. 2007).

The only misrepresentations allegedly made by EGC after Houssels, Christiansen and Farrell assumed their positions are: (1) a 10-Q form for the third quarter of 2008, (2) the 10-K and 10-Q forms filed in 2009, (3) a March 16, 2009 press release, (4) an October 13, 2009 8-K stating that EGC had signed a memorandum of understanding to form a strategic partnership with Poken Holding AG ("Poken 8-K"), and (5) a March 5, 2010 press release. Aside from the conclusory allegation that *all* defendants were involved in the preparation of *all* of the statements made during the class period, *see* Compl. at ¶¶ 42, 128, Plaintiffs have alleged no facts linking any of these alleged misrepresentations to Christiansen, Houssels or Farrell. For instance, Plaintiffs do not aver that any of these three Defendants signed any of the above-listed statements or authored the press releases. In fact, the Complaint specifically identifies other defendants as the signatories of the forms at issue. Compl. ¶¶ 46-83 (alleging that all 10-K and 10-Qs were signed by Cole and Boyne and that the 8-K regarding Poken was signed by former CEO Thomas Schiff).

In their Opposition, Plaintiffs ask the Court to infer liability on the basis of the "group pleading" doctrine. The group pleading doctrine, "in its broadest form allows unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004). The rise of the group pleading doctrine predated the passage of the PSLRA and the Supreme Court's decision in *Tellabs*. Subsequent to these developments, the doctrine's validity is questionable. *See, e.g. In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007) (holding that "the group pleading doctrine can no longer be used in pleading cases under the PSLRA" and noting that "[t]his view is shared by numerous district courts within this circuit."); *In re New Century*, 588 F. Supp. 2d 1206, 1223-24 (C.D. Cal. 2008) ("All of the Circuit courts that have expressly considered whether group pleading is compatible with PSLRA have concluded that it is not."). Although the Ninth Circuit has yet to squarely address the issue, the majority of district courts within the Circuit to confront the group pleading doctrine post-*Tellabs* have decided that the doctrine did not survive. *Id.* ("The majority of reported district court cases in the Ninth Circuit appear to hold that the doctrine is no longer viable."). The Central District of California, in particular, appears to be unanimous in this conclusion; neither Plaintiffs nor the Court have uncovered any post-*Tellabs* within-district case law holding to the contrary. This Court hereby joins the chorus of voices rejecting the continued viability of the group pleading doctrine. Plaintiffs' may not hold Christiansen, Houssels or Farrell liable on the basis of this theory.

      Plaintiffs contend that, group pleading notwithstanding, the Complaint states a viable claim against these Defendants because it contains allegations that EGC's board,"makes comments and must authorize" any document filed with the SEC.  Pl.'s Opp. at 8.  In advancing this argument, Plaintiffs misrepresent the contents of their Complaint.  Paragraph 108 of the Complaint, the portion to which Plaintiffs cite in their Opposition, merely states that Boyne once wrote a letter accusing Christiansen and Donovan of filing an 8-K without circulating it to the board.  This complaint on Boyne's part, which referred to an 8-K announcing Cole and Boyne's resignations and not any of the alleged misstatements identified in this case, does not amount to an allegation that the entire board, including Christiensen, Houssels and Farrell, reviewed the filings at issue in the litigation.  Nor does the inferred fact that Christiansen and Donovan helped to draft this specific 8-K (one that is not alleged to contain a misrepresentation) trigger a plausible inference that they were involved in the preparation of the filings that give rise to this litigation.

      Plaintiffs advance another argument attempting to link Christiansen (and Donovan) to the Poken 8-K.  Plaintiffs cite to a letter written by Cole wherein Cole complained that Christiansen and Donovan caused EGC's actions as to Poken without consulting with the board.  Compl., ¶¶ 83-84.  In the cited letter, however, Cole does not accuse Christiansen or Donovan of participating in preparing the Poken 8-K.  Rather, Cole accuses Donovan of entering into the Poken agreement without following certain procedures and notes, in passing, that Christiansen "apparently" endorsed this agreement.  Plaintiffs' speculation that Christiansen and Donovan were involved in issuing the Poken 8-K is thus based on nothing more than Cole's conjecture that they were involved in the making of the underlying agreement.  This kind of speculative pleading, with allegations far attenuated from any underlying facts, does not satisfy the heightened pleading standards of the PSLRA.  *See In re VISX, Inc. Sec. Litig.*, 2001 WL 210481 at *9 (N.D. Cal. Feb. 27, 2001) (holding that claims based on "mere speculation" are insufficient to state a claim under the PSLRA).

      Plaintiffs have failed to state a viable claim against Christiansen, Houssels or Farrell for a violation of Section 10(b) or Rule 10b-5.  Christiansen's, Houssels's and Farrell's Motions to Dismiss are thus GRANTED with respect to these claims.  Plaintiffs' Section 10(b) and Rule 10b-5 claims against these Defendants are DISMISSED WITH LEAVE TO AMEND.

      **2.**    **Donovan**

      For the reasons expressed above, Plaintiffs may not rely on the group pleading doctrine to state a viable case against Donovan.  Nor may Donovan be held liable for ECG's statements prior to his arrival at the company in February of 2009.  Unlike the other three Moving Defendants, however, Donovan is affirmatively identified as the author of at least one alleged misstatement from 2009.  The alleged misstatement is contained in a March 16, 2009 press release wherein Donovan is quoted as stating that "2008 marked the Company's second successful profitable growth year.  Our balance sheet

is strong and our net cash balance is building consistently."[2]  Compl., ¶¶ 71-72.

