1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stephen D. Hibbard (SBN 177865)
SHEARMAN & STERLING LLP
525 Market Street, Suite 1500
San Francisco, CA  94105
Telephone: (415) 616-1100
Facsimile: (415) 616-1199
Email: shibbard@shearman.com

*Attorneys for Defendant Kevin Donovan*

Additional counsel listed on signature page

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| DALTON PETRIE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>ELECTRONIC GAME CARD, INC., LEE J. COLE, LINDEN BOYNE, KEVIN DONOVAN, PAUL FARRELL, EUGENE CHRISTIANSEN, ANNA HOUSSELS, AND THE ESTATE OF LORD LEONARD STEINBERG AND DOMINIC BURKE, LYNNE ROCHELLE ATTIAS, AND JONATHAN STEINBERG AS EXECUTORS/TRUSTEES/ REPRESENTATIVES OF THE ESTATE OF LORD STEINBERG,<br><br>                    Defendants. | CASE NO. SACV 10-0252 DOC (RNBx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT KEVIN DONOVAN'S MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. David O. Carter<br>Courtroom: 9D<br>Hearing Date: May 16, 2011<br>Hearing Time: 8:30 a.m. |

1

# TABLE OF CONTENTS

2

3

STATEMENT OF FACTS ...........................................................................4

4

ARGUMENT ............................................................................................8

5

I.     THE SECTION 10(b) CLAIM FAILS BECAUSE THE PLAINTIFFS

6

        HAVE NOT ADEQUATELY ALLEGED THAT DONOVAN ACTED

        WITH FRAUDULENT INTENT .................................................8

7

        A.     The Plaintiffs Rely On The Rejected Group Pleading Doctrine

8

                To Allege Donovan's Fraudulent Intent .................................11

9

        B.     The Allegations Do Not Give Rise To A Strong Inference That

10

                Donovan Acted With Fraudulent Intent.................................14

11

CONCLUSION.......................................................................................23

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)................................. 12

*In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833 (N.D. Cal. 2000) ................. 20

*Carol Gamble Trust 86 v. E-Rex, Inc.*, 84 F. App'x 975 (9th Cir. 2004) ............... 13

*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005) ........................................ 9, 21

*In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL 2767670
    (C.D. Cal. Aug. 21, 2009) ............................................................................ 19

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627,
    161 L. Ed. 2d 577 (2005) ............................................................................... 8

*Gebhart v. S.E.C.*, 595 F.3d 1034 (9th Cir. 2010),
    *cert. denied*, 130 S. Ct. 3485, 177 L. Ed. 2d 1059 (2010) ........................... 14

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002)........................................... 22

*Hamilton v. Aubrey*, No. CV 07-01413, 2008 WL 1774469
    (D. Nev. Apr. 15, 2008)................................................................................. 9

*In re HiEnergy Techs., Inc. Sec. Litig.*, No. SACV 04-1226 DOC (JTLX),
    2005 WL 3071250 (C.D. Cal. Oct. 25, 2005) ....................................... 15, 16

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ....................................................... 4

*Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464 (9th Cir. 2000) ................ 10

*Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164
    (C.D. Cal. 2007) ....................................................................................... 9, 16

*In re Oak Tech. Sec. Litig.*, No. 96-20552 SW, 1997 WL 448168
    (N.D. Cal. Aug. 1, 1997) .............................................................................. 20

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995)....................... 4

*South Ferry LP, #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008).............................. 20

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353
    (5th Cir. 2004) ............................................................................................. 13

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059
  (N.D. Cal. 2001) ........................................................................... 20

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001),
  *amended by* 275 F.3d 1187 (9th Cir. 2001) .............................. 9, 10

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998).............................. 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,
  127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ................................... 9, 10, 14, 19

*In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165 (D.N.M. 2010) .... 13

*Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998) .............................. 12

*In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148 (C.D. Cal. 2007)................ 21

*In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994)......................... 21

*Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir. 1999)........................................ 17

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009)..........*passim*

## STATUTES

15 U.S.C. § 78u-4(b)(2) ........................................................................... 14

Securities Exchange Act of 1934 § 10(b)........................................................*passim*

The Second Consolidated Amended Complaint (the "Second Amended Complaint") is the plaintiffs' *third* attempt to state a securities fraud claim against defendant Kevin Donovan.  Yet they still offer no basis to suggest that Donovan, who they themselves portray as fighting against the two defendants that the plaintiffs place at the center of the alleged fraud, ever acted with any fraudulent intent.  Indeed, the most striking feature of the Second Amended Complaint is its overwhelming similarity to the plaintiffs' Consolidated Amended Complaint (the "First Amended Complaint"), which the Court held failed to state a Section 10(b) claim against Donovan.  The only new material involving Donovan is the plaintiffs' allegation that, toward the end of the class period, Donovan played a role in transmitting the company's financial results, which were prepared by others, and which the plaintiffs cannot say Donovan knew to be untrue.  By this point, on their third try, it is undeniable that the plaintiffs not only have not stated a Section 10(b) claim against Donovan, but that they cannot.

