UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

Case No. SACV 10-00252 DOC (RNBx)            Date: May 26, 2011

Title: DALTON PETRIE, ET AL.  v.  ELECTRONIC GAME CARD INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                      NONE PRESENT

PROCEEDING (IN CHAMBERS):

       Before the Court is Defendant Kevin Donovan's Motion to Dismiss Plaintiffs' Consolidated Second Amended Complaint in the above-captioned case ("Motion to Dismiss") (Docket 94).  The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; Local Rule 7-15.  After reviewing the moving, opposing and replying papers, and for the reasons explained below, the Court GRANTS the Motion to Dismiss.

     **I.**     **BACKGROUND**

     **a.**     **Factual History**

       This case is a purported class action filed by Lead Plaintiffs Dr. Thomas Lee, Margaret Yu and Scott Lovell ("Plaintiffs").  The facts, according to Plaintiffs' Consolidated Second Amended Complaint ("SAC") (Docket 83) are as follows.  Electronic Game Card Inc. ("EGC") is a small Company whose business consists of designing and manufacturing "scratch off" devices for various casinos, lotteries and other gaming establishments primarily in the United Kingdom and Europe.  SAC, ¶ 2.  Nearly all of ECG's reported revenues were allegedly derived from its UK and European operating subsidiary, Electronic Game Card, Ltd. ("EGCL").  *Id.*

       During the purported class period, which the Complaint defines as lasting from April 5, 2007 to May 18, 2010 (inclusive), Plaintiffs contend that EGC engaged in a fraud to conceal from and

misstate to EGC's investors the true financial condition and performance of EGC. *Id.* at ¶ 2. Of particular importance, Plaintiffs allege that EGC's ownership of EGCL was subject to a secret 2002 agreement signed by Defendant Linden Boyne ("Boyne") that could (and did) allow Boyne and his wholly-controlled entity, Greenfield Capital International Limited ("Greenfield"), to take full control of EGCL. *Id.* at ¶ 4. Plaintiffs consequently aver that any statements that discussed EGC's "ownership of EGCL, its assets and revenue stream," but which failed to disclose the existence of the 2002 agreement, were "materially false and misleading." *Id.* at ¶ 5.

Plaintiffs filed suit against EGC, Boyne, Lee Cole ("Cole"), Kevin Donovan ("Donovan"), Eugene Christiansen ("Christiansen"), Anna Houssels ("Houssels"), and the Estate of Lord Leonard Steinberg ("Steinberg") on March 2, 2010. Boyne allegedly served as EGC's CFO and Secretary from the start of the purported class period until August 31, 2009. Houssels allegedly became an EGC director in September 2008 and later, on February 1, 2009, Executive Vice President of Sales, until she resigned from the company on February 21, 2010. Farrell apparently served as an EGC director from October 2, 2008 until October 28, 2009. Donovan allegedly became EGC's CEO and director on February 1, 2009. He replaced Cole, who had served in that capacity since 2003.

The Complaint contains various allegations detailing the relationships of the parties to one another. In particular, the Complaint avers that bitter infighting took place between Cole and Boyne, on the one hand, and Donovan and Christiansen on the other.

### b.  Procedural History

Christiansen, Houssels, Farrell and Donovan brought previous motions to dismiss the SAC's predecessor, the Consolidated First Amended Complaint ("FAC"). In an order entered on January 12, 2011, the Court denied the defendants' motion to dismiss the FAC's claims under Section 20(a) of the Securities and Exchanges Act of 1934, but granted the defendants' motion to dismiss its claims for violation of Section 10(b) of the Securities and Exchanges Act of 1934 ("Section 10(b)") and of SEC Rule 10b-5 ("Rule 10b-5"). The Court granted Plaintiffs' leave to amend.

Plaintiffs filed the SAC on February 11, 2011. In the SAC, Plaintiffs declined to reassert their Section 10(b) and Rule 10b-5 claims against Christiansen, Houssels, and Farrell, but decided to reassert this claim against Donovan. Donovan brings the instant motion to dismiss this claim.

### II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a

complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege facts showing (1) a material misrepresentation, (2) scienter, (3) a connection with the purchase or sale of security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharms, Ins. v. Broudo*, 544 U.S. 336, 341 (2005). Under the heightened pleading standards of the Private Securities Litigation Reform Act ("PLSRA"), a securities fraud complaint must identify each alleged misrepresentation, specify the reasons it is misleading, and state with particularity facts giving rise to a strong inference that the defendant who made the misrepresentation acted with fraudulent intent. *Telllabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 321 (2007).

In the Previous Dismissal Order, the Court dismissed the Section 10(b) and Rule 10b–5 claims against Donovan on the grounds that the FAC had failed to plead the existence of any actionable misstatements. Plaintiffs corrected this deficiency in the SAC: the SAC accuses Donovan of misstating EGC's cash balance, revenue and/or income in four earnings calls made during the period from March 19, 2009 to November 12, 2009, and describes the specific misstatements with particularity. SAC, ¶¶ 92, 97, 99-100, 108-09, 112-1.[1] Plaintiffs contend that the cash, revenue and/or income amounts reported by Donovan were misleading because they failed to inform investors of the existence of the "secret" 2002 agreement allowing Boyne (and his affiliated entity Greenfield) to take full control of

---

[1] In their Opposition to the Motion to Dismiss, Plaintiffs further contend that Donovan misstated the company's income in an August 6, 2009 press release. Pl.'s Opp. at 3 (citing SAC, ¶ 110). The SAC, however, contains no such allegation. Rather, the SAC simply avers that a false report of EGC's income was given in a press release in which Donovan was also quoted. SAC, ¶ 110. The SAC does not allege that Donovan authored this press release or that the press release cited him as the source of the allegedly false figures.

