1  Lawrence B. Steinberg, Esq.
2  Buchalter Nemer, a Professional Corporation
   1000 Wilshire Boulevard, Suite 1500
3  Los Angeles, CA 90017-2457
4  Telephone: (310) 460-4481
   Facsimile: (310) 282-8213
5
6  -and-
7
   Jeffrey J. Greenbaum, Esq. (pro hac vice)        Kenneth R. Schachter, Esq. (pro hac
8  Hervé Gouraige, Esq. (pro hac vice)              vice)
   Sills Cummis & Gross P.C.                        Sills Cummis & Gross P.C.
9  One Riverfront Plaza                             30 Rockefeller Plaza, 29th floor
10 Newark, New Jersey 07102                         New York, New York 10112
   Telephone: (973) 643-7000                        Telephone: (212) 643-7000
11 Facsimile: (973) 643-6500                        Facsimile: (212) 643-6500
12
13 Counsel for Defendant Lee J. Cole
14              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
15
16 DALTON PETRIE, INDIVIDUALLY          Case No.  SACV-10-00252-DOC(RNBx)
   AND ON BEHALF OF ALL OTHERS
17 SIMILARLY SITUATED,                  CLASS ACTION
18              Plaintiff,              NOTICE OF MOTION AND MOTION
                                        OF DEFENDANT LEE J. COLE FOR
19              v.                      JUDGMENT ON THE PLEADINGS
                                        PURSUANT TO FED. R. CIV. P. 12(c)
20 ELECTRONIC GAME CARD, INC.;
   LEE J. COLE; LINDEN BOYNE;           (Memorandum Of Points And
21 KEVIN DONOVAN, PAUL FARREL,          Authorities, Request For Judicial Notice,
   EUGENE CHRISTIANSEN, ANNA            Declaration Of Lee J. Cole, and
22 HOUSSELS, AND THE ESTATE OF          Declaration Of Jeffrey J. Greenbaum,
   LORD LEONARD STEINBERG AND           Esq., Filed Under Separate Cover)
23 DOMINIC BURKE, LYNNE
   ROCHELLE ATTIAS, AND
24 JONATHAN STEINBERG AS
   EXECUTORS/TRUSTEES/                  Hearing:   September 26, 2011
25 REPRESENTATIVES OF THE               Time:      8:30 a.m.
   ESTATE OF LORD STEINBERG,            Judge:     The Hon. David O. Carter
26 DEFENDANTS,
27              Defendant.
28

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

DEFENDANT LEE J. COLE NOTICE OF MOTION AND MOTION        No. SACV-10-002552-DOC(RNBx)
FOR JUDGMENT ON THE PLEADINGS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on September 26, 2011 at 8:30 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable David O. Carter, United States District Judge for the Central District of California, Room 9D, located at 411 West Fourth Street, Santa Ana, California, defendant Lee J. Cole will and hereby does move the Court for an order pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings, dismissing all claims against him in the above-captioned proceeding on the grounds that the Consolidated Second Amended Complaint for Violations of the Federal Securities Laws, dated February 11, 2011, fails to state a claim upon which relief can be granted and does not meet the requirements of the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4). The Motion applies to all claims against defendant Lee J. Cole in all actions that have been consolidated in the above-captioned proceeding. The Motion is based on this Notice of Motion and Motion, the concurrently filed Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Lee J. Cole and exhibits thereto, and the Declaration of Jeffrey J. Greenbaum, Esq. and exhibits thereto, and on such other further written and oral argument as may be presented at or before the time the Court makes a ruling on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place telephonically on August 12, 2011, as well as previous e-mail exchanges between counsel on August 9, 2011.

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

2

DEFENDANT LEE J. COLE NOTICE OF MOTION AND MOTION
FOR JUDGMENT ON THE PLEADINGS

No. SACV-10-002552-DOC(RNBx)

1

2    DATED:  August 29, 2011              Respectfully submitted,

3

4                                         By:   _s/ Lawrence B. Steinberg_____
                                          Lawrence B. Steinberg, Esq.
5                                         Buchalter Nemer, a Professional Corporation
                                          1000 Wilshire Boulevard, Suite 1500
6                                         Los Angeles, CA 90017-2457
7                                         Telephone: (310) 460-4481
                                          Facsimile: (310) 282-8213
8

9                                         -and-

10

11   Kenneth R. Schachter, Esq. (pro      Jeffrey J. Greenbaum, Esq. (pro hac vice)
     hac vice)                            Hervé Gouraige, Esq. (pro hac vice)
12   Sills Cummis & Gross P.C.            Sills Cummis & Gross P.C.
     30 Rockefeller Plaza, 29th floor
13   New York, New York 10112             One Riverfront Plaza
                                          Newark, New Jersey 07102
14   Telephone: (212) 643-7000            Telephone: (973) 643-7000
15   Facsimile: (212) 643-6500            Facsimile: (973) 643-6500

16                                        Counsel for Defendant Lee J. Cole

17

18

19

20

21

22

23

24

25

26

27

28

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

3
DEFENDANT LEE J. COLE NOTICE OF MOTION AND MOTION          No. SACV-10-002552-DOC(RNBx)
FOR JUDGMENT ON THE PLEADINGS

1   Lawrence B. Steinberg, Esq.
2   Buchalter Nemer, a Professional Corporation
    1000 Wilshire Boulevard, Suite 1500
3   Los Angeles, CA 90017-2457
4   Telephone: (310) 460-4481
    Facsimile: (310) 282-8213
5
6   -and-
7
    Jeffrey J. Greenbaum, Esq. (pro hac vice)     Kenneth R. Schachter, Esq. (pro hac
8   Hervé Gouraige, Esq. (pro hac vice)           vice)
    Sills Cummis & Gross P.C.                     Sills Cummis & Gross P.C.
9   One Riverfront Plaza                          30 Rockefeller Plaza, 29th floor
10  Newark, New Jersey 07102                      New York, New York 10112
    Telephone: (973) 643-7000                     Telephone: (212) 643-7000
11  Facsimile: (973) 643-6500                     Facsimile: (212) 643-6500
12
13  Counsel for Defendant Lee J. Cole

14              UNITED STATES DISTRICT COURT
15              CENTRAL DISTRICT OF CALIFORNIA

16  DALTON PETRIE, INDIVIDUALLY          Case No. SACV-10-00252-
    AND ON BEHALF OF ALL OTHERS          DOC(RNBx)
17  SIMILARLY SITUATED,

18                  Plaintiff,           CLASS ACTION

19          v.                           MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT OF
20  ELECTRONIC GAME CARD, INC.;          DEFENDANT LEE J. COLE'S
    LEE J. COLE; LINDEN BOYNE;           MOTION FOR JUDGMENT ON THE
21  KEVIN DONOVAN, PAUL FARREL,          PLEADINGS PURSUANT TO FED. R.
    EUGENE CHRISTIANSEN, ANNA            CIV. P. 12(c)
22  HOUSSELS, AND THE ESTATE OF
    LORD LEONARD STEINBERG AND
23  DOMINIC BURKE, LYNNE                 Hearing:   September 26, 2011
    ROCHELLE ATTIAS, AND                 Time:      8:30 a.m.
24  JOHATHAN STEINBERG AS                Judge:     The Hon. David O. Carter
    EXECUTORS/TRUSTEES/
25  REPRESENTATIVES OF THE
    ESTATE OF LORD STEINBERG,
26  DEFENDANTS,

27                  Defendant.
28

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF          No. SACV-10-002552-DOC(RNBx)
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

## **PRELIMINARY STATEMENT**

Using inappropriate allegations of fraud by hindsight, the Second Amended Complaint ("SAC") attempts to improperly convert allegations of "corporate in-fighting" and a dysfunctional board of Electronic Game Card, Inc. ("EGCI" or the "Company") into claims of securities fraud. The Court has already determined there is no basis for the Section 10(b) claims against many of the defendants, who were served before attempts were made to serve Lee Cole ("Cole"). When the claims against Cole are closely examined as required under the PSLRA, it becomes clear that there are no viable claims in this case. The SAC fails to properly allege material false statements made by Cole or the required scienter.

