**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

O 

**CIVIL MINUTES - GENERAL**

Case No. SACV 10-00252 DOC (RNBx)        Date: October 19, 2011

Title: DALTON PETRIE, ET AL. -V- ELECTRONIC GAME CARD, INC., ET AL.

DOCKET ENTRY
    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                                                                                Date:_____ Deputy Clerk: _____

PRESENT:

                    THE HONORABLE DAVID O. CARTER, JUDGE

     Julie Barrera                                    Not Present
  Courtroom Clerk                              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

    NONE PRESENT                           NONE PRESENT

PROCEEDING (IN CHAMBERS): GRANTING DEFENDANT LEE J. COLE'S MOTION FOR
                                  JUDGMENT ON THE PLEADINGS AND DEFENDANT
                                  LINDEN BOYNE'S MOTION TO DISMISS THE SECOND
                                  AMENDED COMPLAINT

       Before the Court are a Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) ("Motion for Judgment on the Pleadings") filed by Defendant Lee J. Cole ("Cole") and a Motion to Dismiss the Consolidated Second Amended Complaint for Violations of the Federal Securities Laws Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss") filed by Defendant Linden Boyne ("Boyne") in the above-captioned case (Dockets 162 and 165, respectively).[1] The Court finds these matters

---

[1] Also before the Court is Defendant Cole's Motion to Confirm the Existence of a Stay of Discovery Under the PSLRA Pending Determination of Cole's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) (Docket 161). This motion is hereby DENIED AS MOOT, given that any substantive decision on the Motion would be contemporaneous with the Motion for Judgment on the Pleadings. If the parties have

appropriate for decision without oral argument. Fed.R.Civ. P. 78; Local Rule 7-15. After reviewing the moving, opposing and replying papers thereon, and for the reasons set forth below, the Court hereby GRANTS both the Motion for Judgment on the Pleadings and Motion to Dismiss.

## I.   BACKGROUND

### a.   Factual History

This case is a purported class action filed by Lead Plaintiffs Dr. Thomas Lee, Margaret Yu and Scott Lovell ("Plaintiffs"). The facts, according to Plaintiffs' Consolidated Second Amended Complaint ("SAC") (Docket 83) are as follows. Electronic Game Card Inc. ("EGC") is a small Company whose business consists of designing and manufacturing "scratch off" devices for various casinos, lotteries and other gaming establishments primarily in the United Kingdom and Europe. SAC, ¶ 2. Nearly all of ECG's reported revenues were allegedly derived from its UK and European operating subsidiary, Electronic Game Card, Ltd. ("EGCL"). *Id.*

During the purported class period, which the Complaint defines as lasting from April 5, 2007 to May 18, 2010 (inclusive), Plaintiffs contend that EGC engaged in a fraud to conceal from and misstate to EGC's investors the true financial condition and performance of EGC. *Id.* at ¶ 2. Of particular importance, Plaintiffs allege that EGC's ownership of EGCL was subject to a secret 2002 agreement signed by Defendant Linden Boyne ("Boyne") that could (and did) allow Boyne and his wholly-controlled entity, Greenfield Capital International Limited ("Greenfield"), to take full control of EGCL. *Id.* at ¶ 4. Plaintiffs consequently aver that any statements that discussed EGC's "ownership of EGCL, its assets and revenue stream," but which failed to disclose the existence of the 2002 agreement, were "materially false and misleading." *Id.* at ¶ 5.

Plaintiffs filed suit against EGC, Boyne, Cole, Kevin Donovan ("Donovan"), Eugene Christiansen ("Christiansen"), Anna Houssels ("Houssels"), and the Estate of Lord Leonard Steinberg ("Steinberg") on March 2, 2010. Boyne allegedly served as EGC's CFO and Secretary from the start of the purported class period until August 31, 2009. Houssels allegedly became an EGC director in September 2008 and later, on February 1, 2009, Executive Vice President of Sales, until she resigned from the company on February 21, 2010. Farrell apparently served as an EGC director from October 2, 2008 until October 28, 2009. Donovan allegedly became EGC's CEO and director on February 1, 2009. He replaced Cole, who had served in that capacity since 2003.

The Complaint contains various allegations detailing the relationships of the parties to one another. In particular, the Complaint avers that bitter infighting took place between Cole and Boyne, on the one hand, and Donovan and Christiansen on the other.

---

further disputes as to the existence of a stay, they should bring a new motion not linked to Cole's Motion for Judgment on the Pleadings.

