traded on the NASDAQ Bulletin Board.    While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds, if not thousands, of members in the proposed Class.   Members of the Class may be identified from records maintained by EGC or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

171.   Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

172.   Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

173.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of EGC; and

c.      to what extent the members of the Class have sustained damages and the proper measure of damages.

174.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VIII. RELIANCE PRESUMPTIONS

### A. *Affiliated Ute*

175. Neither Plaintiffs nor the Class need prove reliance – either individually or as a class because under the circumstances of this case, which involves a failure to disclose material related party transactions, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security

### B. Fraud-on-the-Market Presumption of Reliance

176. At all relevant times, the market for EGC's common stock was an efficient market for the following reasons, among others:

a. EGC's stock met the requirements for listing, and was listed and actively traded on the NASDAQ Bulletin Board, a highly efficient and automated market;

b. During the class period, on average, 1,847,165 shares of EGC common stock were traded on a weekly basis. During the Class Period approximately 57,109,428 million shares were outstanding (per the Company's fiscal year 2008 10-K). Approximately 3.23% of all outstanding shares were bought and sold on a weekly basis, demonstrating a very strong presumption of an efficient market;

c. EGC regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire

services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d.     EGC was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period.  Each of these reports was publicly available and entered the public marketplace;

e.     At least 50 NASD member firms were active market-makers in EGC stock at all times during the Class Period; and

f.     Unexpected material news about EGC was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

177.   As a result of the foregoing, the market for EGC's common stock promptly digested current information regarding EGC from all publicly available sources and reflected such information in EGC's stock price.   Under these circumstances, all purchasers of EGC's common stock during the Class Period suffered similar injury through their purchase of EGC's common stock at artificially inflated prices, and a presumption of reliance applies.

## IX.     FIRST CAUSE OF ACTION

### Violation of Section 10(b) of

### The Exchange Act Against and Rule 10b-5

### Promulgated Thereunder Against EGC, Boyne And Cole

178.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

179.   This cause of action is asserted against EGC, Boyne and Cole (collectively "Section 10(b) Defendants").

180.   During the Class Period, Section 10(b) Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class

Period, did: (1) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (2) cause Plaintiffs and other members of the Class to purchase and/or sell EGC's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Section 10(b) Defendants, individually and as a group, took the actions set forth herein.

181. Section 10(b) Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of EGC as specified herein.

182. Section 10(b) Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of EGC's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about EGC and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers EGC's securities during the Class Period.

183. Each of the Section 10(b) Defendants' primary liability, and controlling person liability, arises from the following: (a) Section 10(b) Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections

54

and/or reports; (c) Section 10(b) Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and (d) Section 10(b) Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

184. Section 10(b) Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Section 10(b) Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing EGC's financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Section 10(b) Defendants' false and misleading statements during the Class Period, Section 10(b) Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

185. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for EGC's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of EGC's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Section 10(b) Defendants but not disclosed in public statements by Section 10(b) Defendants during the Class Period, Plaintiffs and the other members of the Class acquired

55

EGC's securities during the Class Period at artificially high prices and were damaged thereby.

186. At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding EGC's financial results and condition, which were not disclosed by Section 10(b) Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired EGC's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

187. By virtue of the foregoing, the Section 10(b) Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

188. As a direct and proximate result of the Section 10(b) Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

189. This action was filed within two years of discovery of the fraud and within five years of Plaintiffs' purchases of securities giving rise to the cause of action.

## X.   SECOND CAUSE OF ACTION

### Violation of Section 20(a) of

### The Exchange Act Against The Individual Defendants

190. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

191. This Second Claim is asserted against each of the Individual Defendants.

192.   The Individual Defendants acted as controlling persons of EGC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

193.   In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

194.   As set forth above, EGC and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

195.   By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

57

196.   This action was filed within two years of discovery of the fraud and within five years of Plaintiffs' purchases of securities giving rise to the cause of action.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a.   Determining that this action is a proper class action and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Class Counsel;

b.   Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.   Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:       November 21, 2011            Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

Laurence M. Rosen (SBN # 219683)
355 South Grand Street, Suite 2450
Los Angeles, CA 90071
Los Angeles, CA 90071
Telephone:  (213) 785-2610
Facsimile:  (213) 226-4684
Email:        lrosen@rosenlegal.com

58

and

Phillip Kim, Esq. (pro hac vice)
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone:   (212) 686-1060
Facsimile:   (212) 202-3827
Email:        pkim@rosenlegal.com

Lead Counsel for Plaintiffs and Class

CONSOLIDATED THIRD AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
No. SACV-10-00252-DOC(RNBx)

