# CREDIT SUISSE

CREDIT SUISSE (GIBRALTAR) LIMITED
NEPTUNE HOUSE
MARINA BAY
GIBRALTAR

| ACCOUNT NAME : | ELECTRONIC GAME CARD LTD |
| --- | --- |
| ADDRESS : | NORFOLK HOUSE
L G FLOOR
31 ST JAMES'S SQUARE
LONDON
SW1Y 4JR |

STATEMENT DATE : 31st DECEMBER 2008

ACCOUNT No : 207103-50

## DEPOSIT ACCOUNT BALANCES

| Currency | Balance | Description | Balance (Equivalent in USD) | Interest |
| --- | --- | --- | --- | --- |
| USD | 8,818,606.17 | USD DEPOSIT ACCOUNT | 8,818,606.17 | USD 29,801.70 |
| TOTAL ACCOUNT BALANCES
TOTAL INTEREST | | | 8,847,407.87 | USD 29,801.70 |

This Statement shall be deemed to be correct unless notice of discrepancy is given within 30 days

PBC



**C**☉ **Clydesdale Bank**

POST

RECEIVED
15 JAN 2009

1107/00                    49100A
THE DIRECTORS
Norfolk House, Lower Ground Floor
31 St James' Square
London
SW1Y 4JR

P13B502:002841/01/001/002

**Can we help?**
If you have any queries or
require information about
your account please contact
Principal Branch Piccadilly
35 Regent Street
London SW1Y 4ND
08457 240024

10202381

---

# Your Business Bank account statement

Page 1 of 2
Statement No: 81

**Statement date**
09 January 2009

**Account name**
ELECTRONIC GAME CARD
LIMITED

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 10 Dec 2008 | Balance from previous statement | | | 463.13 |
| 12 Dec | Charges | 25.00 ✓ | | |
| | 001269 | 4166.67 ✓ | | 3728.54 OD |
| 15 Dec | Charges Adjustment | | 50.00 ✓ | 3678.54 OD |
| 16 Dec | Transfer | | 8000.00 ✓ C S | |
| | Charges | 25.00 ✓ | | |
| | 001270 | 5440.23 Flights | | 1143.77 OD |
| 17 Dec | DD Pipex Internet Ltd | 14.66 ✓ | | |
| | DD Pipex Internet Ltd | 14.66 ✓ | | |
| | Charges | 25.00 ✓ | | 1198.09 OD |
| 18 Dec | Xss4509395439... | | 1901.14 C S | |
| | DD Netscalibur UK Ltd | 529.20 ✓ | | |
| | 001268 | 22.00 ✓ | | 151.85 |
| 19 Dec | Transfer | | 5000.00 ✓ C S | |
| | Charges | 6.27 ✓ | | |
| | DD C/Bank Mcard | 3336.44 ✓ | | 1809.14 |
| 23 Dec | Xss4509397852... | | 5274.26 ✓ | 7083.40 |
| 29 Dec | Transfer | 5300.00 ✓ | | |
| | 001274 | 1695.33 ✓ | | 88.07 |
| 31 Dec | Transfer | | 4000.00 ✓ | |
| | Transfer | 300.00 ✓ | | |
| | Unpaid Chq Chg | 35.00 ✓ | | |
| | Gross Interest | | 0.34 | |
| | 001272 | 3704.33 ✓ Shpara | 49.08 | Y/end 31/12/08 |
| 06 Jan | Xss4509302509... | | 5345.45 ✓ Joan | |
| | Xss4509302151... | | 7349.99 ✓ Jan | 12744.52 |

**Sort Code**
82-11-07

**Account number**
10202381

**IBAN**
GB45CLYD82110710202381

**BIC**
CLYDGB21943

**Current balance**
£753.46

DD = Direct Debit
SO = Standing Order
TB = Telephone Banking
EB = Electronic Banking
OD = Overdrawn

B.03

£
11635.19

CB



Cas
unprerented
chq's
1236     (1692.93)
1273     (429.39)
1275     (4166.67)
1276     (1575.00)

Save more efficiently by planning ahead with great rates on our 40 Day
Notice Account. To find out more about our 40 Day Notice Account or our
range of Business Deposit accounts contact your Business Partner or call
your local Financial Solutions Centre on 08457 034567.