Donovan resists the imputation of liability on the basis of this statement, contending that this statement constitutes mere "puffery" and thus is not actionable as a securities violation.  "[V]ague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws."  *In re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) (citing *Glen Holly Entm't, Inc. v. Tektronix, Inc*., 352 F.3d 367, 379 (9th Cir. 2003)).  When "determining whether generalized expressions of optimism are actionable, the defining question is 'whether the statement is so 'exaggerated' or 'vague' that no reasonable investor would rely on it when considering the total mix of available information.'"  *Id.* (quoting *In re Splash Technology Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1076-77 (N.D. Cal. 2001).  Courts have held that such phrases as "strong," "better than expected," "robust," "well-positioned," "solid," and "improved" when used to describe demands, results and growth strategy are not actionable as material misrepresentations.  *Id.  See also In re Cornerstone Propane Partners, L.P. Sec. Litig.,* 335 F. Supp. 2d 1069, 1087-88 (N.D. Cal. 2005) (finding that CEO's statements describing "record achievements" and attributing a company's accomplishments to "continuing improvements in operations and increased cash flows from acquisitions and internal growth" were "mere puffing" because they were "not capable of objective verification."); *In re Downey Sec. Litig.*, 2009 Wl 2767670, at *5 (C.D. Cal. 2009) (holding that statements of a company's "strong" capital position were "far too vague to be actionable under the PSLRA"); *In re Calpine Corp.*, 288 F. Supp. 2d 1054, 1088 (N.D. Cal. 2003) (holding that words such as "strong," "healthy" and "solid" could not form a basis for Section 10(b) claims)).  Considered against this backdrop, Donovan's statement about ECG's "strong" balance sheet is precisely the type of vague, generalized assertion that does not trigger liability under Section 10(b) or Rule 10b-5.  The Section 10(b) and Rule 10b-5 claim against Donovan consequently fails.

Donovan's Motion to Dismiss is GRANTED with respect to the Section 10(b) and Rule 10b-5 claim against him.  This claim is DISMISSED WITH LEAVE TO AMEND.

### Section 20(a) Claims

Liability under Section 20(a) of the Securities and Exchanges Act of 1934 ("Section 20(a)"), often referred to as "control person liability," requires a plaintiff to show (1) the commission of a primary violation and (2) that the defendant directly or indirectly exercised control over the violator.  *Paracor Fin, Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).  The Complaint need not plead the control person's scienter or that the control person was a culpable participant in the alleged

---

[2] Plaintiffs attempt to add a host of new allegations against Donovan by way of their Opposition.  "[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."  *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984).  The Court declines to consider these new allegations.

wrongdoing. Moving Defendants contend that Plaintiffs' allegations fail with respect to each required element of the claim.

### 1. Primary Violation

Moving Defendants argue first that the Complaint fails to adequately allege EGC's scienter, a prerequisite to the finding of a primary violation. This argument gains no traction. None of the Moving Defendants contest the notion that the Complaint contains viable allegations of Boyne's and Cole's scienter, which may be imputed to EGC. *In re CV Therapeutics Sec. Litig.*, 2004 WL 1753251 (N.D. Cal. Aug. 5, 2005) (citing *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1433-35 (9th Cir. 1995)). A primary violation is adequately pleaded.

### 2. Control Person Status

Moving Defendants further submit that the Complaint does not adequately plead their status as control persons. This argument fails as well. The Court applies the pleading standards of Fed. R. Civ. P. 8(a) to Plaintiffs' control person allegations, as opposed to the more demanding standard of the PSLRA or Fed. R. Civ. P. 9(b). Although there exists some low-level disagreement on whether this is the appropriate standard, the weight of recent case law indicates that it is. In any event, the Court concludes that the line of cases applying Rule 8(a) to control person allegations is better reasoned than the line of cases to the contrary. *See Teamsters Local 617 Pension and Welfare Funds v. Apollo Group*, 690 F. Supp. 2d 959, 965-72 (providing an in-depth discussion of the relevant cases).

Under the relatively lenient standards of Rule 8(a), Plaintiffs' Complaint successfully alleges each Moving Defendants' status as a control person. According to the Complaint, each Moving Defendant served as either an officer or director to ECG. Although status as an officer or director does not alone create a presumption of control, *see Paracor*, 96 F.3d at 1163, this allegation carries considerable weight at the pleading stage. In conjunction with the allegations that ECG was a small company with no more than ten employees, Compl. ¶ 2, and that each Moving Defendant participated in the company's day-to-day operations, Compl.¶ 42, the Court finds Plaintiffs' control person allegations sufficiently plausible to survive a motion to dismiss.

Accordingly, Moving Defendants' Motions to Dismiss are DENIED with respect to Plaintiffs' claims under Section 20(a).

### IV.   DISPOSITION

For the foregoing reasons, Moving Defendants' Motions to Dismiss are GRANTED with respect to Plaintiffs' claims under Section 10(b) of the Securities and Exchanges Act of 1934 and SEC Rule 10b-5. The Court hereby orders that these claims be DISMISSED WITH LEAVE TO AMEND.

Moving Defendants' Motions to Dismiss are DENIED with respect to Plaintiffs' claims under Section 20(a) of the Securities and Exchanges Act of 1934.

Plaintiffs' shall file any amended complaint no later than February 16, 2011.

The Clerk shall serve this minute order on all parties to the action.