The Second Amended Complaint tells the now-familiar story of two former officers and directors of Electronic Game Card, Inc. ("EGC") – former chief executive officer Lee Cole and former chief financial officer Linden Boyne – who devised a scheme to protect their control over $12.9 million in assets held by EGC through its U.K. subsidiary, Electronic Game Card (U.K.) Limited ("EGCL"), and essentially to steal these assets from EGC shareholders.  The Second Amended

Complaint makes no allegation that Donovan participated in this scheme, and it does not adequately allege that he acted with the requisite fraudulent intent.

Cole and Boyne both joined EGC in 2003 as directors of what was then a three-member board, and they enjoyed unchallenged control over EGC for several years thereafter – most of the class period.  Cole and Boyne also held the positions of CEO and CFO, respectively, since before the class period.  In 2008, Lord Leonard Steinberg, a member of the House of Lords and a successful businessman who had accumulated a substantial position in EGC's common stock, joined the company as Executive Chairman and proceeded to nominate new directors.  In February 2009, Donovan was named chief executive officer and a director of EGC. Lord Steinberg died in November 2009.

After Lord Steinberg's death, Boyne, according to the Second Amended Complaint, made it known that, under the terms of a "secret" 2002 agreement, control over EGCL, EGC's only operating subsidiary and the source of nearly all its revenues, had reverted to Boyne himself and his affiliate Greenfield Capital International Limited ("Greenfield").  As a result, Boyne asserted, EGC no longer owned either EGCL or the $12.9 million in assets, nearly all cash.

Even though the plaintiffs, in effect, allege that what they call "Boyne's group" absconded with almost $13 million in cash, and even though they do not and cannot assert that Donovan was part of "Boyne's group," they have nevertheless

asserted securities fraud claims against him under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934.[1]  They seek to hold Donovan liable based merely on a few instances in which he simply repeated earnings figures determined and prepared by Cole and Boyne.  But the plaintiffs allege no facts to suggest that Donovan ever knew about the purported "secret" agreement, or the alleged scheme for that matter, and they fail to allege with any particularity facts giving rise to a strong inference that Donovan acted with fraudulent intent.  As a whole, the facts alleged in the Second Amended Complaint give rise to a far stronger inference that Donovan did not participate in the fraud, but instead tried to prevent it.

After three attempts, the plaintiffs are still unable to state a Section 10(b) claim against Donovan.  Dismissal with prejudice is therefore appropriate.[2]

---

[1]  The claims also are asserted under SEC Rule 10b-5, which Donovan moves to dismiss by this motion for the reasons set forth herein.

[2]  This motion to dismiss applies to all Section 10(b) and Rule 10b-5 claims against Donovan in all actions that have been consolidated in the above-captioned proceeding, including *Burns v. Electronic Game Card, Inc., et al.*, SACV 10-0258 DOC (RNBx).

## STATEMENT OF FACTS

A.    BACKGROUND

Electronic Game Card, Inc. is a Nevada corporation engaged in the design and manufacture of gaming devices for use in casinos and lotteries in the United Kingdom and Europe.  SAC ¶¶ 2, 27.[3]  As alleged in the Second Amended Complaint, Boyne (who is named as a defendant in this litigation) was the CFO and Secretary of EGC during the class period, and served as a director of EGC since 2003.  Id. ¶ 32.  Like Boyne, Cole (also a defendant) served as a director of EGC since 2003, and was CEO and a member of the company's Audit and Compensation Committees during the class period.  Id. ¶ 33.  Cole and Boyne allegedly signed all but one of the SEC filings and Sarbanes-Oxley certifications that the plaintiffs claim

---

[3]    Citations to "SAC" refer to the Second Amended Complaint; citations to "Fortinsky Decl." refer to the Declaration of Jerome S. Fortinsky, dated March 14, 2011, and exhibits thereto.  The Second Amended Complaint is attached as Exhibit A to the Fortinsky Declaration.  Unless indicated otherwise, the facts recited herein are taken from the Second Amended Complaint and are assumed to be true for purposes of this motion only.  Certain facts are also taken from documents incorporated or referred to in the Second Amended Complaint or from public documents of which judicial notice may be taken.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (holding that a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."); *see* Defendant Kevin Donovan's Request for Judicial Notice, dated March 14, 2011 (filed concurrently herewith).  Although the plaintiffs repeatedly refer to five "exhibits" attached to the Second Amended Complaint, no exhibits were filed with the Second Amended Complaint.  For purposes of this motion, the referenced exhibits are assumed to be the same as those attached to the First Amended Complaint filed on September 13, 2010 (Docket No. 22).

were misleading.  *See id.* ¶¶ 65-106.[4]