EGC's most valuable asset, EGCL, whenever he wished.  SAC, ¶ 5 ("[T]he 2002 'Secret' Agreement allowed EGC to lose ownership of EGCL, and for Boyne to take control of EGCL away from EGC. EGC never disclosed that highly adverse fact, rendering EGC's statemetns about its ownership of EGCL, its assets and its revenue stream, materially false and misleading.").  Donovan does not dispute the allegation that a reasonable investor would have been mislead by earning reports that declined to mention this 2002 agreement.

Donovan argues, however, that the SAC still fails to state a claim against him because Plaintiffs have not adequately pled the element of scienter.  In order to support a Section 10(b) or Rule 10b-5 claim under the PSLRA, a complaint must support an inference of scienter that is "cogent and at least as compelling as any opposing inferences one could draw from the facts alleged." *Tellabs,* 551 U.S. at 324. *See also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (holding that a "court must take into account plausible opposing inferences" when determining whether the pleaded facts give rise to a strong inference of scienter).  The Court agrees with Donovan that Plaintiffs have not met this burden.

The allegation that Donovan acted with fraudulent intent in failing to disclose the existence of the 2002 secret agreement would pass muster only if it were plausible to believe that Donovan knew about the agreement.[2]  But the facts alleged in the SAC urge the opposite conclusion: that Donovan was not aware of Boyne's alleged machinations.  Indeed. Plaintiffs characterize the 2002 agreement as "secret" and state that it was crafted by Boyne seven years prior to Donovan's arrival at EGC.  *See e.g.* SAC, ¶¶ 4-5, 67-68.  The SAC even quotes from a May 18, 2010 press release that says that the "current Board of Directors and management [including Donovan] were unaware of [the agreement]."  SAC, ¶ 134.  Not only do Plaintiffs not dispute the truth of this statement, they rely on it in the section of the SAC titled "Truth Begins to Emerge."  *Id.* at p. 33.

Further, Plaintiffs' SAC discusses the "corporate in-fighting" between Boyne, on the one hand, and Donovan and Christiansen, on the other.  *Id.*, ¶ 35.  Even if this alleged "in-fighting" is put

---

[2]In their Opposition, Plaintiffs argue that *either* Donovan was aware of the 2002 agreement and conspired to hide its existence from EGC's investors *or* that the idea of a secret agreement is a ruse conjured up by Donovan in order to shield himself from liability.  Pl.'s Opp. at 11.  The latter hypothesis appears nowhere in the SAC and, in fact, runs counter to the core theory of liability articulated in the SAC and its predecessor complaints: that "the 2002 'Secret' Agreement allowed EGC to lose ownership of EGCL . . . and render[ed] EGC's statements about its ownership of EGCL, its assets and its revenue stream, materially false and misleading."  SAC, ¶ 5.  As the Court explained in the Previous Dismissal Order, "it is axiomatic that [a] complaint may not be amended by briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).  The Court therefore declines to consider Plaintiffs' new, contradictory theory.

aside, the SAC paints a picture of Boyne's group and Donovan's group as distinct entities, alleging that Donovan, who joined the company seven years after the 2002 agreement was allegedly signed, worked out of his home in California, while Boyne and Cole were based in London. *Id.*, ¶ 59. In addition, Plaintiffs have not pointed to any stock sales or other benefit that Donovan would have gained from participating in a scheme that transferred sole control of EGCL to Boyne, his apparent rival. Several courts have held that the absence of motive negates an inference of fraudulent intent. *See, e.g. In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1177 (C.D. Cal. 2007) ("Because Plaintiffs do not allege that any officers . . . benefitted from any allegedly misleading statement, it is unreasonable to infer fraud [on their part]."); *In re Worlds of Wonder Sec. Litig*, 35 F.3d 1407, 1425 (9th Cir. 1994) ("[T]he Officers' minimal sales of stock also negates an inference of scienter."). The instant Court agrees with that reasoning.

In spite of the SAC's myriad allegations tending to undermine a finding of scienter, Plaintiffs argue that Donovan must have known about the 2002 agreement, given Donovan's high rank at EGC, his access to board minutes and resolutions, and the agreement's potentially disastrous implications for the company. The Ninth Circuit, however, "has rejected these kinds of 'he-must-have-known' allegations [when] offered to demonstrate scienter under the PSLRA." *Zucco Partners*, 445 F. Supp. 2d at 1208 (D. Or. 2006) (citing *In re Worlds of Wonder.*, 35 F.3d at 1425-26). As the Northern District of California explained in *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833 (N.D. Cal. 2000), a plaintiff "must do more than allege that . . . key officers had the requisite knowledge by virtue of their 'hands on' positions, because that would eliminate the necessity for specially pleading scienter, as any corporate officers could be said to possess the requisite knowledge by virtue of his or her position." *Id.* at 844. The idea of assuming scienter proves particularly inappropriate in this case, when the specific allegations of the SAC conflict with that assumption. Indeed, presuming that Donovan could have learned of the agreement by reviewing company records and board minutes flies in the face of Plaintiffs' own characterization of the 2002 agreement as "secret."

In sum, Plaintiffs have not adequately pled the element of scienter. As scienter is a required element of a Section 10(b) and Rule 10b-5 claim, Donovan's Motion to Dismiss must be GRANTED. Plaintiffs' Section 10(b) and Rule 10b-5 claim against Donovan is DISMISSED WITH LEAVE TO AMEND.

### IV.   DISPOSITION

For the reasons set forth above, the Court hereby GRANTS the Motion to Dismiss. Plaintiffs' Section 10(b) and Rule 10b-5 claim against Donovan is DISMISSED WITH LEAVE TO AMEND.

Plaintiffs shall file any amended complaint no later than June 17, 2011.

The Clerk shall serve this minute order on all parties to the action.