The SAC essentially alleges only two types of false statements against Cole: (i) statements that EGCI owned 100 percent of its UK subsidiary, Electronic Game Card, Ltd. ("EGCL"), failed to disclose a 2002 Acquisition Agreement, pursuant to which, under then extremely unlikely future contingencies, EGCL could become independent; and (ii) that EGCI's consolidated financial statements for 2006 through 2008 were false because its auditor in 2010 withdrew its opinion as to those earlier statements after having difficulty confirming the existence of a cash account held by EGCL.

As we demonstrate below, the statements of ownership were truthful when made. The alleged failure to disclose the virtually non-existent risk under the 2002 Agreement that the future remote contingencies could result in divestiture did not make these statements of corporate ownership inaccurate when made. Subsequent events and 20/20 hindsight do not make those statements misleading retroactively.

The EGCI consolidated financials were also complete and truthful when filed. The audited 2008 accounts for EGCL – which plaintiffs failed to attach to the SAC – confirm the cash accounts and are consistent with the EGCI filed 2008 financials. The auditor's failure to confirm these facts and withdrawal of its

SILLS CUMMIS & GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

1   opinions is more likely due to miscommunication than anything else.

2         Additionally, the absence of scienter is fatal to  the claims against Cole.  He

3   is not alleged to have had any ownership in either EGCI or EGCL, or to have

4   obtained any personal benefit by the actions taken by others in breach of the 2002

5   Agreement causing a reversion of the EGCL shares to its original owners.  Indeed,

6   the SAC quotes extensively from Cole's letters to the EGCI Co-Chairmen

7   protesting their actions taken contrary to the interests of EGCI and warning them of

8   the dire consequences.  Since the SAC has failed to properly plead violations of the

9   securities laws, it should be dismissed.

10   **STATEMENT OF FACTS**[1]

11         EGCI is a Nevada corporation engaged in the design and manufacture of

12

---

[1]       For purposes of this motion, the Court must accept as true all well-pleaded factual allegations in the SAC, except where those allegations are conclusory, implausible on their face, internally inconsistent, or contrary to facts established by documents attached or referred to in the SAC or subject to judicial notice.  *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996); *Hamilton v. Aubrey,* No. CV 07-01413, 2008 U.S. Dist. LEXIS 34379 (D. Nev. Apr. 15, 2008).  In addition to the documents attached to the SAC, the Court may consider on this motion the 2002 Acquisition Agreement and 2010 Agreement referred to in the SAC, *see, e.g.,* ¶ 67(b), as well as the 2006 amendment to the 2002 Agreement.  *Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001); *In re Portal Software, Inc. Sec. Litig.,* No. C-03-5138, 2005 U.S. Dist. LEXIS 20214 (N.D. Cal. Aug. 10, 2005); *Ruhnke v. Pipe Fitters' Welfare Fund, Local 597,* No. 05 C 1395, 2005 U.S. Dist. LEXIS 15963 *2 (N.D. Ill. Aug. 4, 2005) (properly considering document attached to complaint, and amendments to the document, which were attached to defendant's motion to dismiss).  Finally, the Court may take judicial notice of facts contained in publicly available documents from governmental sources. These include both EGCI's SEC filings as well as EGCL's publicly filed accounts and other documents in the United Kingdom, some of which the plaintiffs have attached to the SAC.  *See In re Silicon Graphics,* 183 F.3d 970, 986 (9th Cir. 1999) (SEC filings); *CP Solutions PTE, Ltd. v. Gen. Elec. Co.,* 470 F. Supp.2d 151 (D.C. Conn. 2007) (taking judicial notice of provisions of Canadian Business Corporations Act); *A.I. Trade Fin. v. Centro Internationale Handelsbank AG,* 926 F. Supp. 378 (S.D.N.Y. 1996) (taking judicial notice of Austrian judgment).

SILLS CUMMIS & GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

1   electronic "instant win" game devices for use by casinos, lotteries and other gaming

2   establishments, primarily in Europe.  [SAC ¶ 2.]  Cole  was a director of EGCI

3   since 2003 until his resignation, effective March 8, 2010.  [SAC ¶ 33.]  While on

4   the board, Cole served on the Audit Committee, and served as Acting CEO from

5   January 31, 2006, until February 1, 2009, when he was replaced by defendant

6   Kevin Donovan.  [Id.]

7       Plaintiffs do not allege that Cole ever sold, or even owned, any stock of

8   EGCI or EGCL or had anything personally to gain by any of the acts alleged in the

9   SAC.  The various SEC filings that plaintiffs cite confirm that Cole has never

10  owned any shares of EGCI.  [See Greenbaum Dec. Exs. A, B, C.]

11      **A.**　　**Corporate History of EGCI and the "2002 Agreement"**

12          1.　　The First Share Exchange

13      EGCI was the product of a series of corporate acquisitions in 2002 and 2003,

14  involving both U.S. and British companies.  The agreement that plaintiffs refer to as

15  the "secret" 2002 agreement is an Acquisition Agreement dated August 2, 2002

16  among a privately held Delaware corporation, also called Electronic Game Card,

17  Inc. ("EGCI-Del."), EGCL, and the shareholders of EGCL.  [See Cole Dec. Ex. A.]

18  Pursuant to the 2002 Agreement, the owners of EGCL agreed to sell all of the

19  shares of EGCL to EGCI-Del. in exchange for 4 million shares of EGCI-Del. stock.

20  Following the transaction, EGCL became wholly-owned by EGCI-Del.  [Id.]

21      The 2002 Agreement contained several covenants by EGCI-Del.  In

22  particular, EGCI-Del. covenanted that, for five years (which would automatically

23  be extended for another five years unless waived in writing), it would not make any

24  changes to EGCL's articles of association or to its board of directors, unless such

25  changes were authorized in writing by a majority of the then-existing board of

26  EGCL.  [Id., § 4(p).]  The Agreement provided that in the event of a default by

27  EGCI-Del., the owners of EGCL would be entitled to take back all the shares of

28

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

1  EGCL. [Id., §§ 4(s), 8.] In addition, upon a default, the 2002 Agreement provides

2  that EGCL shall have a license to use EGCI-Del.'s intellectual property in Europe,

3  in exchange for an annual license fee (the "Remedies License"). [Id., §§ 4(r), 8(A)-

4  (I).] While the Agreement provides a notice and cure period for some defaults, a

5  breach of the aforementioned covenant prohibiting changes to the internal

6  governance of EGCL has no cure period. [Id., § 8.] Moreover, to facilitate the

7  reversion of EGCL shares to its original owners in the event of default, the parties

8  agreed to execute a Share Transfer Form, to be held in escrow unless and until an

9  act of default. [Id., §§ 4(s), 8, Ex. M.]