### b. Procedural History

Christiansen, Houssels, Farrell and Donovan brought previous motions to dismiss the SAC's predecessor, the Consolidated First Amended Complaint ("FAC").  In an order entered on January 12, 2011, the Court denied the Defendants' motion to dismiss the FAC's claims under Section 20(a) of the Securities and Exchanges Act of 1934, but granted the Defendants' motion to dismiss its claims for violation of Section 10(b) of the Securities and Exchanges Act of 1934 ("Section 10(b)") and of SEC Rule 10b-5 ("Rule 10b-5") (Docket 80).  The Court granted Plaintiffs leave to amend.

Plaintiffs filed the SAC on February 11, 2011 (Docket 83).  In the SAC, Plaintiffs declined to reassert their Section 10(b) and Rule 10b-5 claims against Christiansen, Houssels, and Farrell, but did reassert this claim against Donovan.  On May 26, 2011, the Court again granted Donovan's motion to dismiss (Docket 121). Plaintiffs chose not to file a third amended complaint (Docket 154).

On April 29, 2011, Plaintiffs requested that the clerk enter default judgment against both Boyne and Cole (Dockets 104 and 105). To avoid litigating the default motion and after a dispute over service of process, Cole and Plaintiffs entered into a stipulation extending Cole's time to answer the SAC and precluding Cole from filing a pre-answer motion (Docket 113). Boyne entered into a slightly different stipulation, in which the default against him was withdrawn in exchange for consenting to personal jurisdiction and answering the SAC within thirty days (Docket 151). Cole's answer was filed on June 7, 2011 (Docket 124). Boyne's answer was filed on September 2, 2011 (Docket 167). Boyne now seeks to dismiss the SAC, while Cole seeks judgment on the pleadings.

## II. LEGAL STANDARD

### 1. 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief.  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)).  In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949.  If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed.  *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950.  Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense.  *Id.*

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).  However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment.  *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).   Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Id.*

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment.  *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### 2. 12(c) Judgment on the Pleadings

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) operates as the functional equivalent of a Rule 12(b)(6) motion to dismiss. *Cafasso v. Gen. Dynamics C4 Sys.,* 347 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citing *Dworkin v. Hustler Magazine,* 867 F.2d 1188, 1192 (9th Cir. 1989) ("the same standard of review applies to motions brought under either [Rule 12(b)(6) or 12(c)]") (quotations omitted); *Cardenas v. McLane Foodservice, Inc.,* No. CV 10-473 DOC (FFMx), 2011 WL 2714430, at *1 (C.D. Cal. Jan. 31, 2011) ("A motion for judgment on the pleadings must be evaluated under the same standard applicable to motions to dismiss pursuant to Rule 12(b)(6).").

### III. DISCUSSION

As discussed above, the standard for a 12(b)(6) motion to dismiss and 12(c) judgment on the pleadings is the same. Defendants Boyne and Cole also face the exact same allegations, as further demonstrated by the fact that Plaintiffs filed one joint opposition for both the Motion to Dismiss and Motion for Judgment on the Pleadings (Docket 171). The Court will follow Plaintiffs' structure and address both Motions together, noting any differences between the Boyne and Cole where applicable.[2]

---

[2]There are also a variety of requests for judicial notice. These requests are GRANTED to the extent that they contain information relied on by the Court in this Order and are otherwise DENIED AS MOOT.

### Section 10(b) and Rule 10b-5 Claims

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege facts showing (1) a material misrepresentation, (2) scienter, (3) a connection with the purchase or sale of security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharms, Ins. v. Broudo*, 544 U.S. 336, 341 (2005). The Private Securities Litigation Reform Act ("PSLRA") created heightened pleading standards for a securities fraud complaint. *Tellabs Inc. v. Makor Issues***.** *& Rights Ltd.*, 551 U.S. 308, 321 (2007). "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002) (citing *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)). "The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'" *Id.* at 1084-85 (citing *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999)).