# Exhibit 1

**Standard Form to Confirm Account
Balance Information with Financial Institutions**

ORIGINAL
To be mailed to
Financial
Institution's
Name and
Address

CS(Gibraltar) Ltd
Audit Confirmation Unit
PO Box G308 Cristamar 43B
Avda de Las Naciones Unidas
Puerto Banus
29660 Malaga
Spain

**ELECTRONIC GAME CARD LTD**
CUSTOMER NAME

We have provided to our accountants the following information as of the close of business on DECEMBER 31, 2008, regarding our deposit and loan balances. Please confirm the accuracy of the information, noting any exceptions to the information provided. If the balances have been left blank, please complete this form by furnishing the balance in the appropriate space below.* Although we do not request nor expect you to conduct a comprehensive, detailed search of your records, if during the process of completing this confirmation additional information about other deposit and loan accounts we may have with you comes to your attention, please include such information below. Please use the enclosed envelope to return the form directly to our accountants.

1) At the close of business on the date listed above, our records indicated the following deposit balance(s):

| ACCOUNT NAME | ACCOUNT NO. | INTEREST RATE | BALANCE* |
|---|---|---|---|
| Electronic Game Card Inc USD deposit account | 207103-50 | | $8,847,407.17 |

2) We were directly liable to the financial institution for loans at the close of business on the date listed above as follows:

| ACCOUNT NO./ DESCRIPTION | BALANCE* | DUE DATE | INTEREST RATE | DATE THROUGH WHICH INTEREST IS PAID | DESCRIPTION OF COLLATERAL |
|---|---|---|---|---|---|
| N/A | | | | | |

_____
(Customer's Authorized Signature)

5/2/09
(Date)

The information presented above by the customer is in agreement with our records. Although we have not conducted a comprehensive, detailed search of our records, no other deposit or loan accounts have come to our attention except as noted below.

_____
(Financial Institution Authorized Signature)

10/08/09
(Date)

_____
(Title)

| EXCEPTIONS AND/OR COMMENTS |
|---|
| |

Please return this form directly to our accountants:

Mendoza Berger Company, LLP
9838 Research Drive
Irvine, CA 92618

# Exhibit 2

B.03

# STANDARD FORM TO CONFIRM ACCOUNT
# BALANCE INFORMATION WITH FINANCIAL INSTITUTIONS

| ORIGINAL |
|---|
| to be mailed to accountant |

ELECTRONIC GAME CARD LTD
CUSTOMER NAME

**Financial Institution's Name and Address**

Credit Suisse (Gibraltar) Ltd
Audit Confirmation Unit
P O Box G308 Cristamar 43B
Avda. de Las Naciones Unidas
Puerto Banus 29660 Malaga
Spain

We have provided to our accountants the following information as of the close of
business on ____December 31, 2007, regarding our deposit and loan balances.
Please confirm the accuracy of the information, noting any exceptions to the
information provided. If the balance have been left blank, please complete this form
by furnishing the balance in the appropriate space below.* Although we do not request
nor expect you to conduct a comprehensive, detailed search of your records, if during
the process of completing this confirmation additional information about other deposit
and loan accounts we may have with you comes to your attention, please include such
information below. Please use the enclosed envelope to return the form directly to our
accountant.

1.   At the close of business on the date listed above, our records indicated the following deposit balance(s):

| ACCOUNT NAME | ACCOUNT NO. | INTEREST RATE | BALANCE* |
|---|---|---|---|
| Electronic Game Card Ltd | 207103-50 (USD) | | C $ 3,373,773.46 |

2.   We were directly liable to the financial institution for loans at the close of business on the date listed above as follows:

| ACCOUNT NO./DESCRIPTION | BALANCE* | DATE DUE | INTEREST RATE | DATE THROUGH WHICH INTEREST IS PAID | DESCRIPTION OF COLLATERAL |
|---|---|---|---|---|---|
| | | | | | |

_(Customer's Authorized Signature)_                    14ᵗʰ March 2008
                                                       (Date)

The information presented above by the customer is in agreement with our records. Although we have not conducted a comprehensive, detailed
search of our records, no other deposit or loan accounts have come to our attention except as noted below.