Clydesdale Bank is a trading name of Clydesdale Bank PLC which is authorised and regulated by the Financial Services
Authority. Credit facilities other than regulated mortgages are not regulated by the Financial Services Authority.
Clydesdale Bank PLC Registered in Scotland No. SC001111. Registered Office: 30 St Vincent Place, Glasgow G1 2HL.
A member of National Australia Bank Group.

B.02b

**RECEIVED**
**0 7 JAN 2009**

◊ Clydesdale Bank

P132602/000056/001/001

Electronic Game Card Limited
Norfolk House
Lower Ground Floor
31 St James' Square
London  SW1Y 4JR

**Can we help?**
If you have any queries or
require information about
your account, or would like
to advise us of any changes
to your contact details
please contact your
Relationship Manager.

# Your Foreign Currency Account
# U.S. Dollar

Page 1 of 1




| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 29 Dec | Brought forward | | | 1,196.87 |
| 30 Dec | @IN | | 0.26 | 1,197.13 |
| | @IN | 103.31 | | 1,093.82 B02 |
| 05 Jan | GPC 2009010500164152 | | 10,000.00 ✓ | 11,093.82 |
| | GPD 2009010500164152 | 10.43 | | 11,083.39 |
| | Carried forward | | | 11,083.39 |

*No reconciliations*

**Statement date**
05 January 2009

**Account name**
Electronic Game Card

**Account number**
4505224252500

**BIC**
CLYDGB2SXXX

**IBAN**
GB51CLYD82810122425500

**Iban & Bic Information Is
Now Included On Your
Statement**

**Statement/Page Number**
276/1

**Issued by**
Payments Operations
CB Head Office Complex
40 St Vincent Place
GLASGOW
G1 2HL

| | |
|-----|-----|
| ADJ | ADJUSTMENT |
| CHQ | CHEQUE |
| DEP | DEPOSIT FUNDING |
| DRP | DEPOSIT REPAYMENT |
| FEX | FOREIGN EXCHANGE DEAL |
| FXD | FOREIGN EXCHANGE DEAL |
| GPC | PAYMENT CREDIT |
| GPD | PAYMENT DEBIT |
| INT | INTEREST |
| @IN | INTEREST |
| LNA | LOAN DRAWDOWN |
| LRP | LOAN REPAYMENT |
| MSC | MISCELLANEOUS |
| REV | REVERSAL |
| TFR | TRANSFER |

Clydesdale Bank is a trading name of Clydesdale Bank PLC which is authorised and regulated by the Financial Services
Authority. Credit facilities other than regulated mortgages are not regulated by the Financial Services Authority.
Clydesdale Bank PLC Registered in Scotland No. SC001111. Registered Office: 30 St Vincent Place, Glasgow G1 2HL.

Electronic Game Cards, inc                          **PBC**                    B.05b
   December 31, 2008
Credit Suisee Bank Rec

Bank bal @ 12/31/08              B.05   GL     8,847,408

       o/s checks                            (3,588) *i*

Bal per unadj. g/l @ 12/31/08                  8,843,820

AJE 1                           A.2.01         3,588
AJE 1                           A.2.01      (589,095)        **A**
AJE 5                           A.2.01        12,742

Adj bal per g/l @ 12/31/08      B.05a       8,271,055   B.01

A - Posted as an adjusting entry for disbursements mailed before year end and subsequently cleared on January Credit Suisse bank statement.

*i* - immaterial

Electronic Game Cards, Inc                                    **PBC**                              B.03
  December 31, 2008
Clydesdale Bank Rec GBP -EGC LTD

**Account #**        **10202381**       **Clydesdale Bank GBP**

Balance per Bank Statement@ 12/31/08                          B.03a              49

|  | O/S Checks |  |  |  |
|---|---|---|---|---|
| B.03a | 1236 | (1,693) | | |
| ↓ | 1273 | (4,249) | | |
| | 1275 | (4,167) | | |
| | 1276 | (1,575) | | |
| Total O/S Checks | | | (11,684) | |

Balance per g/l @ 12/31/08 in GBP                                          (11,635)

                       currency rate     A.5.1   0.691

Balance per g/l @ 12/31/08 in USD                                          (16,838) B.01

1)        See w/p B.02 for Purpose, Procedure and Conclusion

2)        MBC obtained the bank statement located at B.03a and examined it for unusual items noting:

              Date of the bank statement is 1/9/09.  MBC examined the bank statement activity balance @ 12/31/08 noting the balance was 49.08 and no unusual activity from 12/31/08 to 1/1/09.