According to the Second Amended Complaint, EGC acquired EGCL in a share exchange transaction in 2003.  *Id.* ¶ 28.  Prior to the acquisition, Boyne was a director of EGCL (and its predecessor).  *See id.* ¶ 35.  EGCL's operations in the U.K. supplied nearly all of EGC's revenues during the class period, and its $12.9 million constituted nearly all of EGC's cash and cash equivalents.  *Id.* ¶¶ 2, 41b.  Thus, EGCL was EGC's most valuable asset.  *See id.* ¶¶ 2, 59a.  According to the plaintiffs, prior to joining EGC's board in 2003, Boyne entered into a "secret" agreement in 2002 pursuant to which he could assert control of EGCL and all of its assets under certain circumstances.  *Id.* ¶¶ 4-5.

In late 2007, Lord Steinberg, a member of the House of Lords and a successful businessman in the gaming industry, expressed an interest in investing in and restructuring EGC.  *Id.* ¶ 37.  Over the next several months, Lord Steinberg began to accumulate a large ownership position in EGC, ultimately acquiring over 16 percent of the company's outstanding stock.  *Id.* ¶¶ 38, 59.  In September 2008, Lord Steinberg became Chairman of EGC's board and served in that position until his death on November 2, 2009.  *Id.* ¶ 36.

Upon assuming the title of Chairman, Lord Steinberg nominated Eugene

---

[4]   The only SEC filing that Cole and Boyne did not sign was the October 13, 2009 Form 8-K allegedly signed by nonparty Thomas Schiff.  SAC ¶ 114.

Christiansen and Anna Houssels to serve as EGC directors.  *Id.* ¶ 59.  Lord Steinberg also selected Donovan to serve as EGC's CEO and a director.  *Id.* Donovan, who replaced Cole as CEO on February 1, 2009, was the last of the defendants to join EGC.  *See id.* ¶¶ 33-34.  Donovan and Houssels operated out of their residences in California and Christiansen was based in New York.  *See id.* ¶ 59.

According to the plaintiffs, a bitter power struggle ensued between the two groups of EGC directors following Lord Steinberg's death, complete with "corporate in-fighting" and accusations of "malicious interference."  *Id.* ¶¶ 35, 140 (at p. 47).  On one side were the entrenched London-based directors Cole and Boyne, who had enjoyed uninterrupted control of EGC and EGCL since 2003.  On the other side were the newly appointed U.S.-based directors nominated by Lord Steinberg.  At the center of the dispute was the control of EGC's most valuable asset, EGCL, and its $12.9 million in cash.  On January 28, 2010, Donovan and Christiansen replaced Boyne and Greenfield as directors of EGCL, but were ousted a week later when Boyne reinstated himself and Greenfield as EGCL directors on February 4, 2010.  *See id.* ¶ 35.[5]  During the dispute, Cole accused Donovan of

_____

[5]  The Second Amended Complaint alleges that Donovan and Christiansen replaced Boyne and Greenfield as directors of EGCL on December 28, 2009.  SAC ¶ 35. But the "Current Appointments Report" attached as Exhibit 4 to First Amended Complaint reflects that Donovan and Christiansen became directors of EGCL on January 28, 2010.  *See* First Amended Complaint Ex. 4 at p. 5.

"interfer[ing]" in EGC's affairs and acting with a "lack of authority."  *Id.* ¶ 140 (at pp. 42-43).

At around this time, according to the Second Amended Complaint, Linden Boyne invoked his rights under the "secret" 2002 agreement to assert full control over EGCL.  *Id.* ¶¶ 12, 67.  On May 18, 2010, EGC issued a press release stating that Boyne asserted that EGC no longer owned EGCL and its assets, including the $12.9 million in cash.  *Id.*  Specifically, the press release stated as follows:

> While [Boyne] has stated that the R.I.C. investment account exists and had a balance of $12.9 million as of February 26, 2010, he asserts that [EGC] does not own the funds in the R.I.C. account because [EGC] no longer owns EGCL.  This assertion is based on a document described as a 2002 agreement entered into among [EGC], EGCL and the original (unidentified) sellers of EGCL to [EGC].