10         2.     The Second Share Exchange

11         On or about November 19, 2003, EGCI-Del. entered into a Stock Exchange

12  Agreement with EGCI, a Nevada public corporation which at the time was called

13  Scientific Energy, Inc. [See Greenbaum Dec. Ex. D.] Pursuant to that agreement,

14  Scientific Energy's then issued and outstanding stock was reverse-split 100 to 1,

15  and an additional 12.7 million shares of Scientific Energy stock were issued to the

16  owners of EGCI-Del. In exchange, 100 percent of EGCI-Del.'s stock was

17  transferred to Scientific Energy, which then changed its name to EGCI. Thus,

18  following the transaction, both EGCI-Del. and EGCL became wholly-owned

19  subsidiaries of Scientific Energy, which changed its name to EGCI.[2]

20         By Assumption Agreement dated February 1, 2006, EGCI directly assumed

21  the obligations of EGCI-Del. under the 2002 Agreement. In exchange, EGCI

22  obtained the right to directly acquire and exercise greater control over EGCL's

23  intellectual property. By its terms, the 2006 Assumption Agreement "ratifie[d] and

24  then replace[d]" the original 2002 Agreement. [See Cole Dec. Ex. B.]

25         At the time of the 2006 Assumption Agreement, John Bentley had resigned

26  from EGCI and EGCL. [See Greenbaum Dec. Exs. E, F.] Thus, the board of EGCI

27

28  [2]    Following this acquisition, EGCI-Del. changed its name to Electronic Game Card Marketing, Inc. [See Greenbaum Dec. Ex. D.]

SILLS CUMMIS & GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

4

No. SACV-10-002552-DOC(RNBx)

1   consisted of Cole and Boyne.  The board of EGCL, meanwhile, consisted of Boyne

2   and McNally (one of the original inventors of the electronic game card).  [See

3   Greenbaum Dec. Exs. A, G.]

3.     Lord Steinberg Acquires Control of EGCI

5        Beginning in November 2007, the late Lord Leonard Steinberg approached

6   Cole and Boyne about investing in EGCI, joining its board and restructuring the

7   Company.  [SAC ¶ 37.]  According to the SAC, the confidential witness, CW1,

8   advised Steinberg "to conduct proper due diligence of the Company and its

9   operations prior to joining [EGCI]."  [SAC ¶ 144.]  Steinberg retained the firm of

10   Lewis and Rocca to conduct due diligence in 2007 and early 2008. [SAC Ex. 5.]

11       Steinberg began buying EGCI stock, ultimately acquiring over 16 percent.

12   [SAC ¶ 38.]  On June 6, 2008, EGCI announced that Steinberg had agreed to

13   become chairman of EGCI's board and that defendants Christiansen and Houssels

14   had been nominated to EGCI's board.  These nominations were ratified by

15   shareholders on September 2, 2008.  [SAC ¶¶ 36, 40, 41.]   Donovan replaced Cole

16   as CEO effective February 1, 2009.  [SAC ¶ 34; Greenbaum Dec. Ex. H.]

17       On September 1, 2009, Boyne resigned from the board and as CFO of EGCI.

18   He was replaced as CFO by Thomas Schiff, who served only from September 1

19   through October 21, 2009.  When Schiff resigned, Boyne was re-appointed interim

20   CFO and Secretary but did not rejoin the board of EGCI.  [SAC ¶ 32; Greenbaum

21   Dec. Ex. I.]  Cole remained a director of EGCI and Boyne remained a director of

22   EGCL as required by the 2002 Agreement.

23       Steinberg passed away on November 3, 2009.  Immediately thereafter,

24   Donovan and Christiansen became interim Co-Chairmen of EGCI.  [SAC ¶¶ 34, 40.]

4.     Donovan and Christiansen Take Actions Causing EGCL
         Ownership To Revert to Its Original Owners Due to
         EGCI's Breach of the 2002 and 2006 Agreements

27       Donovan and Christiansen then began to take actions that ultimately led to

28   their removal of Boyne as a director of EGCL, which caused breaches of the 2002

SILLS CUMMIS & GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

and 2006 Agreements. The SAC contains allegations of "corporate in-fighting"
between a group led by Donovan and Christiansen and another group led by Boyne,
allegedly resulting in EGCI's "loss of ownership of EGCL to Boyne's group."
[SAC ¶ 35.] Indeed, the SAC quotes at length from various letters to the EGCI
board from Cole and Boyne [SAC ¶¶ 67(b), 115, 140], which show actions of
individuals seeking to protect EGCI. Those letters, filed with the SEC, set forth
numerous complaints that Cole and Boyne had with the manner in which Donovan
and Christiansen made decisions for the Company, without following the proper
corporate procedures for obtaining Board approvals. [SAC Ex. E.]

In particular, both Boyne and Cole addressed Donovan's and Christiansen's
unilateral decision to remove the board of directors of EGCL and appoint
themselves instead, in violation of the 2002 and 2006 Agreements, which occurred
on December 28, 2009. [SAC ¶ 35; see also Greenbaum Dec. Exs. J, K, L, M, N.]
As Boyne wrote:

> Your efforts in the February 22nd minutes to retroactively justify
> improper change of directors of [EGCL] (which you initially undertook
> surreptitiously in December 2009 without any Board approval or
> discussion whatsoever) and to move accounts of that company failed to
> disguise actions which were so damaging to [EGCI]. **You were well
> aware of the underlying contracts which you have blatantly
> breached and yet you persisted in this conduct. You were warned
> repeatedly that you should not act in violation of contractual
> obligations and you chose to ignore the warnings . . . .**

[SAC ¶ 140(b) (emphasis added).] Similarly, in his resignation letter dated
February 25, 2010, Cole noted that "[d]ue to certain actions which have been
taken[] unilaterally by the Co-Chairmen the Company's European business has
reverted to a master license…" [SAC ¶ 67(b).] Moreover, in his April 20, 2010
letter, Cole also pointed out "that the actions of the Co-Chairmen had caused
[EGCI] substantial damage as they had not heeded repeated warnings regarding
their misconduct." [SAC ¶ 140(a).]

Sills Cummis &
Gross P.C.
Attorneys At Law
Newark

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS          No. SACV-10-002552-DOC(RNBx)

1   Notably, although plaintiffs repeatedly refer to the 2002 Agreement as

2   "secret," the documents attached to and quoted in the SAC do not support that

3   characterization.  In letters later filed with the SEC, Boyne and Cole clearly refer to

4   the Agreements and warn the new management of potential consequences of a

5   breach.  Boyne expressly stated that Donovan and Christiansen "were well aware of

6   the underlying contracts" and had been "warned repeatedly" not to violate the

7   earlier agreements.  Significantly, plaintiffs do not allege that either Boyne's or

8   Cole's letters to the board were false or misleading.  Moreover, as plaintiffs point

9   out, EGCI's board remaining after Cole and Boyne's departure acknowledged that

10  it became aware of the 2002 Agreement "after questions had arisen concerning the

11  company's audited financial statements."  [SAC ¶ 67(a).]

12  As a result of the breach of the 2002 and 2006 Agreements, ownership of

13  EGCL reverted to the original owners of EGCL, through their agent, EPN Advisory

14  Limited.  [SAC Ex. 2.]  Furthermore, Donovan and Christiansen were removed as

15  directors of EGCL, and Boyne and Greenfield Capital International, Ltd. were

16  reappointed to the board.  [Id.]  Additionally, as provided by the 2002 and 2006

17  Agreements, the breach caused the Remedies License to come into effect.

18  Although the 2002 Agreement provided for an annual license fee equal to 25

19  percent of net revenue earned pursuant to the license, the owners of EGCL

20  proposed to amend the license fee to a guaranteed annual flat fee of $9 million,

21  once certain conditions relating to the management of EGCL were met (i.e., no

22  further attempt to assert control over EGCL or its assets).  [See Cole Dec. Ex. C.]

23  Thus, in his resignation letter, Cole referred to "a master license [] under the terms

24  of which the company will net $9 million per annum."  [SAC ¶ 67(b).]  There is no

25  indication, however, that EGCI accepted the conditions of the amendment.