To meet this heightened pleading requirement for falsity, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at 1085 (citing 15 U.S.C. §§ 78u-4(b)(1)).The second requirement of the PSLRA is that the complaint must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Id.* (citing 15 U.S.C. §§ 78u-4(b)(2)) (emphasis added). The Ninth Circuit has interpreted the scienter pleading requirement as meaning that plaintiffs "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *Silicon Graphics*, 183 F.3d at 974. The *Silicon Graphics* court further clarified that "recklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct." *Id.* at 977. The requisite recklessness must be an "extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers that is either known to the defendant or so obvious that the actor must have been aware of it." *Id.* at 984. A plaintiff cannot proceed on pleadings averring scienter based on mere "motive and opportunity" but instead must "state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Id.* at 979. Finally, under the PSLRA "when determining whether plaintiffs have shown a strong inference of scienter, the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

Plaintiffs assert two primary allegations against Boyne and Cole. First, Plaintiffs aver that Boyne and Cole signed and submitted Form 10KSB to the SEC on April 5, 2007, which contained an allegedly false description of EGC's ownership and control of EGCL. SAC, ¶ 65. In relevant part, the 10KSB states that the "Company owns 100% of the share capital of Electronic Game Card, Ltd., a company incorporated under the laws of England, through its wholly owned U.S. subsidiary Electronic Game Card Marketing, Inc. (Delaware)." *Id.* at ¶ 66. Plaintiffs allege that this statement was false or materially misleading because it did not disclose the existence and terms of an allegedly secret 2002

agreement signed by Boyne, under which certain conditions could trigger the transfer of EGCL's ownership to a third party. *Id.* at ¶ 67. The contingency is described in a February 25, 2010 letter from Cole filed with the SEC on Form 8-K on April 9, 2010. *Id*. Although Plaintiffs state that EGC has not disclosed the terms of the 2002 Agreement, they indicate that certain actions were taken, which led to an entity called EPN Advisory Limited owning 100% of the share capital of EGCL as of March 1, 2010. *Id*. Approximately two months later, Boyne and Greenfield were named the sole directors. *Id*.

Plaintiffs' second allegation also stems from the same 10KSB filed with the SEC. Plaintiffs aver that the 10KSB falsely reported cash and cash equivalents at the fiscal year ending December 31, 2006 as $3,052,733 and revenue of $997,363 for fiscal 2006. *Id.* at ¶ 70. The basis for Plaintiffs' allegations rests upon the withdrawal by the Company's auditor, Mendoza Berger and Company, LLP ("M&B"), of its audit opinions for EGC's financial statements for the years ended December 31, 2006, 2007, and 2008. *Id.* at ¶ 71. M&B stated that it had become "aware of irregularities in the audit confirmation of a bank account" represented to be held by ECG but for which M&B was unable to confirm the balance in the account. *Id.* at ¶ 123. The Company later filed an 8-K relaying its concerns that "the reported revenue may be materially overstated and that the reported carrying value of its assets and investment in third-party companies may not be fairly stated." *Id.* at ¶ 71. Plaintiffs conclude from the foregoing information that "[b]ecause the Company's financial statements for the fiscal years ended December 31, 2006, 2007, and 2008 could no longer (sic) relied upon and had to be restated, the Company's financial statements and related information in its annual reports filed with the SEC were false when made." *Id.*

The Complaint contains essentially identical versions of the above two allegations in reference to additional SEC filings signed by Cole and Boyne, except with different financial estimates for different years. *Id.* at ¶ 76-80 (Quarterly Reports for 2007); 81-85 (Fiscal Year Ended December 31, 2007); 86-89 (Quarterly Reports for 2008); 96-97 (SOX certifications for Fiscal Year Ended December 31, 2008); 99-106 (Quarterly Reports for 2009).

Plaintiffs' two allegations - that Boyne and Cole misled investors by failing to disclose the terms of the 2002 agreement in statements referencing 100% ownership of EGCL and that Boyne and Cole misrepresented financial statements - do not sufficiently allege falsity or scienter to meet the heightened pleading requirements of the PSLRA.

### 1. Falsity of Statements Related to ECGL Ownership

Plaintiffs' primary argument is that Boyne and Cole's omission of any reference to the 2002 "secret" agreement in statements referencing 100% EGCL ownership was materially misleading. Any alleged omissions or misstatements must be material. *In re Cutera Sec. Litig.,* 610 F.3d 1103, 1108 (9th Cir. 2010). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Halkin v. VeriFone Inc. (In re VeriFone Sec. Litig.),* 11 F.3d 865, 868 (9th Cir. 1993). Simply pleading that a statement is incomplete is insufficient. *Brody v.*

*Transitional Hosps. Corp.,* 280 F.3d 997, 1006 (9th Cir. 200). To violate Rule 10b-5, a statement is only misleading "if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.* 527 F.3d 982, 985 (9th Cir. 2008).