_(Financial Institution's Authorized Signature)_       17 March 08
                                                       (Date)

_Account Manager_
_(Title)_

| EXCEPTIONS AND/OR COMMENTS |
|---|

C 3,373,773
Bal per G/L   3,376,761   B.01
Diff          2,988

Please return this form directly to our accountants:

Mendoza Berger Company, L.L.P.
9838 Research Drive
Irvine, CA 92618

* Ordinary balances are intentionally left blank if they are not
Available at the time the form is prepared

Approved 1990 by American Bankers Association, American Institute of Certified Public Accountants, and Bank Administration
Institute. Additional forms available from AICPA-Order Department, P.O. Box 2209, Jersey City, NJ 07303-2209

D451 5051

# Exhibit 3

2-APR-2007 16:12  FROM:CS AUDIT.                    :0019453875652              P.1/1

## STANDARD FORM TO CONFIRM ACCOUNT
## BALANCE INFORMATION WITH FINANCIAL INSTITUTIONS

**ORIGINAL**
to be mailed to accountant

**Electronic Game Card Inc.**
CUSTOMER NAME

**Financial Institution's Name and Address**

Credit Suisse (Gibraltar) Ltd
Audit confirmation Unit
P.O. Box G308 Cristamar 43B
Avenida de Las Naciones Unidas
Puerto Banus 29660 Malaga
Spain

We have provided to our accountants the following information as of the close of business on _____ December 31 _____ 2008 _____ regarding our deposit and loan balances. Please confirm the accuracy of the information, noting any exceptions to the information provided. If the balances have been left blank, please complete this form by furnishing the balance in the appropriate space below. Although we do not request nor expect you to conduct a comprehensive, detailed search of your records, if during the process of completing this confirmation additional information about other deposit and loan accounts we may have with you comes to your attention, please include such information below. Please use the enclosed envelope to return the form directly to our accountants.

1   At the close of business on the date listed above, our records indicated the following deposit balance(s):

| ACCOUNT NAME | ACCOUNT NO. | INTEREST RATE | BALANCE* |
|---|---|---|---|
|  | 207105-50 |  | $2,708,107.65 |

2   We were directly liable to the financial institution for loans at the close of business on the date listed above as follows:

| ACCOUNT NO./DESCRIPTION | BALANCE* | DATE DUE | INTEREST RATE | DATE THROUGH WHICH INTEREST IS PAID | DESCRIPTION OF COLLATERAL |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

(Customer's Authorized Signature)                     03/15/2007
                                                        (Date)

The information presented above by the customer is in agreement with our records. Although we have not conducted a comprehensive, detailed search of our records, no other deposit or loan accounts have come to our attention except as noted below.

(Financial Institution's Authorized Signature)         25th March 07
                                                        (Date)

Manager
(Title)

**EXCEPTIONS AND/OR COMMENTS**

Please return this form directly to our accountants:

Mendoza Berger Company, L.L.P.
9838 Research Drive
Irvine, CA  92618

* Ordinary balances are intentionally left blank if they are not
Available at the time the form is prepared

# Exhibit 4

CREDIT SUISSE 

**CREDIT SUISSE (GIBRALTAR) LIMITED**
P.O. Box 556                          Phone    +(350) 20004000/20004001
Neptune House                         Fax      +(350) 20004900
Marina Bay                            www.credit-suisse.com
Gibraltar

Private Banking
Relationship Management, SIOH434

Diana Ali
Senior Relationship Manager
+(350) 20004506
diana.l.ali@credit-suisse.com

Mr Kevin Donovan
Chief Executive Officer
Electronic Game Card, Inc
5405 Alton Parkway, Suite A-353
Irvine
CA 92604
United States of America

For Recipient's Use Only

January 29th, 2010

Dear Mr Donovan

I refer to your recent email communication and to our telephone conversation earlier today.

I can hereby confirm that Electronic Game Card Inc, opened an account with ourselves on the 5th December 2005, account no 208163. This account was subsequently closed on the 13th January 2010. During the time that the account was opened we can confirm that no assets were ever received.

According to our records the following persons were mandated to operate the bank account:

Mr L J Boyne
Mr L Cole

Please note that the account no 207103 that you refer to in your email of the 21st January is not an account for Electronic Game Card Inc or Electronic Game Card (UK) Limited.

Should you require any further information please do not hesitate to contact us.