3)        Total o/s checks totaled 11,684 which is below ISA materiality; therefore, MBC will pass on performing o/s checks testwork @ 12/31/08.  MBC noted no deposits in transit @ 12/31/08.

4)        MBC obtained the bank confirmation located at B.02a, noting the bank confirmed a balance of 377.85£ which varies from the bank balance per the statement at 12/31/08.  Per examination of the 12/31/08 activity, this variance arises from deposits in transit of $335.  MBC notes this is reasonable and will pass on further investigation @ 12/31/08.

Electronic Game Cards, Inc          **PBC**      B.02
   December 31, 2008
Clydesdale Bank Rec USD -EGC LTD

*Purpose: To determine if cash (for all cash accounts B.02 , B.03, B.04, B.05 if fairly stated @ 12/31/08.*

*Procedure: Peformed audit test procedures according to audit cash program located at w/p  B.00 .*

*Conclusion: Based on testwork peformed, cash is fairly stated @ 12/31/08.*

Account #       4505224252500      Clydesdale Bank

Balance per Bank Statement @ 12/31/08          B.02b    1,094

           RECONCILING ITEM       10   *IM pass*

Balance per g/l @ 12/31/08         1,104   B.01

1. MBC examined the bank statement located at B.02b, noting the statement balance is 1/5/09.  MBC obtained the balance at 12/30/08 and noted no bank activity per the statement from 12/30/08 to 12/31/08.

MBC noted the following:

Will pass on performing o/s check testwork, due to no o/s checks.
See w/p B.02b for the cash confirm received.  The bank confirmed a balance of $3063.09 in US Dollars which which varies from the bank statement of $1,969 .  MBC will pass on this variance due to immaterialy .

# Exhibit 7



CREDIT SUISSE (GIBRALTAR) LIMITED
P.O. Box 556
Neptune House
Marina Bay
Gibraltar ·

Phone    +(350) 20004000/20004001
Fax      +(350) 20004900
www.credit-suisse.com

Private Banking
Relationship M

Name Surname
Title/function
+(350) 20078399
name.surname@credit-suisse.com

Mr Kevin Donovan
Chief Executive Officer
Electronic Game Card, Inc
5405 Alton Parkway, Suite A-353
Irvine
CA 92604
United States Of America

For Recipient's Use Only

February 05, 2008

**Regarding**

Dear Mr Donovan

Further to our earlier telecon with myself and my colleague Tyrone Vinet, we can hereby confirm that the attachments you included in your earlier emails today, also attached, have not been produced by Credit Suisse (Gibraltar) Ltd.

As indicated in our telecon, we will be reporting this matter officially to the Royal Gibraltar Police - Financial Crime Unit  We would recommend that you do likewise. The contact person is Detective Constable Romero, tel no 0035020072954.

Yours sincerely

CREDIT SUISSE (GIBRALTAR) LIMITED

Diana Ali
Senior Relationship Manager

pp Tyrone Vinet
Assistant Vice President

Registration number 14788
Authorised by Financial Services Commission to conduct investment business
Registered in Gibraltar

# Exhibit 8

# CREDIT SUISSE

CREDIT SUISSE (GIBRALTAR) LIMITED
NEPTUNE HOUSE
MARINA BAY
GIBRALTAR

ACCOUNT NAME : ELECTRONIC GAME CARD LTD

ADDRESS : NORFOLK HOUSE
L G FLOOR
31 ST JAMES'S SQUARE
LONDON
SW1Y 4JR

STATEMENT DATE : 30ᵗʰ SEPTEMBER 2009

ACCOUNT No : 207103-50

## DEPOSIT ACCOUNT BALANCES

| Currency | Balance | Description | Balance (Equivalent in USD) | Interest |
|----------|---------|-------------|------------------------------|----------|
| USD | 12,416,912.26 | USD DEPOSIT ACCOUNT | 12,416,912.26 | USD 81,250.02 |

**TOTAL ACCOUNT BALANCES** 12,498,162.28

**TOTAL INTEREST** USD 81,250.02

This Statement shall be deemed to be correct unless notice of discrepancy is given within 30 days

# Exhibit 9

# MENDOZA BERGER & COMPANY, L.L.P

## Certified Public Accountants

To:      The Board of Directors of Electronic Game Card
            Mr. Linden Boyne, Acting Chief Financial Officer

From:    James F. Berger, CPA
            Senior Partner, Mendoza Berger & Company, LLP