*Id.* ¶ 134.  The press release, which the plaintiffs do not allege was false, also stated that the EGC directors and management at the time (*i.e.*, all defendants other than Cole and Boyne) were previously unaware of the 2002 agreement.  *Id.* ¶¶ 67, 134. According to the Second Amended Complaint, Boyne and his group ultimately succeeded in regaining full control over EGCL as of May 2, 2010.  *Id.*  As a direct result, lacking cash and unable to pay its bills, EGC filed a Chapter 7 Petition for liquidation in the United States Bankruptcy Court for the District of Nevada on

1   September 28, 2010.  *See* Fortinsky Decl. Ex. B (Suggestion of Bankruptcy and

2   Chapter 7 Petition, filed Sept. 29, 2010 (Docket No. 26)).

3
4       B.      PROCEDURAL HISTORY

5           These actions were originally filed in March 2010 and were consolidated on

6   June 4, 2010.  Donovan (among others) moved to dismiss the First Amended

7
8   Complaint on October 8, 2010 and the motions were fully briefed on November 23,

9   2010.  On January 12, 2011, the Court entered an order (the "Order") dismissing the

10  Section 10(b) and Rule 10b-5 claims against Donovan (and others) for failure to

11  state a claim, and sustaining the Section 20(a) claims (*see* Docket No. 80).  The

12
13  Court gave the plaintiffs permission to file an amended complaint.

14                          **ARGUMENT**

15
16  **I.    THE SECTION 10(b) CLAIM FAILS BECAUSE THE PLAINTIFFS**
        **HAVE NOT ADEQUATELY ALLEGED THAT DONOVAN ACTED**
17      **WITH FRAUDULENT INTENT**

18          To state a claim for securities fraud under Section 10(b), a plaintiff must

19  allege facts showing (1) a material misrepresentation, (2) scienter, (3) a connection

20  with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss

21
22  causation.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341, 125 S. Ct. 1627, 1631,

23  161 L. Ed. 2d 577, 580 (2005).  Under the heightened pleading standards of the

24  Private Securities Litigation Reform Act (the "PSLRA"), a securities fraud

25
26  complaint must identify each alleged misrepresentation, specify the reasons why it

27

28  _____

is misleading, and state with particularity facts giving rise to a strong inference that the defendant who made the misrepresentation acted with fraudulent intent (*i.e.*, scienter).  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179, 191 (2007); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-91 (9th Cir. 2009).  A complaint must plead with particularity *both* the allegation of falsity and the allegation of fraudulent intent.  *Zucco*, 552 F.3d at 990.[6]

To plead fraudulent intent in the Ninth Circuit, a complaint must allege particularized facts that demonstrate a defendant made a false or misleading statement "'either intentionally or with deliberate recklessness.'"  *Zucco*, 552 F.3d at 991 (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005)).  In turn, "deliberate recklessness" is defined as "a form of intentional or knowing misconduct."  *Zucco*, 552 F.3d at 991.  As this Court has explained, a plaintiff must "state specific facts indicating no less than a degree of recklessness that *strongly suggests actual intent*."  *Middlesex Ret. Sys. v. Quest Software Inc.*,

---

[6]  When addressing the sufficiency of a complaint, a court need only accept allegations that are well-pleaded, and should disregard conclusory allegations, unwarranted deductions of fact or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (9th Cir. 2001).  A court may reject allegations that are either internally inconsistent or contradicted by documents referred to in the complaint.  *Hamilton v. Aubrey*, No. CV 07-01413, 2008 WL 1774469, at *1 (D. Nev. Apr. 15, 2008).  Furthermore, a plaintiff can "plead himself out of a claim" by including facts contrary to his claims.  *Sprewell*, 266 F.3d at 988 (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998)).

527 F. Supp. 2d 1164, 1179 (C.D. Cal. 2007) (Carter, J.) (internal quotation omitted) (emphasis added).  In addressing a defendant's state of mind, a court must take into account all plausible opposing inferences raised by the facts in the complaint.  *Tellabs*, 551 U.S. at 310.  Where, as here, a complaint affirmatively alleges facts that undermine a strong inference of scienter, dismissal is appropriate.  *See Sprewell*, 266 F.3d at 988.

The Court has already ruled that Donovan cannot be liable under Section 10(b) for statements made by other defendants or made prior to his arrival at EGC.  Order at 5 ("Plaintiffs may not rely on the group pleading doctrine to state a viable case against Donovan.  Nor may Donovan be held liable for EGC's statements prior to his arrival at the company in February of 2009.").  The Court also has held that Donovan's statements in the March 16, 2009 press release are not actionable, and that the allegation concerning the March 5, 2010 press release fails to state a claim.  *Id.* at 4-6.  To the extent that the Second Amended Complaint repeats such alleged statements as a basis for Section 10(b) liability against Donovan, those allegations fail to state a claim under both the PSLRA and the law-of-the-case doctrine.  *See Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 469 (9th Cir. 2000) ("[A] court is generally precluded from reconsidering an issue that has already been decided by the same court" because of the law-of-the-case doctrine.).

The Second Amended Complaint includes only two new categories of alleged

misstatements by Donovan: (i) statements made on earnings calls between March and November 2009, and (ii) statements in an August 6, 2009 press release.[7]  On the earnings calls, Donovan merely repeated the financial results reported in the company's SEC filings; in the press release, Donovan characterized EGC's second quarter 2009 earnings and repeated the financial results as reported to the SEC.[8]  The plaintiffs have failed to allege that Donovan acted with the requisite fraudulent with respect to either of these two categories of statements, and the Section 10(b) claim against him must therefore be dismissed.