26  **B.    Alleged Misrepresentations Attributed to Cole**

27  The SAC attributes to Cole a series of alleged repetitive misrepresentations,

28  made in SEC filings between April 5, 2007 and November 20, 2009.  [SAC ¶¶ 65-

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

106.]  Additionally, plaintiffs allege that the certifications signed by Cole pursuant to the Sarbanes-Oxley Act ("SOX Certifications"), attached to the SEC filings, were themselves false.  [SAC ¶¶ 73-75, 78-80, 85, 88-89, 96-97, 104, 106.]

In essence, the misrepresentations fall into two categories.  First, plaintiffs allege that each of the foregoing SEC filings was false and misleading because it stated that EGCI owned 100 percent of the stock of EGCL.  They argue that this statement is false because it failed to disclose the contingency in the 2002 Agreement, under which (i) ownership of EGCL would revert to its original owners in the event of a breach of the agreement, and (ii) in the event of a breach, a licensing arrangement would come into effect between EGCI and EGCL for the continued use of the Company's intellectual property in Europe.  [SAC ¶¶ 66, 67(a)-(b), 76, 77, 79, 81, 82, 86, 87, 89, 94, 95, 101-103, 106.]  Plaintiffs do not allege, however, that the statements regarding EGCI's ownership were actually false at the time they were made.  To the contrary, the allegations support the conclusion that EGCL was a wholly owned subsidiary of EGCI until December 28, 2009, when Donovan and Christiansen unilaterally sought to remove the directors of EGCL and appoint themselves as EGCL's directors without the written consent of a majority of the then-existing EGCL board, as required by the 2002 and 2006 Agreements. [SAC ¶¶ 35, 140(a), (b); see also Greenbaum Dec. Exs. J, K, L, M, N.]

Second, plaintiffs allege that the financial results reported in these SEC filings were false because on February 19, 2010 – three months after the last allegedly false filing, and nearly *three years* after the first – EGCI announced that its auditor, Mendoza & Berger ("M&B"), had withdrawn its audit opinion for the years ended December 31, 2006, 2007 and 2008:

> M&B had become aware of irregularities in the audit confirmation of a bank account represented to M&B as having been held by [EGCL], a wholly owned subsidiary of [EGCI] that conducts its European operations.  Based upon M&B's investigation and inability to confirm the balances in the account, M&B concluded that its prior audits could

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

no longer be relied upon and that it was withdrawing its audit opinions related to [EGCI's] financial statements for the years ended December 31, 2006, 2007 and 2008 as of February 12, 2010.

[SAC ¶ 71(a).]  There is no allegation that the existence of the account was not properly confirmed at the time the original opinions were given.  In the same statement, EGCI announced that it would "determine the adjustments necessary to reissue its prior financial statements and file amended Annual Reports . . .."  [Id.]

Plaintiffs further rely upon the EGCI May 19, 2010 announcement :

[I]ts financial statements for the years December 31, 2006, 2007 and 2008 should no longer be relied upon because preliminary findings of its previously announced forensic review of the circumstances that gave rise to EGCI's independent auditors' withdrawal of its audit opinions for those years have raised significant concerns as to the integrity of [those] audited financial statements . . . .  EGCI is concerned that reported revenue may be materially overstated and that the reported carrying value of assets and investments in third-party companies may not be fairly stated.

In addition, EGCI has been unable to confirm the existence or value of a [$12.9 million] purported investment account in the name of [EGCL] with R.I.C. Asset Management Limited.

[SAC ¶ 67(d), (i); see also Greenbaum Dec. Ex. O.]  Plaintiffs allege that because the previous financial statements "could no longer be relied upon and had to be restated, the Company's financial statements and related information in its annual reports were false when made."  [SAC ¶ 71(e).]  Plaintiffs make these same allegations for subsequent SEC filings.  [SAC ¶¶ 78-80, 83, 84, 86-89, 90-93, 97, 99-101, 104, 106.]

Although plaintiffs do not specify how any of the financial information in the SEC filings was factually inaccurate, they allege that the totals for "Cash and Cash Equivalents" listed in the Company's financial statements were significantly overstated.  [SAC ¶¶ 14, 147(a), (b).]  Plaintiffs compare EGCI's year-end

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

consolidated audited financial statements for 2008 to abbreviated and unaudited accounts filed by EGCL in the United Kingdom for the same period. [Id.; SAC Ex. 1.] Whereas the EGCI 10-K listed the combined entities' cash balance of approximately $8.3 million, the EGCL abbreviated accounts show only £ 763 in cash. [Id.] From this they conclude the cash balance on the earlier filed EGCI 10-K is a sham. [SAC ¶ 14.]

Plaintiffs have failed, however, to disclose to the Court that EGCL filed amended *audited* accounts for 2008. These amended accounts – which were filed on January 21, 2011, nearly three weeks before plaintiffs filed the SAC on February 11, 2011, with the same UK regulators as the original abbreviated accounts plaintiffs attach as Exhibit 1 to the SAC – show a cash balance of slightly more than £ 6.1 million or $ 8.9 million,[3] which is consistent with the balance in ECGI's 2008 10-K Report. [See Greenbaum Dec. Ex. P.] As such, the Court may disregard the SAC's conclusory assertion that the cash account is a sham.

The correspondence from Cole and Boyne to the EGCI board in 2010 further support the conclusion that the withdrawal of the auditor's opinion had less to do with any actual misstatements, and more to do with the "corporate in-fighting" to which plaintiffs refer and resulting miscommunication. As Cole stated in his April 20, 2010 letter:

> [T]he Co-Chairmen continued to engage in obstructive and damaging behaviour even more extreme than previously. They contacted banks and EGC's auditors and interfered with EGC's audit process by not going through the proper channels and not informing the CFO or the only remaining member of the Board's Audit Committee.
>
> Throughout this period the Co-Chairmen were confusing

---

[3] The Court may take judicial notice of the December 31, 2008 exchange rate of British pounds to U.S. Dollars of £ 1 to $ 1.4619, as reflected at the following website: http://www.exchange-rates.org/Rate/GBP/USD/ 12-31-2008.

SILLS CUMMIS & GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS
No. SACV-10-002552-DOC(RNBx)

Mendoza Berger, EGC's auditors, by repeating misinformation resulting from the Co-Chairmen's interference in the audit process. The Co-Chairmen continued to interfere and hinder the process by not informing Sterling of the incorrect information they were circulating despite repeated requests from Sterling. If common sense and proper channels had been followed misinformation would not have been passed to Mendoza Berger, confusion would have been avoided or easily corrected and EGC would not have been damaged.

[SAC ¶ 140(a).]  Boyne similarly criticized Donovan and Christiansen for their interference with the audit process and noted that

> [y]our conduct in this regard is all the more shameful **given that your statement to the auditors that a bank account did not exist was subsequently proven to be incorrect** and **based upon a misunderstanding** which arose when you acted outside the companies proper channels and contacted the bank directly rather than through or even with the [sic] myself as CFO.

[SAC ¶ 140(b) (emphasis added).]  Plaintiffs, who incorporate both letters into the SAC and quote from them at considerable length, do not allege that they are false.

## C.     Plaintiffs' Circumstantial Allegations of Scienter As to Cole

There are no direct allegations that Cole acted with fraudulent intent, other than a handful of conclusory allegations.  [SAC ¶¶ 3, 56(f)-(g), 162-166.] Specifically, there are no factual allegations that Cole concealed the existence of the 2002 or 2006 Agreements from any investor, director or officer, or had any motive to do so.  To the contrary, the extensive quotations from the letters written by Cole and Boyne reflect that they had made the board aware of the earlier agreements and warned them against violating their covenants.  [SAC ¶ 140(a), (b).]