      This case is analogous to *In re Cutera*, where investors alleged that there should have been an earlier disclosure of the details of Cutera's sales force reorganization. *In re Cutera,* 610 F.3d at 1110. The Ninth Circuit agreed with the district court that reasonable investors would not have "received a materially different impression of Cutera's state of affairs" had the plaintiffs' ideal language been utilized in Cutera's first press release. *Id.* Here, too, Plaintiffs have pointed to no evidence indicating that their valuation of EGC stock would have been different had they known there was a remote possibility that EGCL would be transferred to a third party. Plaintiffs do not dispute Boyne and Cole's assertion that, at the time the EGCL ownership statements were made, there was no realistic likelihood that the triggering circumstances in the 2002 agreement would ever come to fruition. Motion for Judgment on the Pleadings, 17. Plaintiffs attempt to argue that because the triggering circumstances did ultimately occur, they must have been likely to occur. Opposition, 10. This argument lacks merit. Plaintiffs cannot point to any circumstances which, at the time the statements were made, would have given Boyne or Cole reason to think the transfer provision of the 2002 agreement would ever be applied.

      Similarly, in *Zaluski v. United Am. Healthcare Corp.,* the Sixth Circuit found that undisclosed information was not material because there was "no evidence that UAHC anticipated that the . . . payments would lead to a termination or modification of its contract with TennCare."527 F.3d 564, 574 (6th Cir. 2008). There, the corporation *knew* that its activities were an explicit breach of a contract with the State of Tennessee, and the court still deemed the existence of the breaching activities immaterial. *Id.* Here, the circumstances are even more favorable to the Defendants. EGC retained ownership of EGCL for seven years while Boyne was director, until unforeseen events intervened. Boyne Reply, 8. Boyne and Cole apparently had no reason to think the 2002 Agreement would ever take effect. Corporations are not required to put every possible contingency in their public filings; only that information necessary to correct an otherwise misleading statement. *In re Cable & Wireless, PLC Sec. Litig.,* 332 F. Supp. 2d 896, 902 (E.D. Va. 2004) ("defendants do not have a duty to disclose a contingent liability, if the liability is unlikely to occur"). Plaintiffs now have the advantage of knowing that the triggering circumstances took place, and they may not plead fraud by hindsight.

      Plaintiffs attempt to preclude the Court from considering the merits of Boyne and Cole's alleged misstatements based on the Court's previous decision granting Donovan's Motion to Dismiss (Docket 121) ("Donovan Order"). Plaintiffs are mistaken as to their application of the law of the case doctrine. In its Order granting Donovan's Motion to Dismiss, this Court held that Donovan "describes the specific misstatements with particularity," referring to Donovan's alleged failure to inform investors of the existence of the 2002 agreement. Donovan Order, 3. Donovan, however, did not even dispute Plaintiffs' allegations that a reasonable investor would have been misled by the omission of the 2002

agreement. *Id.* at 4. Donovan likely did not dispute these allegations because, as described later in the Donovan Order, he did even not know of the 2002 agreement. *Id.* Donovan also has an allegedly contentious and bitter relationship with both Boyne and Cole, who were responsible for the 2002 agreement. As such, it is logical that Donovan would not defend Boyne and Cole's failure to mention the 2002 agreement. Here, Boyne and Cole strongly dispute Plaintiffs' allegations that the omission of the 2002 agreement was materially misleading. The situation here is thus significantly different than in the Court's Donovan Order. Further, the SAC accused Donovan of misstating EGC's cash balance, revenue, and/or income in four earnings calls. *Id.* at 3. These are completely different allegations than those facing Cole and Boyne in regard to their alleged financial misrepresentations. The law of the case doctrine is inapposite and the Court will consider the validity of Boyne and Cole's arguments.

Plaintiffs have not sufficiently pled the materiality of Boyne and Cole's alleged omission of the 2002 agreement to meet the heightened pleadings requirement of the PSLRA.

### 2. Falsity of Financial Statements

Plaintiffs' second category of allegations refers to EGC's allegedly false and misleading financial statements. Plaintiffs primarily argue that EGC's financial statements were misleading because M&B, the auditor, withdrew its certifications for those financial statements. Opposition, 14. It is on this basis that Plaintiffs assert the statements must be "clearly false" and "there is no question" that the statements were false and misleading. *Id.* Yet, Plaintiffs allege that the auditors' withdrawal "confirms" the underlying falsity while curiously failing to point to evidence of any underlying falsity. Opposition, 14. Plaintiffs later argue that the discrepancy between EGC's 2008 financial statement and EGCL's 2008 financial statement shows that "EGC's entire balance sheet was a sham." Opposition, 15. Cole, meanwhile, has submitted independently audited financial statements for EGCL that are consistent with the filed 2008 U.S. statements. Reply, 6. Even if those statements are not considered for their truth, they effectively rebut Plaintiffs' questionable allegation that EGC's financials were a sham, which lack any additional support.