Yours sincerely

CREDIT SUISSE (GIBRALTAR) LIMITED

Diana Ali
Senior Relationship Manager

Tyrone Vinet
Assistant Vice President

Registration number 14788
Authorised by Financial Services Commission to conduct investment business
Registered in Gibraltar

# Exhibit 5

# Exhibit 6

Electronic Game Card
Listing of Bank Accounts

| Bank | Account Number | 2008 Amount | |
|------|----------------|-------------|---|
| Clydesdale Bank | 4505-224252-500 | $ | 3,063.09 |
| Clydesdale Bank | 10202381 | | £377.85 British Pound Sterling |
| CS (Gibralter) Ltd (Credit Suisse) | 207103-50 | $ 8,847,407.17 | |
| Bank of America | 0094-9126-9864 | $ | 24,784.62 |

Amounts are from the confirmations or the bank statements

**djusting Journal Entries JE #  1**                                   A.5

**o book client adjusting journal entry in SAGE.**

| | | | |
|---|---|---|---|
| 1210 | High Rate Deposit ( Credit Suisse) | 3,588.00 | |
| 2100 | Accounts Payable | 589,095.00 | |
| 1210 | High Rate Deposit ( Credit Suisse) | | 589,095.0 |
| 4900 | Miscellaneous Income | | 3,588.0 |
| **otal** | | **592,683.00** | **592,683.0** |

**djusting Journal Entries JE #  2**                                   A.5

**ost Audit Adjustments. Client requested AJE.**

| | | | |
|---|---|---|---|
| 1210 | High Rate Deposit ( Credit Suisse) | 12,742.00 | |
| 3100 | Retained Earnings | 42,258.00 | |
| 2109 | Accruals | | 55,000.0 |
| **otal** | | **55,000.00** | **55,000.0** |

1/28/2010
2:40 PM

Client:        260340 - Electronic Game Cards, Inc
Engagement:    10K 2008 - Electronic Game Cards, Inc.
Period Ending: 12/31/2008
Trial Balance: A.1.01 - Consolidated Trial Balance
Workpaper:     B.01 - Consolidated Cash Lead Sheet

| Account | Description | | EGC Inc 12/31/2008 | EGC Ltd 12/31/2008 | Inc. 12/31/2008 | PRE-CONSOL 12/31/2008 | JE Ref # | EJE | CONSOL 12/31/2008 |
|---|---|---|---|---|---|---|---|---|---|
| **Group : [B]** | **Cash & Equivalents** | | | | | | | | |
| **Subgroup : [B.01]** | **Cash and Equivalents** | | | | | | | | |
| 1000 | Cash | | 0.00 | 0.00 | 1,735.00 | 1,735.00 | | 0.00 | 1,735.00 A.1.02 |
| 1200 | Bank ( Bank of America) | B.04 | 24,784.00 B.02 | 1,104.00 | 0.00 | 25,888.00 | | 0.00 | 25,888.00 |
| 1210 | High Rate Deposit ( Credit Suisse) | B.05b | 8,271,055.00 B.03 | (16,838.00) | 0.00 | 8,254,217.00 | | 0.00 | 8,254,217.00 |
| 1220 | Deposit Account (short term) | | 59.00 | 0.00 | 0.00 | 59.00 | | 0.00 | 59.00 |
| Subtotal [B.01] Cash and Equivalents | | | 8,295,898.00 | (15,734.00) | 1,735.00 | 8,281,899.00 | | 0.00 | 8,281,899.00 |
| Total [B] Cash & Equivalents | | | 8,295,898.00 | (15,734.00) | 1,735.00 | 8,281,899.00 | | 0.00 | 8,281,899.00 |
| | Sum of Account Groups | | 8,295,898.00 | (15,734.00) | 1,735.00 | 8,281,899.00 | | 0.00 | 8,281,899.00 |
| | Net (Income) Loss | | (4,650,343.00) | (1,461,353.00) | (1.00) | (6,111,697.00) | | 0.00 | (6,111,697.00) |

see conclusion at Ap-B.00

**Standard Form to Confirm Account**
**Balance Information with Financial Institutions**

| ORIGINAL | **ELECTRONIC GAME CARD LTD** |
| To be mailed to | CUSTOMER NAME |

**Financial Institution's Name and Address**

CS(Gibraltar) Ltd
Audit Confirmation Unit
PO Box G308 Cristamar 43B
Avda de Las Naciones Unidas
Puerto Banus
29660 Malaga
Spain

We have provided to our accountants the following information as of the close of business on DECEMBER 31, 2008, regarding our deposit and loan balances. Please confirm the accuracy of the information, noting any exceptions to the information provided. If the balance have been left blank, please complete this form by furnishing the balance in the appropriate space below." Although we do not request nor expect you to conduct a comprehensive, detailed search of your records, if during the process of completing this confirmation additional information about other deposit and loan accounts we may have with you comes to your attention, please include such information below. Please use the enclosed envelope to return the form directly to our accountants.