Date:     February 22, 2010

Subject:  Recertification of Financial Statements

After reviewing recent e-mails sent to me by Mr. Boyne and Mr. Alan Taylor of RIC Asset Management, it has been confirmed that neither Electronic Game Card Incorporated nor Electronic Game Card Limited had the cash account at Credit Suisse that was confirmed by us during our audits of the 2006, 2007 and 2008 financial statements. An account had been opened by Electronic Game Card Limited and was subsequently closed in January, 2010, however it never contained any deposits during the entire time it had been open. Evidentially, as was pointed out by both Mr. Boyne in his e-mail to me on February 19, 2010, and confirmed again in his e-mail to me on February 22, 2010, and Mr. Alan Taylor, in his e-mail to me on February 19, 2010, the account we confirmed actually belonged to SBI Bioventures or its parent, NAB Ventures Limited, and never actually represented the balance of Electronic Game Card for the periods confirmed. Therefore, the disclosure of the cash accounts for the financial statement we opined on were materially misstated, since the balance was actually an investment account balance EGC Limited had with SBI Bioventures. As such, the financial statements failed to disclose the breakdown of the investment account between CD's, common stock (both marketable and non marketable), and corporate or governmental bonds. Such investment balances require this breakdown in a note to the financial statements. In addition, the Company is required to calculate both the realized and unrealized gains and losses for the audited periods.

Our audit procedures need to be enhanced regarding the SBI Bioventures account for the 2006, 2007 and 2008 years and Credit Suisse as well. In addition, we will need to perform additional procedures with respect to RIC Asset Management as well. We need to perform/obtain the following:

**For years 2006 through 2008**

1. We need to obtain the investment fund's audited financial statements for each year.
2. We need to obtain the auditor's assessment of the investment company's internal control for each year. This is usually in the form of a separate report for each year under audit.
3. We need to obtain Electronic Game Card Limited's transaction history for each year under audit. This statement will contain deposits (transfers in) and withdrawals (transfers out), investment purchased, investments sold, interest earned, and the account value at the end of each quarter and at the end of each year. Should EGC Limited's activity only be an allocation of the final balance, we will then need to examine the transactional history for the entire fund. We will also need to see the allocation of the fund's assets among its investors. Normally such allocations accompany the Form K-1 given the fund's investors at the end of each year. Since this is a foreign fund, we will need to examine the fund's equivalent form.
4. Because of the significance of EGCI's investment with SBI Bioventures, we will need to gain access to the fund's auditor's workpapers, to satisfy ourselves as to the physical location of the fund's assets and the audit procedures that the audit firm employed to ascertain the existence of the fund's assets.
5. We will need organizational documents for SBI Bioventures, NAB and RIC Asset Management. We need to determine if any related party relationships exist within the fund itself or between EGCI and/or EGC Limited and the fund, its parent, or RIC Asset Management, who finally acquired NAB. Such relationships, if they exist, must be disclosed in the financial statements.
6. We will need to contact and speak to the officer at Credit Suisse who signed the confirmations we received each year. We need to understand the reasoning for issuing an audit confirmation to Mendoza Berger confirming the existence of an account with Credit Suisse when this account actually belonged to another entity which we now believe to be SBI Bioventures.
7. We will need to obtain written assurance from Credit Suisse that they are satisfied as to the explanation we receive in answer to question 6 and what further steps, if any, they plan to take to correct this matter.

**For the 2009 audit**

8. We will need the same audited financial statement for RIC Asset Management that we required from SBI Bioventures.
9. We need to obtain the auditor's assessment of the investment company's internal control for each year. This is usually in the form of a separate report for each year under audit.

10.   We need to obtain Electronic Game Card Limited's transaction history for the 2009 audit year. This statement will contain deposits (transfers in) and withdrawals (transfers out), investment purchased, investments sold, interest earned, and the account value at the end of each quarter and at the end of each year. Should EGC Limited's activity only be an allocation of the final balance, we will then need to examine the transactional history for the entire fund. We will also need to see the allocation of the fund's assets among its investors. Normally such allocations accompany the Form K-1 given the fund's investors at the end of each year. Since this is a foreign fund, we will need to examine the fund's equivalent form.

11.   We will need to gain access to the RIC auditor's work papers to satisfy ourselves as to the physical location of the fund's assets and the audit procedures that the audit firm employed to ascertain the existence of the fund's assets.