### A.    The Plaintiffs Rely On The Rejected Group Pleading Doctrine To Allege Donovan's Fraudulent Intent

This Court expressly rejected the "group pleading doctrine" in its Order dismissing the Section 10(b) claim against Donovan.  Order at 4 ("This Court hereby joins the chorus of voices rejecting the continued viability of the group pleading doctrine").  Once again, however, the plaintiffs have attempted to allege that Donovan acted with fraudulent intent by grouping him together with the so-

---

[7]  SAC ¶¶ 92, 99, 108, 110, 112.

[8]  In the August 6, 2009 press release, Donovan commented on the company's "continued improvement" and "solid financial base."  *Id.* ¶ 110.  These statements are nearly identical to the statements of "puffery" in the March 16, 2009 press release that this Court has already held are not actionable, and they likewise fail to trigger Section 10(b) liability for Donovan.  *Compare id.* ¶ 110 *with* ¶ 91; *see* Order at 5-6 (holding that Donovan's statement describing earnings as "successful," "profitable," "strong," and "building consistently" did not trigger liability under Section 10(b) or Rule 10b-5).  The remaining statements by Donovan in the press release are merely a recitation of the company's financial results, which, for the reasons addressed herein, the plaintiffs have failed to allege that Donovan made with fraudulent intent.  *See* SAC ¶ 110.

called "Section 10(b) Defendants" – no fewer than seven individuals and entities –

and alleging that they all acted "knowingly and recklessly."  SAC ¶ 166.  The

plaintiffs also allege that the group of "Section 10(b) Defendants had actual

knowledge of the misrepresentations and omissions . . . or acted with reckless

disregard for the truth."[9]  *Id.*  Even the section of the Second Amended Complaint

supposedly devoted to scienter allegations (*id.* § VI ¶¶ 138-49) is almost entirely

undifferentiated pleading.  The allegations in that section refer to Donovan

individually just three times, and those allegations do not support the inference that

he intended to defraud EGC's shareholders.[10]  The remaining allegations in that

section constitute group pleading, do not concern Donovan or are self-serving

accusations by Cole and Boyne, whom the plaintiffs themselves accuse of making

more false statements than any other defendant.[11]

---

[9]   These allegations are also conclusory and merely recite the elements necessary to
make out a Section 10(b) claim; as such, they "are not entitled to the assumption
of truth" upon a motion to dismiss.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940,
173 L. Ed. 2d 868, 874-75 (2009).

[10]   In the three instances where Donovan is identified by name, the plaintiffs
(1) quote his statements in press releases to show that senior management had
access to financial information (*id.* ¶ 143), (2) state that he did not sign Sarbanes-
Oxley certifications (*id.* ¶ 145), and (3) allege that he "never instituted legal
process" to prevent EGCL's transfer (*id.* ¶ 146) – without explaining how any of
the foregoing "facts" indicate his fraudulent intent.

[11]   The plaintiffs have added an allegation that Boyne resigned on March 1, 2010 as
evidence that he "did not author or sign" the March 5, 2010 press release.  *Id.*
¶ 130.  That press release states that "[EGC] believes that there will be no
material change to the Company's net asset value upon the completion of the
review of its financial statement by its independent accountant."  *Id.* ¶ 127.  But
the plaintiffs do not allege that any other defendant, let alone Donovan, had a
role in preparing or drafting this press release.  The Court has already rejected

---

DEFENDANT KEVIN DONOVAN'S MPA                    CASE NO. SACV 10-0252 DOC (RNBx)
IN SUPPORT OF MOTION TO DISMISS SAC  12

As with the First Amended Complaint, these undifferentiated allegations fail to state a claim against Donovan under the PSLRA. *See Carol Gamble Trust 86 v. E-Rex, Inc.*, 84 F. App'x 975, 977 (9th Cir. 2004) (rejecting "blanket assertions that *all* defendants are liable for false and misleading statements" and holding that the PSLRA requires plaintiff to plead "*specific* facts" for each of the named defendants). On the contrary, "the PSLRA demands that the facts giving rise to the necessary inference of scienter be pled with particularity as to each defendant." *In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1200 (D.N.M. 2010) (considering only "scienter allegations that are specific as to an actor" rather than those that were group-pled). Where, as here, multiple defendants are facing Section 10(b) claims, there is a particular danger of guilt by association, which is why "[t]he PSLRA requires . . . plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (noting that the "'group pleading' doctrine conflicts with the scienter requirement of the

this allegation as impermissible group-pleading. Order at 4. Even if group pleading were permissible, the notion that Donovan authored the press release is contradicted by the document itself, which lists Boyne as the only contact person. Fortinsky Decl. Ex. C. Likewise, the plaintiffs' allegation that Boyne resigned on March 1, 2010 is further undermined by the fact that the March 5 press release identifies Boyne as the Interim CFO (*see id.*), and Boyne himself stated that he continued to "assist" EGC after his resignation (SAC ¶ 140b (at p. 47)). Finally, regardless of authorship, the press release is nothing more than a vague statement of opinion that is not actionable under Section 10(b). *See Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1247 (N.D. Cal. 1998) (holding that vague statements of opinion are not actionable because they are discounted by the market as mere "puffing").