Nor are there any allegations that suggest any possible motive for Cole to have concealed the earlier agreements or that the later occurrence of the contingencies in those agreements occasioned by the involuntary removal of the EGCL directors was anything other than a remote possibility at the time that the challenged statements were made.  There is no allegation that Cole owned any

1    stock in EGCI or EGCL, much less any allegation that he sold any such stock or

2    had anything to gain from the reversion of EGCL to its original owners.

3        In the absence of any direct allegations of scienter, plaintiffs instead attempt

4    to infer that Cole and the other defendants acted with the requisite fraudulent intent

5    from generalized and circumstantial factual allegations relating to the small size of

6    the Company and their positions.  [SAC ¶¶ 141(a), 33, 56(a)-(e), 143, 148.]  In

7    essence, plaintiffs allege that Cole and the other defendants must have known that

8    the alleged misrepresentations were false due to their positions.

9        Plaintiffs further infer scienter from the apparent discrepancy between the

10   balances for cash in EGCI's 2008 annual 10KSB Report and the abbreviated

11   unaudited accounts filed by EGCL in the UK.  Whereas the SEC filing shows

12   approximately $8.3 million in cash, the abbreviated unaudited accounts filed by

13   EGCL show only £ 763 in cash.  [SAC ¶¶ 14, 141(b)-(s), 147(a), (b).]  As noted

14   above, however, plaintiffs did not consider the amended *audited* financial accounts

15   for 2008 that EGCL filed with the UK regulators several weeks before the SAC was

16   filed.  Those audited accounts show cash balances consistent with the 2008 annual

17   report filed with the SEC.  [See Greenbaum Dec. Ex. P.]

18       Moreover, although plaintiffs allege that the financial statements filed with

19   the SEC for the years ended 2006-2008 were false because of the subsequent

20   withdrawal of the auditor's opinion, thus requiring restatements, plaintiffs'

21   allegations suggest that such restatements may be the result, not of fraud, but of

22   "accounting errors" which themselves may be caused by miscommunications,

23   mistakes in mathematics, or in the application of Generally Accepted Accounting

24   Principles ("GAAP"), or by oversight of facts that existed at the time.  [SAC ¶

25   71(f)-(h).]

26

27

28

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

## ARGUMENT

**I.     COLE IS ENTITLED TO JUDGMENT ON PLAINTIFFS' FIRST
CAUSE OF ACTION BECAUSE THEY HAVE FAILED TO
ADEQUATELY PLEAD A SECTION 10(b) VIOLATION**

A party may move for a judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c); *see also Doe v. United States,* 419 F.3d 1058, 1061-1062 (9th Cir. 2005). Because a motion brought under Rule 12(c) "is functionally identical" to a motion to dismiss under Rule 12(b)(6), it must be evaluated under the same standard as a Rule 12(b)(6) motion. *Cafasso v. Gen. Dynamics C4 Sys.,* 637 F.3d 1047, 1054 n.4 (9th Cir. 2011); *Cardenas v. McLane Foodservice, Inc.,* No. CV 10-473-DOC (FFMx), 2011 U.S. Dist. LEXIS 13126, 4-5 (C.D. Cal. Jan. 31, 2011).

In order to survive a motion brought under either Rule 12(b)(6) or 12(c), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). Facial plausibility requires the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009). Facial plausibility requires more than "a sheer possibility that the defendant has acted unlawfully. . . . Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*).

In reviewing the facial plausibility of a complaint, the Court need only accept allegations that are well-pleaded, and should disregard allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *Schwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000); *In re Metricom Sec. Litig.,* No. C 01-4085 PJH, 2004 U.S. Dist. LEXIS 7834 *42 (N.D. Cal. Apr. 29, 2004), *aff'd sub nom. Young v. Dreisbach,* 182 Fed. Appx. 714 (9th Cir. 2006). The Court may also

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

reject allegations that are internally inconsistent, or which are contradicted by documents attached or referred to in the complaint or by facts that may be judicially noticed. *Schwarz, supra* at 435; *Hamilton v. Aubrey*, No. CV 07-01413, 2008 U.S. Dist. LEXIS 34379 *3 (D. Nev. Apr. 15, 2008).

In addition, to survive a motion at the pleading stage, plaintiffs must also satisfy the more exacting pleading requirements of the PSLRA.  15 U.S.C. § 78u-4(b); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 127 S. Ct. 2499, 2504, 168 L. Ed. 2d 179, 187 (2007).  Under the PSLRA, a securities fraud complaint must plead both falsity and scienter with particularity. *Id.* at 321; *Zucco Partners v. Digimarc Corp.,* 552 F.3d 981, 990-91 (9th Cir. 2009); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).  If the complaint does not satisfy these pleading requirements, the Court, upon motion, must dismiss the complaint.  15 U.S.C. § 78u-4(b)(3)(A).

Here, plaintiffs have failed to plead either falsity or scienter with the specificity required by the PSLRA.  As a result, their claim under § 10(b) and Rule 10b-5 must be dismissed.

### A.  Plaintiffs Have Failed to Adequately Plead Falsity As To Any Alleged Misstatements Attributed to Cole.

Section 10(b) of the Securities and Exchange Act of 1934 prohibits the "use or employ[ment], in connection with the purchase or sale of any security, [of] any manipulative or deceptive device or contrivance."  15 U.S.C. § 78j(b).  Rule 10b-5 outlaws "any untrue statement of a material fact or . . . [omission of] a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5(b).

The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Tellabs,* 551 U.S. at 321 (citing 15 U.S.C. § 78u-4(b)(1)).  Thus, plaintiffs must plead facts indicating why the allegedly misleading statements were misleading at

1   the time they were made. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 (9th

2   Cir. 2002), *overruled on other grounds by South Ferry LP v. Killinger*, 542 F.3d

3   776 (9th Cir. 2008); *see also In re Metricom*, 2004 U.S. Dist. LEXIS 7834, at *82

4   (plaintiffs pleaded no facts showing statements were false when made).

5        The alleged false statements in twelve SEC annual and quarterly filings

6   between April 5, 2007 and November 20, 2009, essentially boil down to two

7   categories.[4]  First, plaintiffs allege that the statements that EGCI owned 100 percent

8   of EGCL were false because those statements failed to disclose that ownership of

9   EGCL was subject to reversion to its original owners if EGCI breached certain

10  covenants in the 2002 and 2006 Agreements.  Second, plaintiffs allege that the

11  financial statements were false because EGCI's auditor subsequently withdrew its

12  audit opinions for 2006-2008.  However, with respect to both categories, plaintiffs

13  have failed to plead sufficient facts even to create a "facial plausibility" of falsity at

14  the time the statements were made, much less the specificity required by the

15  PSLRA.

16        1.      Statements Relating to Ownership of EGCL.

17        Plaintiffs do not allege that the statement that "[t]he Company owns 100% of

18  the share capital of [EGCL]," was literally false when made.[5]  Instead, plaintiffs

19  _____

20  [4]      Plaintiffs cannot hold Cole liable for any other allegedly false or misleading
    statements alleged, such as the press releases or statements made during the various
21  earnings conference calls in 2008 and 2009, based on the "group pleading doctrine"
    because there are absolutely no allegations that Cole participated in those
22  statements.  This Court has already rejected the viability of the group pleading
    doctrine.  *See* Order dated January 12, 2011, at 4 (Docket Entry no. 80) (citing *In re*
23  *Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007)).