Even without considering Cole and Boyne's alternative explanations for M&B's confusion, however, the Court still finds that Plaintiffs' allegations do not meet the heightened pleading standard of the PSLRA. Plaintiffs have the burden of specifying why the allegedly false statements were actually false at the time they were made. *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1086-87. Here, Plaintiffs have provided no indication, other than the circumstantial evidence of the auditor's withdrawal, that the financial statements at issue are actually false. The auditor's withdrawal is simply not sufficient to meet the heightened pleading requirements of the PSLRA, particularly when considering the variety of other potential explanations for the auditor's confusion. Plaintiffs must simply allege more to meet the heightened standard for falsity under the PSLRA.

### 3. Scienter

To support a Section 10(b) or Rule 10b-5 claim under the PSLRA, a complaint must support an inference of scienter that is "cogent and at least as compelling as any opposing inferences one could draw from the facts alleged." *Tellabs,* 551 U.S. at 324. *See also Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 991 (9th Cir. 2009) (holding that a "court must take into account plausible opposing inferences" when determining whether the pleaded facts give rise to a strong inference of scienter). Plaintiffs have not met this burden for Boyne or Cole.

Plaintiffs appear to unjustifiably attempt to reduce their burden of proving scienter. Plaintiffs cannot unilaterally declare, absent citation, that they "do not need to show their motive to infer scienter." Opposition, 18. Rather, courts have tended to hold that the absence of a motive negates an inference of fraudulent intent. *See, e.g. In re Wet Seal, Inc. Sec. Litig.,* 518 F. Supp. 2d 1148, 1177 (C.D. Cal. 2007) ("Because Plaintiffs do not allege that any officers. . . benefitted from any allegedly misleading statement, it is unreasonable to infer fraud [on their part]."); *In re World of Wonder Sec. Litig.,* 35 F.3d 1407, 1425 (9th Cir. 1994) ("[T]he Officers' minimal sales of stock also negates an inference of scienter."). Plaintiffs likely attempted to decrease their burden because there is no evidence that Cole or Boyne had any motive to engage in the fraudulent behavior alleged. Plaintiffs briefly attempt to argue that Cole and Boyne "walked away with whatever assets EGC had." Opposition, 18. There is, again, no evidence in the SAC supporting this bold-faced assertion. Cole had no ownership interests in either EGC or EGCL, was not a director of EGCL before or after the separation of the companies and had nothing to gain from either of the allegedly misleading statements. Cole Reply, 1. Boyne already held the position that Plaintiffs allege he was seeking to obtain; as such, Boyne also lacked any identifiable motive to engaged in the alleged fraud. Boyne Reply 4-5; SAC ¶ 35. It is unclear to this Court why exactly Plaintiffs believe Cole and Boyne would have sought to defraud EGC's investors.

Plaintiffs also cannot rely on bold conclusory statements to establish scienter, absent any sufficient underlying facts. Plaintiffs claim that because "Defendants admit that they knew that the 2002 agreement (and its amendments) existed, they have also implicitly admitted their scienter"and, as such, "have pleaded a strong an inference of scienter as could possibly be pled." Opposition, 8. Plaintiffs appear to misunderstand the meaning of scienter. The mere knowledge of the existence of the 2002 agreement does not automatically translate into the actual intent to defraud investors. The important issue is "not whether defendants had knowledge of certain undisclosed facts . . . but rather whether defendants knew or should have known that their failure to disclose those facts 'present[ed] a danger of misleading buyers or sellers'." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.,* 632 F.3d 751, 758 (1st Cir. 2011) (citations omitted). There, the court found that the defendants reasonably did not expect that the corporations' worldwide sales would be Affected by a change in Japanese drinking water testing regulations. *Id.* Here, too, it seems reasonable that Boyne and Cole did not expect that the 2002 agreement would ever change EGC's ownership of EGCL.