1)  At the close of business on the date listed above, our records indicated the following deposit balance(s):

| ACCOUNT NAME | ACCOUNT NO. | INTEREST RATE | BALANCE* |
|---|---|---|---|
| Electronic Game Card Inc USD deposit account | 207103-50 | | $ 8,847,407.17 |

2)  We were directly liable to the financial institution for loans at the close of business on the date listed above as follows:

| ACCOUNT NO./ DESCRIPTION | BALANCE* | DUE DATE | INTEREST RATE | DATE THROUGH WHICH INTEREST IS PAID | DESCRIPTION OF COLLATERAL |
|---|---|---|---|---|---|
| N/A | | | | | |

_(Customer's Authorized Signature)_                    5/2/09  _(Date)_

The information presented above by the customer is in agreement with our records. Although we have not conducted a comprehensive, detailed search of our records, no other deposit or loan accounts have come to our attention except as noted below.

_(Financial Institution Authorized Signature)_          10/08/09  _(Date)_

MANAGER  _(Title)_

| EXCEPTIONS AND/OR COMMENTS |
|---|
| |

Please return this form directly to our accountants:

Mendoza Berger Company, LLP
9838 Research Drive
Irvine, CA 92618

**Standard Form to Confirm Account**
**Balance Information with Financial Institutions**

| ORIGINAL<br>To be mailed to |
|---|
| Financial<br>Institution's<br>Name and<br>Address |

Zac West
Busness Banking
Clydesdale Bank plc
35 Regents Street
London SW1Y4ND

**ELECTRONIC GAME CARD INC.**
CUSTOMER NAME

We have provided to our accountants the following information as of the close of business on DECEMBER 31, 2008, regarding our deposit and loan balances. Please confirm the accuracy of the information, noting any exceptions to the information provided. If the balances have been left blank, please complete this form by furnishing the balance in the appropriate space below.* Although we do not request nor expect you to conduct a comprehensive, detailed search of your records, if during the process of completing this confirmation additional information about other deposit and loan accounts we may have with you comes to your attention, please include such information below. Please use the enclosed envelope to return the form directly to our accountants.

1) At the close of business on the date listed above, our records indicated the following deposit balance(s):

| ACCOUNT NAME | ACCOUNT NO. | INTEREST RATE | BALANCE* |
|---|---|---|---|
| Electronic Game Card Ltd USD CURRENT | 4505 224252 500 | 0% | $3068.09 |
| Electronic Game Card Ltd GBP CURRENT | 10202381 | 0% | £377.85 |

2) We were directly liable to the financial institution for loans at the close of business on the date listed above as follows:

| ACCOUNT NO./<br>DESCRIPTION | BALANCE* | DUE DATE | INTEREST RATE | DATE THROUGH WHICH INTEREST IS PAID | DESCRIPTION OF COLLATERAL |
|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A |

_(Customer's Authorized Signature)_ 5/2/09 _(Date)_

The information presented above by the customer is in agreement with our records. Although we have not conducted a comprehensive, detailed search of our records, no other deposit or loan accounts have come to our attention except as noted below.

_(Financial Institution Authorized Signature)_ 9/2/9 _(Date)_

ZAK WEST BUSINESS PARTNER
_(Title)_

| EXCEPTIONS AND/OR COMMENTS |
|---|
| |

Please return this form directly to our accountants:

Mendoza Berger Company, LLP
9838 Research Drive
Irvine, CA  92618

B,04

# Bank of America

RECEIVED
2 0 JAN 2009

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Page 1 of 3
Statement Period
12/01/08 through 12/31/08
E00 P PC  2C 61          .0026433
Enclosures 0
Account Number  0094 9126 9864

*Business Banking*

01487 281 SCM999 I 3 0

ELECTRONIC GAME CARD INC
NORFOLK HOUSE
31 ST JAMES'S SQUARE
LONDON, UNITED KINGDOM  SW1Y4-  0

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
### www.bankofamerica.com

For additional information or service, you may call:
1-866-BUSINESS (1-866-287-4637)

Or you may write to us:
Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Deposit Accounts

## Full Analysis Business Checking - Small Business

ELECTRONIC GAME CARD INC

### Your Account at a Glance

| Account Number | 0094 9126 9864 | Statement Beginning Balance | $734.62 |
| Statement Period | 12/01/08 through 12/31/08 | Amount of Deposits/Credits | $175,250.00 |
| Number of Deposits/Credits | 4 | Amount of Withdrawals/Debits | $151,200.00 |
| Number of Withdrawals/Debits | 3 | Statement Ending Balance | $24,784.62 |
| Number of Days in Cycle | 31 | Average Ledger Balance | $3,007.20 |
| | | Service Charge | $0.00 |

B.01

No reconciling items.

Recycled Paper