This list of audit procedures may not be all inclusive. Based on what we discover during the course of performing these steps, facts may come to light that may cause us to expand our audit procedures beyond what I have listed here.

We will need the complete cooperation of management and the Board of Directors to perform the additional audit procedures. Much of what I have listed in this memorandum has already been requested. I had been promised the audited financial statements for RIC Asset Management by Monday morning, but have yet to receive them. I have also tried to understand why we were given an audit confirmation from Credit Suisse that represented to be for EGC Limited funds on deposit with Credit Suisse which we are now being told by both Mr. Boyne and Mr. Taylor was not, in fact, EGC Limited's bank account, but rather some custodial account maintained by the fund as a collateral account. I will need a complete explanation from the confirmation's signatory as to why we were not told the true nature of this account.

As you can see by this memorandum, I still have many unanswered questions. My involvement in the audit process will give the process a fresh perspective since I was not directly involved with the original audit work.

Please contact me if you have any questions regarding this memorandum. Since there is a significant time difference between our US offices and EGC Limited's London office and RIC's Luxemburg office, I suggest you reach me on my cell phone if you need to reach me prior to 9:30 AM Pacific Standard Time or after 6:00 PM Pacific Standard Time. My cell phone number is (001-)949-423-3586. The 001 international code is for the benefit of those callers outside the US.

# Exhibit 10



## Latest / Current Available Information on Company:

| | | | | |
|---|---|---|---|---|
| | | Operator | Tracy Braz | |
| Incorporation No. | 92138 | Date Profile issued | November 14, 2011 | |
| Name | INNOVATION AND GROWTH LIMITED | | | |

| Former Names | | Date of Change | Resolution Date |
|---|---|---|---|
| NAB VENTURES LIMITED | | 18/12/2009 | 17/12/2009 |

| | |
|---|---|
| Incorporation Date | July 5, 2004 |
| Type | PRIVATE COMPANY LIMITED BY SHARES |
| Status | |
| Last Annual Return filed made up to | October 20, 2010 |
| Last Accounts filed made up to | February 28, 2010 |
| Registered Office | SUITES 21 & 22 VICTORIA HOUSE, 26 MAIN STREET, GIBRALTAR |

The authorised nominal share capital of the company is:
   GBP 5,000,000.00 divided into: 500000000 ORDINARY shares of GBP 0.01 each

| | |
|---|---|
| Total Number of Authorised Shares | 500,000,000.00 |

The issued nominal share capital of the company is:
   GBP 1.00 divided into: 100 ORDINARY shares of GBP 0.01 each

| | |
|---|---|
| Total Number of Issued Shares | 100.00 |

If the company has issued any shares at a premium no such premium will appear on this profile, such information must be obtained from the Return of Allotments and/or the published accounts filed by the company at the Registry.

Shareholders

| | |
|---|---|
| Name | RIC ASSET MANAGEMENT LIMITED |
| Address | JIPFA BUILDING, 3RD FLOOR, MAIN STREET, ROAD TOWN, TORTOLA, BRITISH VIRGIN ISLANDS |
| Nationality Occupation Shares held | LIMITED COMPANY 100 ORDINARY shares of GBP 0.01 each |

Directors

| | |
|---|---|
| Address | SUITES 21 & 22, VICTORIA HOUSE, 26 MAIN STREET, GIBRALTAR |
| Nationality | |
| Occupation | LIMITED COMPANY |
| Appointed on | 08/07/2004 |
| Resigned on | |

| | |
|---|---|
| Name | VULKON FINANCIAL CORP. LIMITED |
| Address | WESTONE 114 WELLINGTON STREET, LS1 1BA LEEDS, UK |
| Nationality | |
| Occupation | LIMITED COMPANY |
| Appointed on | 10/05/2011 |
| Resigned on | |

Secretaries

| | |
|---|---|
| Name | CAPITAL SECRETARIES LIMITED |
| Address | SUITES 21 & 22, VICTORIA HOUSE, 26 MAIN STREET, GIBRALTAR |
| Nationality | |
| Occupation | LIMITED COMPANY |
| Appointed on | 08/07/2004 |
| Resigned on | |

Charges

| No. | Serial No. | Mortgage, Charge, or Debenture | Amount Secure | Date Registered | Date Satisfied |
|---|---|---|---|---|---|
| 1 | 14384 | MORTGAGE | UNLIMITED AMO | 20/06/2006 | |

This information has been extracted from public records held at the Registry of Companies in Gibraltar. However, the information is only as accurate as that which is filed by the Company.