PSLRA").  The plaintiffs have had two opportunities to amend these allegations, this last time with notice that the Court had rejected the group pleading doctrine. Their failure to do so requires dismissal of the Section 10(b) claim against Donovan with prejudice.

### B.    The Allegations Do Not Give Rise To A Strong Inference That Donovan Acted With Fraudulent Intent

Even if group pleading were permissible, the plaintiffs have still failed to allege facts that give rise to a "strong inference" that Donovan made the statements with fraudulent intent, as required by the PSLRA.  *See* 15 U.S.C. § 78u-4(b)(2); *Tellabs*, 127 S. Ct. at 2508.  In fact, the far more plausible inference is that Donovan did *not* act with fraudulent intent.  *See Zucco*, 552 F.3d at 991 (holding that a "court must take into account *plausible opposing inferences*" when determining whether the pleaded facts give rise to a strong inference of scienter) (emphasis added).

First, an inference that Donovan made the challenged statements with fraudulent intent would require that he knew his statements were false, or at least recklessly disregarded the truth.  *See Gebhart v. S.E.C.*, 595 F.3d 1034, 1041 n.10 (9th Cir. 2010) *cert. denied*, 130 S. Ct. 3485, 177 L. Ed. 2d 1059 (2010) (holding that scienter requires "either knowledge of falsity or conscious recklessness").  The plaintiffs allege that Donovan's statements about EGC's financial results were false because they did not disclose the 2002 agreement under which Boyne could take exclusive control of EGCL.  SAC ¶ 71j (incorporated by ¶¶ 97, 100, 109, 111, 113).

As with the prior complaint, however, the Second Amended Complaint does not include one fact showing that Donovan either knew of, or was reckless in disregarding the existence of, the "secret" 2002 agreement when he made the challenged statements.  On the contrary, the plaintiffs acknowledge that it was a "secret" agreement signed by Boyne seven years prior to Donovan even joining EGC.  *See id.*  ¶¶ 67-68.  The only two people alleged to have knowledge of the agreement are Cole and Boyne.  The plaintiffs even quote from the May 18, 2010 press release that says the "current [EGC] Board of Directors and management [including Donovan] were unaware of this document [*i.e.*, the 2002 agreement]."  *Id.* ¶ 134.  Not only do the plaintiffs not dispute the truth of this statement, they rely on it in the section of the Second Amended Complaint titled "Truth Begins To Emerge."  *See id.* at p. 33.

This Court has addressed similar circumstances in two securities cases, and dismissed Section 10(b) claims in both.  In *In re HiEnergy Technologies, Inc. Securities Litigation*, plaintiffs alleged that a CEO violated Section 10(b) by failing to disclose a "secret" control group formed to manipulate the company's stock price.  No. SACV 04-1226 DOC (JTLX), 2005 WL 3071250, at *2 (C.D. Cal. Oct. 25, 2005) (Carter, J.).  The plaintiffs in *HiEnergy* (who were represented by the same law firm that represents the plaintiffs here) alleged that all defendants had knowledge of the control group and market manipulation, but their complaint

offered no facts to support this conclusion as to the CEO. *Id.* As a result, this Court dismissed the claims against the CEO, holding that "[w]ithout this factual foundation alleging [the CEO's] knowledge, this Court cannot possibly infer that he intentionally or with deliberate recklessness withheld the information." *Id.*

Likewise, in *Middlesex Retirement System v. Quest Software, Inc.*, the plaintiff alleged that a CFO violated Section 10(b) by issuing SEC filings that overstated the company's earnings as part of a backdating scheme. 527 F. Supp. 2d at 1173-74. In that case, the CFO did not join the company until nearly a year and a half after the last backdated option was granted, but the SEC filings continued to reflect the overstated earnings as a lingering effect of the scheme. *Id.* at 1190-91. In focusing on when the CFO joined the company, this Court held that his arrival late in the class period weighed against the inference that he knew the SEC filings were false, and in the absence of specific facts showing his knowledge, the Court dismissed the Section 10(b) claim against the CFO. *Id.* Here, the allegations relating to Donovan's knowledge are as lacking as they were in *HiEnergy* and *Middlesex*.

Second, to infer that Donovan acted with fraudulent intent when he made the alleged misstatements would require the conclusion that he conspired with Cole and Boyne to conceal the agreement even though, as alleged in the Second Amended Complaint, Donovan did not join the company until February 2009 and thereafter

engaged in a struggle with Cole and Boyne over control of EGCL and its assets.