24  [5]      Even if they had alleged literal falsity, such an allegation would be
    contradicted by the plain terms of the 2002 Agreement, which is referred to in the
25  complaint, publicly filed documents, and the very documents that plaintiffs attach.
    Under the 2002 Agreement, EGCI-Del. acquired 100 percent of the stock of EGCL.
26  [*See* Cole Dec. Ex. A.]  When EGCI acquired EGCI-Del. (which changed its name
    to Electronic Game Card Marketing, Inc.) in 2003, EGCI thus acquired 100 percent
27  ownership of EGCL.  [See Greenbaum Dec. Ex. D.]  As plaintiffs themselves

28

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS                    No. SACV-10-002552-DOC(RNBx)

1   allege that the statements regarding EGCI's 100 percent ownership of EGCL were

2   misleading because they "failed to disclose" that such ownership was subject to the

3   covenants in the 2002 Agreement.  [SAC ¶ 67(a).]  However, "Rule 10b-5

4   [prohibits] only misleading and untrue statements, not statements that are

5   incomplete. . . . Often, a statement will not mislead even if it is incomplete or does

6   not include all relevant facts."  *In re Cutera Sec. Litig.,* 610 F.3d 1103, 1109 (9th

7   Cir. 2010).  To be "misleading," an omission "must affirmatively create an

8   impression of a state of affairs that differs in a material way from the one that

9   actually exists."  *Brody v. Transitional Hosps. Corp.,* 280 F. 3d 997, 1006 (9th Cir.

10  2002).

11        Here, plaintiffs have not stated with particularity or otherwise how their

12  "impression of [the] state of affairs" regarding EGCI's ownership of EGCL would

13  have been materially different had the existence and terms of the 2002 and 2006

14  agreements been disclosed.  Rather than look at the materiality and relevance of

15  those Agreements with hindsight after the events occurred in 2010, the statements

16  made must be examined within the context of the time at which they were made.

17  At those times, the breach of those Agreements by the removal of Boyne from

18  EGCL's board was a remote contingency no one could envision would occur.  Until

19  September 2008 when Steinberg became chairman of the board – which covers the

---

21  allege, Donovan and Christiansen only caused EGCI to breach the 2002 and 2006
    agreements, causing ownership of EGCL to revert back to its original owners, on
22  December 28, 2009, when they installed themselves as directors of EGCL and
    terminated Boyne without approval.  [SAC ¶ 35.]  That timeline is confirmed by the
23  various filings made by Donovan and Christiansen with the UK regulators.  [See
    Greenbaum Dec. Exs. J, K, L, M, N.]  Moreover, in Boyne's letter to the EGCI
24  board – which is attached to the Company's April 22, 2010 Form 8-K and is not
25  alleged to be misleading – he stated that Donovan and Christiansen's changes to the
    EGCL board were undertaken "surreptitiously in December 2009 without any
26  Board approval or discussion whatsoever."  [SAC Ex. 5.]  Thus, even if they tried,
27  plaintiffs could not plausibly allege that EGCI did not actually own 100 percent of
28  EGCL at the time of each SEC filing attributed to Cole.

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

1    majority of the allegedly misleading SEC filings attributed to Cole – there was no

2    realistic likelihood that Cole or Boyne would cause EGCI to remove Boyne from

3    EGCL's board without the consent of the EGCL board.

4         Even after September 2008, when Steinberg took over as Chairman of EGCI,

5    through November 20, 2009, the date of the last allegedly misleading statement by

6    Cole, plaintiffs do not allege any facts to plausibly suggest that knowledge of the

7    2002 and 2006 agreements would have materially changed their view of EGCI's

8    ownership of EGCL at that time.  Plaintiffs have not alleged that Steinberg or

9    anyone else at EGCI had taken, or even threatened to take, any action that would

10   have violated the 2002 Agreement at any time before the "surreptitious" actions

11   taken by Donovan and Christiansen on December 28, 2009.  Thus, the SAC does

12   not even plausibly support the contention that the failure to disclose the 2002

13   Agreement was misleading at the time of any of the SEC filings signed by Cole.

14        *Zaluski v. United Am. Healthcare Corp.,* 527 F.3d 564 (6th Cir. 2008), is

15   instructive.  In that case, plaintiffs alleged that the defendant failed to disclose that

16   it had made illegal payments to a senator, thus breaching a contract with the State

17   of Tennessee.  The Sixth Circuit held that the information was not material and thus

18   subject to disclosure because "the potential consequences of these payments are the

19   type of predictions and soft information that do not give rise to a duty of disclosure.

20   . . . [T]here is no evidence that UAHC anticipated that the . . . payments would lead

21   to a termination or modification of its contract with TennCare." *Id.* at 574.  Here,

22   there is even less reason than in *Zaluski* to consider the 2002 agreement material

23   and subject to disclosure because there is no allegation that a breach of the

24   agreement, and consequentially, the reversion of EGCL to its original owners, was

25   conceivable, a remote possibility, or ever contemplated until December 2009.

26        2.    Statements Regarding EGCI's Financial Condition.

27        Plaintiffs allege that the financial statements contained in the SEC filings

28   were false because in February 2010, the Company's auditor withdrew its opinion

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

1    for the annual financial statements for 2006, 2007 and 2008, and they had to be

2    restated.  [SAC ¶ 71(e).]  Yet the PSLRA requires plaintiffs to indicate why an

3    alleged misrepresentation was false *when made*.  Here, although plaintiffs have

4    cited to EGCI's statement regarding the supposed "irregularities in the audit

5    confirmation of a bank account" owned by EGCL and the auditor's apparent

6    "inability to confirm the balances in the account" as the basis for the withdrawal of

7    the previously issued audit opinions, plaintiffs do not actually allege any facts

8    indicating why those earlier financial statements were, in fact, false or misleading.

9    *See Hansen,* 527 F. Supp.2d at 1153 ("Plaintiff alleges that Hansen's financial

10   statements were false and misleading as a result of GAAP violations, but fails to

11   explain which line items of the statements were false, why the statements were

12   false, the amount by which the financial statements were misstated, what provisions

13   of GAAP were violated, how those provisions were violated, and who was involved

14   in the alleged GAAP violations.").

15        Notably, although plaintiffs repeatedly point to the auditor's 2010 withdrawal

16   of its opinions for 2006 through 2008, there is no allegation that a restatement for

17   those years was ever issued.  Moreover, while plaintiffs compare EGCL's

18   abbreviated *unaudited* accounts for 2008, which reflect only £ 763 in cash, to

19   EGCI's 2008 financial statements, which show approximately $8.3 million in cash,

20   plaintiffs failed to point out that EGCL's amended *audited* accounts for 2008 show

21   a cash balance consistent with EGCI's 2008 financial statements.[6]

22   **B.    Plaintiffs Have Failed To Plead Facts Giving Rise
          To A Strong Inference Of Scienter As To Cole.**

23

24        To adequately plead scienter, plaintiffs must "state with particularity facts

25   giving rise to a strong inference that the defendant acted with the required state of

26   _____

27   [6]    The allegations of falsity regarding the SOX certifications signed by Cole
     merely incorporate the same allegations made with respect to the filed SEC reports

28   themselves.  Those allegations fail for the same reasons set forth in Section I.A.

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

No. SACV-10-002552-DOC(RNBx)

mind." 15 U.S.C. § 78u-4(b)(2); *see also Tellabs,* 551 U.S. at 314. This requires

plaintiffs to plead facts – not mere conclusions – which create a strong inference of

actual intentional misconduct or, at the very minimum, deliberate recklessness,

which must be so extreme a departure from standards of ordinary care that the

Ninth Circuit has defined it as a form of intentional or knowing misconduct. *Zucco*

*Partners,* 552 F.3d at 991. A securities fraud complaint cannot survive a motion

under Rule 12(b)(6) or 12(c) unless the inference of scienter is "cogent and at least

as compelling as any opposing inference one could draw from the facts alleged."