Plaintiffs' attempt to rely on the law of the case doctrine are, again, misplaced. Donovan could not have had the required scienter because he did not know of the 2002 agreement he was alleged

to have omitted from his statements. Donovan Order, 4-5. An absence of knowledge precludes a finding of scienter on the basis of that knowledge. It does not follow, however, that Cole and Boyne are automatically found to have scienter because they did know about the agreement. Again, their culpability is based on *intent,* not mere knowledge.

Plaintiffs' other basis for inferring scienter is the "magnitude of misstatements." Opposition, 19. This mere fact, without any basis for alleging that Boyne and Cole directly benefitted from the alleged misstatements, is not sufficient to plead scienter. The present facts are easily distinguishable from *In re McKesson HBOC, Inc. Sec. Litig.,* where it would have been impossible "to require anything more specific" in terms of proof of alleged revenue inflation and where there was "much more direct evidence of scienter." 126 F. Supp. 2d 1248 (N.D. Cal. 2000). That is far from the case here, where there is no direct evidence of motive or intent to defraud.

Here, the inference of scienter is not "at least as compelling as any opposing inference," as required by *Tellabs.* 551 U.S. at 314. The more likely scenarios are those propounded by Boyne and Cole. The Court finds it more likely that the 2002 agreement was not explicitly disclosed in the public statements because the triggering circumstances were thought to be too remote to justify disclosure. Boyne and Cole's mere knowledge of the 2002 agreement does not create scienter. In fact, the SAC itself cites to correspondence from Boyne and Cole in which both appear to be concerned about preventing the occurrence of the triggering circumstances set forth in the 2002 agreement. SAC ¶ 140(a)-(b). There is no evidence of recklessness or intent to defraud EGC's investors.

It also appears more likely that the withdrawal of the auditor's opinions was due to "corporate in-fighting" and not intentional fraud. Plaintiffs have not pointed to any direct evidence of Boyne or Cole's scienter with regard to the allegedly false financial statements. Cole, meanwhile, has submitted independently audited financial statements that are consistent with the filed 2008 U.S. statements. Reply, 6. These audited financial statements are not even necessary, however, to defeat Plaintiffs' arguments of scienter. Whether or not the statements in questions were false may be irrelevant. *See Louisiana School Employees' Retirement System v. Ernst & Young, LLP,* 622 F.3d 471, 485 (6th Cir. 2010) ("Without specific allegations showing that Ernst & Young either knew or recklessly disregarded the falsity of its own statements at the time the statements were made, the fact that the statements later turned out to be false is irrelevant to a cause of action under the PSLRA."). There is no indication that Boyne or Cole had any reason to think the financial statements were false when made, particularly when considering that an independent auditor agreed at the time the statements were made.

Plaintiffs have not sufficiently pled scienter as to Boyne or Cole, such that the SAC cannot survive the Motion to Dismiss or Motion for Judgment on the Pleadings.

### Section 20(a) Claims

Liability under Section 20(a) of the Securities and Exchanges Act of 1934 ("Section 20(a)"), often referred to as "control person liability," requires a plaintiff to show (1) the commission of a primary violation and (2) that the defendant directly or indirectly exercised control over the violator. *Paracor Fin, Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996). "[A]n insider may only violate § 20(a) when an independent violation of the securities laws has occurred." *In re Verifone Sec. Litig.,* 11 F.3d at 872. Here, the Court has yet to find a primary violation, as the Court has granted each and every Motion to Dismiss or Motion for Judgment on the Pleadings. The only reason that the Section 20(a) claim was upheld in the Court's January 12, 2011 Order was that "[n]one of the Moving Defendants contest the notion that the Complaint contains viable allegations of Boyne's and Cole's scienter, which may be imputed to EGC. *In re CV Therapeutics Sec. Litig.*, 2004 WL 1753251 (N.D. Cal. Aug. 5, 2005) (citing *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1433-35 (9th Cir. 1995)). That is no longer the case, after the present Order. Plaintiffs have not adequately pled Boyne and Cole's scienter, such that it cannot be imputed to EGC. Because there is no primary violation, there can be no Section 20(a) claim.

### IV. DISPOSITION

For the foregoing reasons, the Motion to Dismiss and Motion for Judgment on the Pleadings are GRANTED with respect to Plaintiffs' claims under Sections 10(b) and 20(a) of the Securities and Exchanges Act of 1934 and SEC Rule 10b-5. The Court hereby orders that these claims be DISMISSED WITH LEAVE TO AMEND.

Plaintiffs shall file any amended complaint no later than November 21, 2011.

The Clerk shall serve this minute order on all parties to the action.