If the company has issued any shares at a premium no such premium will appear on this profile, such information must be obtained from the Return of Allotments and/or the published accounts filed by the company at the Registry.

For a more in-depth historical record of the Company, it is necessary to carry out a search of the Company's File at Companies House.

Copies of any public documents filed at the Registry are available subject to payment of a fee.

# Exhibit 11



**Companies House**
— *for the record* —

Please complete in typescript,
or in bold black capitals.

**CHWP000**

# 288c
## CHANGE OF PARTICULARS for director or secretary *(NOT for appointment (use Form 288a) or resignation (use Form 288b))*

**Company Number** 04755370

**Company Name in full** SBI BIOVENTURES LIMITED

| | | Day | Month | | Year | |
|---|---|---|---|---|---|---|
| | Date of change of particulars | 0 1 | 0 8 | 2 0 | 0 9 | |

**Changes of particulars form** · *Complete in all cases*

**Name** · *Style / Title* | *Honours etc*

Forename(s)

Surname  GREENFIELD CAPITAL INTERNATIONAL LIMITED

† Date of Birth  | Day | Month | Year |

**Change of name** *(enter new name)* Forename(s)

Surname

**Change of usual residential address ††**
*(enter new address)*

Post town  SUITES 21 & 22 VICTORIA HOUSE

26 MAIN STREET

County / Region | Postcode

Country  GIBRALTAR

†† **Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under the provisions of section 723B of the Companies Act 1985**

**Other change**
*(please specify)*

**A serving director, secretary etc must sign the form below.**

**Signed** *Wayne*  **Date** 31/7/09

(** director / secretary / administrator / administrative receiver / receiver manager / receiver)

\* Voluntary details.
† Directors only.
**Delete as appropriate.

You do not have to give any contact information in the box opposite but if you do, it will help Companies House to contact you if there is a query on the form. The contact information that you give will be visible to searchers of the public record.

**Tel**

DX number          DX exchange

When you have completed and signed the form please send it to the
Registrar of Companies at:
Companies House, Crown Way, Cardiff, CF14 3UZ     DX 33050 Cardiff
for companies registered in England and Wales     or
Companies House, 139 Fountainbridge, Edinburgh, EH3 9FF
for companies registered in Scotland          DX 235 Edinburgh
                                              or LP - 4 Edinburgh 2

SATURDAY

*AJSWTC1N*

A35      01/08/2009          313
        COMPANIES HOUSE

# Exhibit 12



**Companies House**
— *for the record* —

Please complete in typescript,
or in bold black capitals.

CHWP000

# 288c
## CHANGE OF PARTICULARS for director or secretary *(NOT for appointment (use Form 288a) or resignation (use Form 288b))*

| | |
|---|---|
| **Company Number** | 4755370 |
| **Company Name in full** | SBI BIOVENTURES LIMITED |

**Changes of particulars form**   *Complete in all cases*

Date of change of particulars

| Day | Month | Year |
|---|---|---|
| 0 9 | 1 2 | 2 0 0 8 |

**Name**

*Style / Title* | | *Honours etc* |

Forename(s)

Surname | STERLING FCS LIMITED

† Date of Birth

| Day | Month | Year |
|---|---|---|

**Change of name** *(enter new name)* Forename(s)

Surname | GREENFIELD CAPITAL INTERNATIONAL LIMITED

**Change of usual residential address ††**
*(enter new address)* | INTERNATIONAL COMMERCIAL CENTRE, SUITE F8, PO BOX 394

†† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under the provisions of section 723B of the Companies Act 1985

Post town | CASEMATES

County / Region | | Postcode |

Country | GIBRALTAR

**Other change**
*(please specify)*

A serving director, secretary etc must sign the form below.

**Signed** | *[signature]* | **Date** | 09.12.08

(** director / secretary / administrator / administrative receiver / receiver manager / receiver)

* Voluntary details.
† Directors only.
**Delete as appropriate.