Indeed, according to the Second Amended Complaint: (i) Cole and Boyne

controlled EGC and EGCL for many years before Donovan joined EGC (*id.* ¶¶ 33-

35); (ii) Boyne signed the "secret" agreement seven years before Donovan joined

EGC (*id.* ¶ 67a); (iii) it was not Cole and Boyne, but Lord Steinberg, that brought

Donovan into EGC (*id.* ¶ 59h); (iv) Donovan (and Christiansen) attempted to

reassert control over EGCL by replacing Boyne and Greenfield as directors (*id.*

¶ 35); (v) "Boyne's group" ousted Donovan and Christiansen a week later (*id.*); and

(vi) Boyne's group – *and not Donovan* – ultimately ended up with control over

EGCL and all its assets, forcing EGC to file for bankruptcy (*see id.* ¶ 67).  This

conclusion is highly implausible (at best).  On the other hand, these allegations

support the far more plausible inference that Donovan was entirely unaware of the

secret agreement and thus did not know it was omitted from the company's SEC

filings when he repeated the company's financial results.[12]

---

[12]  The Ninth Circuit has held that a plaintiff "must set forth . . . an explanation as to
why the disputed statement was untrue or misleading when made." *Yourish v.
Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (internal quotation marks
omitted).  Under the PSLRA, the allegation of falsity must be pleaded with
particularity. *Zucco*, 552 F.3d at 990.  Although it is not clear in the Second
Amended Complaint, the plaintiffs appear to allege that financial results, as
repeated by Donovan on the earnings calls and in the August 2009 press release,
were false because they "failed to disclose" the 2002 secret agreement. *See* SAC
¶ 67.  But the plaintiffs do not allege with sufficient particularity why or how the
2002 agreement rendered Donovan's statements false when made.  For instance,
even assuming that the 2002 agreement contained a reversion mechanism, the
plaintiffs do not explain how that fact necessarily falsifies the earnings figures
reported by EGC (which were merely repeated by Donovan).  Nor do the

Nor do any of the new allegations in the Second Amended Complaint support an inference that Donovan acted with fraudulent intent; if anything, they suggest the opposite.  For instance, Donovan's alleged failure to sign Sarbanes-Oxley certifications in 2009 (*id*. ¶ 145) means only that he failed to or would not certify the accompanying statements.  If there was a fraud at the company, it would be Donovan's signature, not his failure or refusal to sign, that would be more consistent with an allegation that he participated in it.  Likewise, the allegation that the Audit Committee was responsible for reviewing the company's financial statements (*id*. ¶¶ 43-44) shows that Donovan did not serve on that committee.  And the unsupported assumption that Donovan never instituted legal process to stop the transfer of EGCL from EGC (*id*. ¶ 146) is contradicted by the factual allegation that as early as March 19, 2010, EGC announced that it "had engaged G.C. Andersen Partners, LLC . . . to raise working capital funds to enable the Company to engage legal, accounting and other service providers" and to "identify the most advantageous options for the Company and its shareholders going forward."  *Id.* ¶¶ 131-32.[13]

---

plaintiffs allege which of the figures reported to the SEC were rendered false by the 2002 agreement.

[13]  To the extent that the plaintiffs rely on EGC's intention to restate its financial results as evidence of fraudulent intent, it is well settled that "the mere publication of a restatement is not enough to create a strong inference of scienter."  *Zucco*, 552 F.3d at 1000.

---

Moreover, the supposed discrepancy in reported cash between EGC's and EGCL's 2008 year-end financial statements (*id.* ¶ 147) rings hollow as to Donovan because the plaintiffs do not allege that Donovan, who joined EGC in February 2009, had any involvement in the preparation of the underlying information, which pre-dated his arrival at the company, nor do they allege that he signed or certified any of the financial statements during the class period.  At best, this allegation is neutral as to Donovan and therefore cannot support an inference of fraudulent intent.  *See Tellabs*, 551 U.S. at 310 (noting that "omissions and ambiguities count against inferring scienter").  On the other hand, both of the allegedly conflicting statements were signed by Boyne, as EGC's CFO and director of EGCL.  SAC ¶ 96.[14]

The allegation that Donovan, by virtue of his position as director and CEO, "had access to board minutes and resolutions of EGC" (*id.* ¶ 148) also fails.  First, it assumes that the "secret" 2002 agreement was reflected in EGC's board minutes and resolutions several years after it was signed.  The Second Amended Complaint does not allege that.  Second, an allegation of knowledge based on a defendant's position alone is insufficient to support an inference of fraudulent intent.  *In re*

---

[14]   The document that the plaintiffs are relying on as EGCL's financial statement for year-end 2008 was signed by Boyne on March 24, 2010, and bears a stamp showing it was filed in the U.K. on March 30, 2010 – weeks after Boyne's group had taken over control of EGCL.  *See* First Amended Complaint Ex. 1.  These dates negate the inference that Donovan knew of the discrepancy in 2009.

*Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL 2767670, at *12 (C.D. Cal. Aug. 21, 2009) ("[T]he high rank of various Individual Defendants . . . is insufficient, without more, to infer a strong inference of scienter."); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) (holding that a plaintiff "must do more than allege that . . . key officers had the requisite knowledge by virtue of their 'hands on' positions, because that would eliminate the necessity for specially pleading scienter, as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position"); *In re Oak Tech. Sec. Litig.*, No. 96-20552 SW, 1997 WL 448168, at *11 (N.D. Cal. Aug. 1, 1997) (holding that allegations of knowledge based on a defendant's position within a company are "insufficient to establish [defendant's] liability for alleged misstatements"). Likewise, an inference of fraudulent intent based on exposure to company information or communications requires "detailed and specific allegations about management's exposure to factual information within the company." *Zucco*, 552 F.3d at 1000 (quoting *South Ferry LP, #2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008)). Rather than assumptions, the plaintiffs must allege "the date on which any such communication occurred, how plaintiffs learned of such a communication, the form in which such contact or communication was had, or specifics concerning information provided or received during such contact." *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1080 (N.D. Cal. 2001). The

Second Amended Complaint provides no facts whatsoever showing Donovan's exposure to the "secret" 2002 agreement, let alone the "detailed and specific" facts required.

Finally, it is significant that, even after amending their complaint, the plaintiffs have not been able to identify any benefit that Donovan would gain from participating in the alleged misconduct. For example, the plaintiffs do not allege that Donovan sold any shares of stock in the company. *See, e.g., In re Daou Sys., Inc.*, 411 F.3d at 1022-25 (finding stock sales indicia of scienter).[15] Whereas motive may not be enough to create a strong inference of fraudulent intent, courts have frequently held that the absence of motive is enough to negate that inference. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1177 (C.D. Cal. 2007) ("Because Plaintiffs do not allege that any officers . . . benefited from any allegedly misleading statement, it is unreasonable to infer fraud [on their part]."); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994) ("[T]he Officers' minimal sales of stock also negates an inference of scienter.").

The plaintiffs have thus failed to plead any facts that raise an inference that Donovan acted with fraudulent intent when he made the few challenged statements. Instead, the plaintiffs have "assume[d] that compiling a large quantity of otherwise

---

[15] The Second Amended Complaint includes new allegations of supposedly suspicious stock sales, but Donovan is not alleged to be one of the sellers, nor is he alleged to have had any involvement with the sales. *See* SAC ¶¶ 46-54.

DEFENDANT KEVIN DONOVAN'S MPA                    CASE NO. SACV 10-0252 DOC (RNBx)
IN SUPPORT OF MOTION TO DISMISS SAC  21

questionable allegations will create a strong inference of scienter," but even a

holistic reading of their complaint "cannot transform a series of inadequate

allegations into a viable inference of scienter."  *Zucco*, 552 F.3d at 1008.  Because

the plaintiffs have had ample opportunity to amend their claims, the Second

Amended Complaint should be dismissed with prejudice.  *See Gompper v. VISX,*

*Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (leave to amend should not be granted where

amendment would be futile).[16]

---

[16]  This Court has denied Donovan's motion to dismiss with respect to the
plaintiffs' Section 20(a) claim.  Order at 7.  But to the extent that Donovan's
potential liability under Section 20(a) derives from allegations in the Second
Amended Complaint that Donovan himself violated Section 10(b), the Section
20(a) claim should be dismissed, or alternatively the relevant portions stricken,
because, as set forth above, the plaintiffs have not adequately alleged that
Donovan committed a primary violation of Section 10(b).

1

## CONCLUSION

2      For the foregoing reasons, the Section 10(b) claim against Donovan should be

3

dismissed with prejudice.

4

5

6  Dated:   March 14, 2011          SHEARMAN & STERLING LLP

7

8                                   *[signature: Stephen D Hibbard]*

9                                   Stephen D. Hibbard (SBN 177865)
                                    SHEARMAN & STERLING LLP
10                                  525 Market Street, Suite 1500
                                    San Francisco, CA  94105
11                                  Telephone: (415) 616-1100
                                    Facsimile: (415) 616-1199
12                                  Email: shibbard@shearman.com

13

14

15                                  Jerome S. Fortinsky (*pro hac vice*)
                                    SHEARMAN & STERLING LLP
16                                  599 Lexington Avenue
                                    New York, NY  10022
17                                  Telephone: (212) 848-4000
                                    Facsimile: (212) 848-7179
18                                  Email: jfortinsky@shearman.com

19

20                                  *Attorneys for Defendant Kevin Donovan*

21

22

23

24

25

26

27

28