*Tellabs,* 551 U.S. at 314; *see also Zucco Partners,* 552 F.3d at 991 (quoting

*Tellabs*); *In re Dot Hill Systems Corp. Sec. Litig.,* 594 F. Supp.2d 1150, 1158 (S.D.

Cal. 2008) (plaintiffs did not plead facts establishing defendants' recklessness,

much less actual intent, at the time allegedly false financial statements were issued).

Apart from a handful of conclusory statements claiming fraudulent intent,

plaintiffs allege no facts showing that Cole possessed the requisite scienter at the

time the allegedly false statements or omissions were made. Instead, plaintiffs

attempt to infer Cole's intent from his position as a director and sometimes officer,

and his presumed access to its books and records, the fact that he signed the SEC

filings and SOX Certifications from April 2007 through November 2009, and the

fact that EGCI's auditor subsequently withdrew its earlier audit opinions.

Ironically, the allegations made in the SAC under the heading "**V. Additional**

**Allegations Demonstrating Falsity and Scienter**" [SAC at 39], quote extensively

from Cole and Boyne's correspondence to the board and show that they were acting

to protect EGCI, actions inconsistent with any allegation of scienter as to them.

None of those allegations is sufficient as a matter of law to create a strong

inference of scienter. Moreover, any inference of scienter is negated by the

complete absence of any facts suggesting a motive for Cole to act with fraudulent

intent. Ultimately, the more compelling inference – indeed, the only reasonable

inference from the allegations and facts that this Court may consider – is that the

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF          No. SACV-10-002552-DOC(RNBx)
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

1   2002 and 2006 agreements were not disclosed in the SEC filings because, until the

2   very end of 2009 and beginning of 2010, Cole never thought there was any

3   likelihood that he and Boyne, as directors and officers of EGCI, would cause EGCI

4   to breach its agreements and remove Boyne as director of EGCL.  Additionally,

5   rather than an inference of fraudulent intent, it is a far more compelling inference

6   that the auditor's withdrawal of its opinions for EGCI's financial statements for

7   2006 through 2008 was the result of miscommunication between the Company and

8   its auditor stemming from "corporate infighting" and the dysfunctional relationship

9   between the Co-Chairmen and the other board members.

10              1.    Plaintiffs Do Not Allege Facts Demonstrating That Cole
                      Acted With Fraudulent Intent Or Deliberate Recklessness.

11        Plaintiffs must allege contemporaneous information showing Cole possessed

12   the requisite scienter at the time the allegedly false statements or omissions were

13   made.  *See Glazer Cap. Mgmt. v. Magistri,* 549 F.3d 736, 745 (9th Cir. 2008); *In re*

14   *Apple Computer, Inc.,* 127 Fed. Appx. 296, 301 (9th Cir. 2005) ( "[p]laintiff fails to

15   allege any specific facts showing that [defendant] knew his statement was false

16   when he made it," and noting that "[w]e have rejected similar allegations . . . that

17   do not specify when the defendant learned what she currently knows.").

18        Here, plaintiffs have alleged no such facts as to Cole.  Not even plaintiffs'

19   confidential witness, CW1, is alleged to have personal knowledge of Cole's mental

20   state regarding the allegedly false filings.  [SAC ¶¶ 59(c), 144.]  Plaintiffs have not

21   alleged that CW1 ever spoke to Cole about the relationship between EGCI and

22   EGCL, or about the Company's financial statements.  In short, the SAC is

23   completely devoid of any facts demonstrating Cole's mental state at the time he

24   signed each of the allegedly false SEC filings.  *See, e.g., Zucco Partners,* 552 F.3d

25   at 998 (scienter allegations inadequate where they fail to establish that the witness

26   "has reliable personal knowledge of the defendants' mental state"); *New York State*

27   *Teachers' Ret. Sys. v. Fremont Gen. Corp.,* No. 2:07-cv-5756-FMC-FFMx, 2009

28

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF                    No. SACV-10-002552-DOC(RNBx)
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

1   U.S. Dist. LEXIS 94241, at *36 (C.D. Cal. Sept. 25, 2009) (no scienter where

2   allegations did not establish that confidential witnesses were in "a position to gain

3   personal knowledge of what Defendants saw, knew, or thought.").

4        Because they do not allege any facts demonstrating Cole's actual mental

5   state, plaintiffs instead fall back on circumstantial allegations that Cole acted with

6   intent because, based on the small size of the Company and his participation in

7   management, he must have known that the statements were false. [SAC ¶¶ 141(a),

8   33, 56(a)-(e), 143, 148.]  As this Court observed in its decision dismissing the

9   Section 10(b) claims against Donovan, "[t]he Ninth Circuit . . . 'has rejected these

10  kinds of "he-must-have-known" allegations when offered to demonstrate scienter

11  under the PSLRA.'"  *See* Order dated May 26, 2011 (Docket Entry No. 121)

12  (quoting *Zucco Partners LLC v. Digimarc Corp.,* 445 F. Supp.2d 1201, 1208 (D.

13  Or. 2006)); *see also Glazer,* 549 F.3d at 746 ("'[g]eneral allegations of defendants'

14  'hands-on' management style, their interaction with other officers and employees,

15  their attendance at meetings, and their receipt of unspecified weekly or monthly

16  reports are insufficient' to create a strong inference of scienter.").[7]

17       Plaintiffs fare no better with their allegations that Cole signed SOX

18  Certifications.  [SAC ¶¶ 73-75, 78-80, 85, 88-89, 96-97, 104, 106.]  Allegations that

19  a defendant signed a SOX Certification, without more, are insufficient to raise a

20  strong inference of scienter.  *Glazer,* 549 F.3d at 747; *see also Zucco Partners,* 552

21  F.3d at 1003-1004 ("boilerplate language in . . . required certifications under

22  Sarbanes-Oxley section 302(a) add nothing to the scienter calculus.").

23       Additionally, the mere fact that, in February 2010, EGCI's auditor withdrew

24  its audit opinions for the years 2006 through 2008 is not itself sufficient to raise a

25  strong inference of scienter.  *See Zucco Partners,* 552 F.3d at 1000 ("the mere

26

27  [7]   Similarly, to the extent plaintiffs seek to establish collective scienter of all
    defendants, the Ninth Circuit has never adopted a theory of collective scienter.
28  *Glazer,* 549 F.3d at 744-745.

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

21

1   publication of a restatement is not enough to create a strong inference of scienter.").

2   Any attempt to suggest that Cole knew that EGCI's financial statements were false

3   at the time they were made is negated by several facts.

4       First, Cole's letters to the EGCI board in 2010, which are not alleged to be

5   false, demonstrate that Cole believed, even after the audit opinions were withdrawn,

6   that the original financials were accurate.  In his February 25, 2010 letter, Cole

7   noted that he was "confident" that the Company's net assets would be in excess of

8   $26 million for 2009.  [SAC Ex. 3.]  In his April 20, 2010 letter, he states that the

9   Company had "positive equity of $22m as at September 2009."  [SAC Ex. 5.]  He

10  further states his belief that the auditor's withdrawal was not based on inaccurate

11  financial information, but rather on confusion and "misinformation resulting from

12  the Co-Chairmen's interference with the audit process."  [*Id.*]  Also, EGCI's May

13  18, 2010 Form 8-K reflects Boyne's belief that the account at the heart of the

14  controversy with EGCI's auditor "exists and had a balance of $12.9 million as of

15  February 26, 2010."  [SAC ¶ 134.][8]

16      Second, plaintiffs' attempt to infer scienter from the disparities between the

17  2008 year-end financial statements for EGCI and the abbreviated unaudited

18  accounts for EGCL for the same period fails because, as noted previously, EGCL

19  filed amended audited accounts several weeks before plaintiffs filed the SAC.