You do not have to give any contact information in the box opposite but if you do, it will help Companies House to contact you if there is a query on the form. The contact information that you give will be

| Tel | |
|---|---|
| DX number | DX exchange |

FRIDAY

*A1Q6R5LO*

A26    12/12/2008    339
COMPANIES HOUSE

When you have completed and signed the form please send it to the Registrar of Companies at:
Companies House, Crown Way, Cardiff, CF14 3UZ    DX 33050 Cardiff
for companies registered in England and Wales    or
Companies House, 37 Castle Terrace, Edinburgh, EH1 2EB
for companies registered in Scotland    DX 235 Edinburgh
or LP - 4 Edinburgh 2

# Exhibit 13



March 20, 2009

Mendoza Berger & Company, L.L.P

9838 Research Dr.

Irvine, CA 92618


Dear Sirs,


We are providing this letter in connection with your audits of the consolidated balance sheets of Electronic Game Card, Inc. (the "Company") as of December 31, 2008 and 2007, and the related consolidated statements of operations and comprehensive income, consolidated stockholders' equity, and consolidated cash flows for each of the years then ended for the purpose of expressing an opinion as to whether the financial statements present fairly, in all material respects, the financial position, results of operations, and cash flows of Electronic Game Card, Inc. in conformity with U.S. generally accepted accounting principles. We confirm that we are responsible for the fair presentation in the financial statements of financial position, results of operations, and cash flows in conformity with generally accepted accounting principles. We are also responsible for adopting sound accounting policies, establishing and maintaining internal control, and preventing and detecting fraud.

Certain representations in this letter are described as being limited to matters that are material. Items are considered material if they involve an omission or misstatement of accounting information that, in light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement. An omission or misstatement that is monetarily small in amount could be considered material as a result of qualitative factors.

We confirm, to the best of our knowledge and belief, as of March 20, 2009, the following representations made to you during your audit.

1) The financial statements referred to above are fairly presented in conformity with U.S. generally accepted accounting principles, and include all disclosures necessary for such fair presentation and disclosures required to be included therein by the laws and regulations to which the Company is subject.

2) We have made available to you all—

   a) Financial records and related data.

3) Minutes of the meetings of stockholders, directors, and committees of directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

4) There have been no communications from the SEC or other regulatory agencies concerning noncompliance with, or deficiencies in, financial reporting practices.

5) There are no material transactions that have not been properly recorded in the accounting records underlying the financial statements.

6) We acknowledge our responsibility for the design and implementation of programs and controls to prevent and detect fraud.

7) We have no knowledge of any fraud or suspected fraud affecting the Company involving:

   a) Management,

   b) Employees who have significant roles in internal control, over financial reporting, or

   c) Others where the fraud could have a material effect on the financial statements.

8) We have no knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, former employees, regulators, or others.

9) The Company has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

10) The following, if material, have been properly recorded or disclosed in the financial statements:

    a)  Related party transactions and related accounts receivable or payable, including sales, purchases, loans, transfers, leasing arrangements, and guarantees.

    b)  Guarantees, whether written or oral, under which the company is contingently liable.

11) There are no estimates that may be subject to a material change in the near term that have not been properly disclosed in the financial statements. We understand that *near term* means the period within one year of the date of the financial statements. In addition, we have no knowledge of concentrations existing at the date of the financial statements that make the company vulnerable to the risk of severe impact that have not been properly disclosed in the financial statements.

12) There are no:

    a)  Violations or possible violations of laws or regulations whose effect should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

    b)  Unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with *Statement of Financial Accounting Standards No. 5.*

    c)  Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by *Statement of Financial Accounting Standards No. 5.*

13) The Company has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral.

14) The Company has complied with all aspects of contractual agreements that would have a material effect on the financial statements in the event of noncompliance.

15) The Company has appropriately reconciled its general ledger accounts to their related supporting information. All related reconciling items considered to be material were identified and included on the reconciliations and were appropriately adjusted in the financial statements. All intracompany (and intercompany) accounts have been eliminated or appropriately measured and considered for disclosure in the financial statements.

16) Investments classified under SFAS 115 have been properly reviewed for impairment and have been classified based upon management's intent and ability to hold the investments as available for sale securities and marketable securities.

17) Capital stock repurchase options or agreements or capital stock reserved for options, warrants, conversions, or other requirements have been properly disclosed.

18) Returns since inception are still open and are currently being worked on. The provision for federal income taxes in the balance sheet is adequate to cover any uncertain tax positions.

19) The Company does not owe the PCAOB outstanding past-due accounting support fees.

Except as disclosed in Note 9 to the financial statements, no events have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to, or disclosure in, the financial statements.


Principal Executive Officer, Lee Cole


Chief Accounting Officer, Linden Boyne

# Exhibit 14