20  [SAC Ex. 1; Greenbaum Dec. Ex. P.]  The later accounts support Cole's contention

21  that the financial statements originally filed with the SEC were accurate.

          2.     The Absence Of Any Facts Suggesting A Motive
                  For Cole Negates An Inference Of Scienter.

22      In the Ninth Circuit, facts showing mere motive and opportunity to commit

24  fraud are not sufficient to establish a strong inference of scienter or deliberate

---

[8]    As Boyne further stated: "your statement to the auditors that a bank account
did not exist was subsequently proven to be incorrect and based upon a
misunderstanding."  [SAC ¶ 140(b).]

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF      No. SACV-10-002552-DOC(RNBx)
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS

1   recklessness. *In re Metricom,* 2004 U.S. Dist. LEXIS 7834 at *105 ("Plaintiffs

2   must come closer to alleging intent, as opposed to mere motive and opportunity.");

3   *see also In re Silicon Graphics,* 183 F.3d at 974.  On the other hand, the absence of

4   facts suggesting a motive tends to negate an inference of scienter.  *In re Worlds of*

5   *Wonder Sec. Litig.,* 35 F.3d 1407, 1425 (9th Cir. 1994) (minimal stock sales

6   negated scienter); *In re Wet Seal Sec. Litig.,* 518 F. Supp.2d 1148, 1177 (C.D. Cal.

7   2007) ("Because Plaintiffs do not allege that any officers . . . benefitted from any

8   allegedly misleading statement, it is unreasonable to infer fraud").

9        Plaintiffs do not allege that Cole ever owned or sold any stock of EGCI or

10  EGCL or that he benefitted personally or financially in any way from the allegedly

11  false statements attributed to him.  He had nothing to gain from concealing the

12  existence of the 2002 Agreement or 2006 Agreement and nothing to gain from the

13  subsequent breaches committed by EGCI.  The absence of any alleged personal

14  benefit to Cole negates the inference of scienter.  To the contrary, the fact that Cole

15  supported the amendment of the agreements to provide for a fixed annual license

16  fee of $9 million to EGCI, even after Donovan and Christiansen breached the 2002

17  and 2006 agreements, causing EGCL to revert to its original owners, demonstrates

18  his good faith belief in EGCI's prospect for success and desire to make it succeed.

19  *Worlds of Wonder,* 35 F.3d at 1177 (officers' continued efforts in product

20  development and marketing "evinced their good faith belief" in company's

21  prospects).

   3.   Any Possible Inference Of Scienter Is Less Compelling
        Than The Alternative Non-Fraudulent Inference.

22

23       To survive a motion on the pleadings, plaintiffs must allege with particularity

24  facts which create an inference of scienter that is "cogent and at least as compelling

25  as any opposing inference one could draw from the facts alleged." *Tellabs,* 551

26  U.S. at 314.  Here, given the well-pleaded facts in the SAC, the documents attached

27  and referred to by the plaintiffs, and publicly available information, the more

28

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

23

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS          No. SACV-10-002552-DOC(RNBx)

1  compelling inference – really, the only reasonable inference – is not that Cole acted

2  with fraudulent intent or with deliberate recklessness.  Instead, it is that the 2002

3  and 2006 agreements were not disclosed because it was never contemplated that the

4  covenants that might cause the reversion of EGCL to its original owners would ever

5  be breached.  Certainly, neither Cole nor Boyne would have caused EGCI to breach

6  those covenants when they were directors, Cole was CEO and Boyne was CFO.

7  Even after Steinberg became Chairman in September 2008, the more reasonable

8  inference is that he was aware of the agreements as a result of his due diligence, and

9  there was no reason to assume that the Company intended to breach those

10  agreements or, acting rationally, would take any actions inconsistent with them.

11  Once the prospect arose that EGCI might interfere with EGCL's board, Cole and

12  Boyne gave Donovan and Christiansen "repeated warnings [SAC Ex. 5], and Cole

13  even supported an amendment after the breach to provide EGCI a $9 million annual

14  license fee.  [SAC ¶ 67(b).]

15        Similarly, it is more reasonable to conclude that the withdrawal of the

16  auditor's opinions for 2006, 2007 and 2008 was not due to any intentional financial

17  fraud, but because of the "corporate in-fighting" between the two factions on the

18  EGCI board.  Both Cole and Boyne continued to express their view of the financial

19  condition of the Company even after the audit opinions were withdrawn, and their

20  view is supported by the audited 2008 financial statements recently filed for EGCL.

21  **II.    COLE IS ENTITLED TO JUDGMENT ON PLAINTIFFS' SECOND**
22  **CAUSE OF ACTION BECAUSE THEY HAVE FAILED TO**
   **ADEQUATELY PLEAD A SECTION 20(a) VIOLATION**

23        Since the SAC fails to allege the elements of a Section 10(b) violation of

24  materially false statements at the time the statements were made and the requisite

25  scienter, there cannot be a secondary claim against Cole as a control person.  *Zucco*

26  *Partners,* 552 F.3d at 990.

27        Moreover, actions taken in breach of the 2002 and 2006 Agreements in

28  December 2009 and thereafter were made after the last allegedly false statements

SILLS CUMMIS &
GROSS P.C.
ATTORNEYS AT LAW
NEWARK

1  were made that were attributable to Cole (in November 2009).  [SAC ¶ 106.]  After

2  that time, as alleged in the SAC, Cole protested the actions taken by EGCI, warned

3  of violations, complained that the board and audit committee were not properly

4  functioning, and resigned from the board.  [SAC ¶ 140(a).]  He clearly was not a

5  control person during this later period.  *Laven v. Flanagan,* 695 F. Supp. 800, 808

6  (D.N.J. 1988) (minority board members who contested actions of majority were not

7  control persons).  Thus, the Section 20(a) claim against Cole should be dismissed.

8  ### CONCLUSION

9  　　For the foregoing reasons, defendant Lee Cole respectfully requests that the

10  Court dismiss the Second Amended Complaint against him with prejudice.

11

12  DATED:  August 29, 2011                    Respectfully submitted,

13

14  　　　　　　　　　　　　　　　　　　By:  _s/ Lawrence B. Steinberg_

14  　　　　　　　　　　　　　　　　　　Lawrence B. Steinberg, Esq.

15  　　　　　　　　　　　　　　　　　　Buchalter Nemer, a Professional Corporation
　　　　　　　　　　　　　　　　　　1000 Wilshire Boulevard, Suite 1500

16  　　　　　　　　　　　　　　　　　　Los Angeles, CA 90017-2457

17  　　　　　　　　　　　　　　　　　　Telephone: (310) 460-4481
　　　　　　　　　　　　　　　　　　Facsimile: (310) 282-8213

18

19  　　　　　　　　　　　　　　　　　　-and-

20  Kenneth R. Schachter, Esq. (pro      Jeffrey J. Greenbaum, Esq. (pro hac vice)

21  hac vice)                            Hervé Gouraige, Esq. (pro hac vice)
Sills Cummis & Gross P.C.             Sills Cummis & Gross P.C.

22  30 Rockefeller Plaza, 29th floor   One Riverfront Plaza

23  New York, New York 10112             Newark, New Jersey 07102

24  Telephone: (212) 643-7000            Telephone: (973) 643-7000
Facsimile: (212) 643-6500             Facsimile: (973) 643-6500

25

26  　　　　　　　　　　　　　　　　　　Counsel for Defendant Lee J. Cole

27

28

Sills Cummis &
Gross P.C.
Attorneys At Law
Newark

25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF          No. SACV-10-002552-DOC(RNBx)
DEFENDANT LEE J. COLE'S MOTION FOR JUDGMENT ON PLEADINGS