UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 10-0252-DOC (RNBx)          Date: February 5, 2015

Title: PETRIE, et al. v. ELECTRONIC GAME CARD, INC., et al.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

PROCEEDINGS (IN CHAMBERS):    ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED THIRD AMENDED COMPLAINT [230] [232] [236] and MOTION FOR JUDGMENT ON THE PLEADINGS [241]

     Before the Court are Defendant Paul Farrell's Motion to Dismiss (Dkt. 230); Defendant Anna Houssels's Motion to Dismiss (Dkt. 232); Defendants Kevin Donovan's and Eugene Christiansen's Motion to Dismiss (Dkt. 236); and Defendant Estate of Lord Steinberg's Motion for Judgment on the Pleadings (Dkt. 241). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers, the Court DENIES Defendants' Motions.

     **I.**      **Background**

     This lawsuit is a putative securities fraud class action brought by Lead Plaintiffs Dr. Thomas Lee, Margaret Yu, and Scott Lovell against Defendants Electronic Game Card, Inc. ("EGC"), Linden Boyne ("Boyne"), Lee Cole ("Cole"), Eugene Christiansen

Case 8:10-cv-00252-DOC-KES Document 268 Filed 02/05/15 Page 2 of 12 Page ID #:4768

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-0252-DOC (RNBx)              Date: February 5, 2015

                                          Page 2

("Christiansen"), Kevin Donovan ("Donovan"), Paul Farrell ("Farrell"), Anna Houssels ("Houssels"), and the Estate of Lord Leonard Steinberg ("Steinberg"). In the Consolidated Third Amended Complaint ("TAC"), the operative complaint, Plaintiffs allege that Defendants EGC, Cole, and Boyne violated Section 10(b) and Rule 10b-5of the Exchange Act. Plaintiffs allege that Defendants Christiansen, Donovan, Farrell, Houssels, and the Estate of Lord Steinberg ("Control Person Defendants") should be held liable as control persons under Section 20(a) of the Exchange Act.[1] The instant Motions are brought by the Control Person Defendants, who seek to dismiss the Section 20(a) claims against them.

### A. Factual Allegations

The facts, according to the TAC, are as follows:

#### a. EGC's Misrepresentations to Investors

During the relevant times, Electronic Game Card, Inc. ("EGC") was a small company of no more than 10 employees whose business consists of designing and manufacturing "scratch off" devices for various casinos, lotteries and other gaming establishments primarily in the United Kingdom and Europe. TAC ¶ 2. Nearly all of ECG's reported revenues were allegedly derived from its UK and European operating subsidiary, Electronic Game Card, Ltd. ("EGCL"). *Id.*

On February 19, 2010, the SEC halted trading in EGC's stock because of questions regarding the accuracy of EGC's financial disclosures about its assets to investors. That same day, EGC announced that its auditor Mendoza & Berger ("M&B") had withdrawn its audit opinions of EGC's financial statements for FY 2006, 2007, and 2008 because of "irregularities in the audit confirmation of a bank account represented to M&B as having been held by [EGCL], a wholly owned subsidiary of [EGC]…" *Id.* ¶¶ 6-7. Subsequently, EGC's stock was delisted and EGC ultimately filed for Chapter 7 bankruptcy, causing investors to lose their entire investment in EGC. *Id.* ¶¶ 17-19.

Plaintiffs allege that, during the class period (April 5, 2007 to May 18, 2010), EGC engaged in a fraud to conceal from and misrepresent to EGC's investors the true financial condition and performance of EGC. *Id.* ¶¶ 1, 3. The alleged misrepresentations included statements about EGC's finances made in EGC's 2006, 2007, and 2008

---

[1] Plaintiffs also bring Section 20(a) claims against Cole and Boyne, but they are not involved in this round of motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-0252-DOC (RNBx)                                                     Date: February 5, 2015
Page 3

10KSBs; quarterly reports from 2007, 2008, and 2009; earnings conference calls in May, August, and November 2009; and a press release dated August 6, 2009. *Id.* ¶¶ 92-132. Plaintiffs allege that EGC's statements regarding its financial results were false and misleading in two main ways, described below.

### i. Credit Suisse

First, EGC's statements were misleading because EGC falsely reported incrementally increasing cash balances when in fact EGC did not possess any of the millions of dollars it claimed it had. *Id.* ¶ 4. M&B's internal audit documents showed that Boyne forged audit confirmation forms, falsely representing to M&B and to the public that EGCL/EGC had millions of dollars in bank account #207103 with Credit Suisse in Gibraltar when in fact EGC only had an account numbered #208163 and it had never had any assets in it. *Id.* ¶¶ 8, 73-75.

### ii. 2002 Secret Agreement and Improper Consolidation of EGC's and EGCL's Financial Results

Second, EGC's statements were misleading because, according to Boyne and Cole, EGC's ownership of EGCL was subject to a secret 2002 agreement ("2002 Secret Agreement"). Under the agreement, EGC agreed not to make any changes to EGCL's articles of associations or its board of directors unless changes were authorized in writing by a majority of the then-existing board of EGCL (Boyne and his entity Greenfield Capital International Limited ("Greenfield")). If EGC violated this clause, ownership of EGCL would revert to a third party, the unnamed original sellers of EGCL. *Id.* ¶ 77. According to Boyne and Cole, Donovan's and Christiansen's decision to remove EGCL's board (and appoint themselves) without the required approval of EGCL caused EGCL ownership to revert back to EGCL's original sellers, such that EGC no longer owned EGCL. *Id.* ¶ 78.

Assuming that the 2002 Secret Agreement really existed, under GAAP, EGC's financial results should not have been consolidated with EGCL's because EGC did not have the requisite degree of control over EGCL. *Id.* ¶¶ 79-83. Plaintiffs consequently aver that any statements regarding EGC's financial results and assets which included EGCL's were materially false and misleading. *E.g.*, *id.* ¶¶ 95, 98, 101, 116, 121, 125.

Plaintiffs allege that Cole and Boyne knowingly concealed the 2002 Secret Agreement from EGC's auditor M&B because they knew that, if M&B knew of the agreement, M&B would not allow EGC to consolidate EGCL's assets into EGC's

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-0252-DOC (RNBx)                                                    Date: February 5, 2015
                                                                                                                Page 4

financial statements. *Id.* ¶ 84. Part of the alleged concealment involved not turning over to M&B minutes from a February 1, 2006 board meeting where the board allegedly discussed the 2002 Secret Agreement. Alternatively, Plaintiffs allege that Cole and Boyne fabricated the February 1, 2006 minutes to cover up their fraud. *Id.* ¶ 91.

### b. Roles of Boyne, Cole, and Control Person Defendants

Boyne, Cole, Christiansen, Donovan, Farrell, Houssels, and Lord Steinberg served EGC in various capacities as board members and executives during the class period. *Id.* ¶¶ 27-39.

The TAC alleges that each of them "directly participated in the management of the Company"; "was directly involved in the day-to-day operations of the Company at the highest levels"; "was privy to the confidential proprietary information concerning the Company and its business and operations"; "was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein"; "was directly or indirectly involved in the oversight or implementation of the Company and Bank's internal controls"; "was aware or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company"; and "approved or ratified these statements in violation of the federal securities laws." *Id.* ¶ 47.

The TAC also alleges that

> [b]y virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

*Id.* ¶ 192.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-0252-DOC (RNBx){{TAB}}Date: February 5, 2015
{{TAB}}Page 5

In addition, the Audit Committee, on which Boyne, Cole, Farrell, and Steinberg served, was allegedly responsible for reviewing EGC's financial statements with management and with EGC's auditors. *Id.* ¶¶ 40-41.

The TAC also makes some more specific allegations regarding each individual.

### i. Boyne and Cole

The TAC specifically alleges that Boyne served as EGC's Chief Financial Officer, Principal Accounting Officer, Secretary, and as a company director throughout the class period. He resigned from those positions on August 31, 2009, but was reappointed as CFO and Secretary two months later. He resigned again on March 1, 2010. While he was a director, Boyne served on the Audit Committee. *Id.* ¶ 27.

Cole served as a company director throughout the class period. He also served as EGC's CEO from the beginning of the class period until he was replaced by Donovan on February 1, 2009. While he was a director, Cole served on the Audit and Compensation Committees. *Id.* ¶ 28.

Most of the allegedly misleading statements, including SEC filings and accompanying Sarbanes-Oxley certifications, were made or signed by Boyne and Cole. *Id.* ¶¶ 93, 96-99, 102, 104-106, 109, 114-115, 118, 122, 126. Cole was a co-signer for the empty EGC account at Credit Suisse and knew that Boyne's representations to M&B regarding the EGCL account at Credit Suisse were false. *Id.* ¶ 160.

### ii. Lord Steinberg

Lord Steinberg first became involved with EGC in November 2007, when he along with others contacted Boyne and Cole with a proposal to join the board, invest capital, and restructure EGC. According to a confidential witness (CW1), in March 2008, Steinberg's secretary relayed a message to CW1 and others, in which Steinberg noted that EGC's large shareholders Pequot, Trafalet, and Ingalls & Snyder suspected that EGC's financial figures were not what they seemed. In early to mid-2008, CW1 advised Steinberg to hire a forensic accountant to review EGC's financials prior to joining EGC. *Id.* ¶ 168(d).

In May 2008, EGC accepted Lord Steinberg as Executive Chairman. Lord Steinberg selected his business and social friends Christiansen, Donovan, Farrell, and Houssels to serve as directors and officers of EGC. Lord Steinberg served as EGC's executive chairman from September 2, 2008 until his death on November 2, 2009. While

on the board, he chaired the Audit, Executive Compensation, and Nominations committees. During his time with the company, he owned between 5% and 16% of EGC's stock. *Id.* ¶¶ 32-34, 50(g).

### iii. Christiansen

Christiansen was a company director from September 2008 through the end of the class period. After Lord Steinberg passed away on November 2, 2009, Christiansen was appointed to serve on the two-person Interim Office of the Chairman of EGC. *Id.* ¶ 36.

### iv. Donovan

Donovan served as EGC's CEO and company director from February 1, 2009 through the end of the class period. After Lord Steinberg passed away, Donovan served with Christiansen on EGC's Interim Office of the Chairman of the Company. *Id.* ¶ 29.

Plaintiffs allege that Donovan made some of the misleading statements at issue, specifically statements in 2009 regarding EGC's finances in EGC earnings conference calls and press releases. *Id.* ¶¶ 111-113, 120, 128-132. Plaintiffs also allege that Donovan violated the Sarbanes-Oxley Act by not certifying some of EGC's SEC filings. *Id.* ¶ 119, 127.

### v. Houssels

Houssels was previously Lord Steinberg's real estate agent in Las Vegas. She served as a company director starting from September 2008 and as Executive Vice President of Sales starting from February 1, 2009 until she resigned on February 21, 2010. Her compensation as executive vice president was an annual salary of $375,000 and 1.5 million shares of EGC stock, compared to Donovan's $250,000 annual salary as CEO and Christiansen's salary of $150,000 salary. She served on the Executive Compensation and Nominations committees. Through her encouragement, in 2009, EGC's U.S. "offices" (a mailbox) was moved to an Irvine, California mail drop, close to where Houssels and Donovan operated from their Orange County residences. *Id.* ¶¶ 37, 50(i)-(j).

### vi. Farrell

Farrell served as a company director starting from October 2, 2008 until he resigned on October 28, 2009. During his tenure, he served on the Audit Committee. *Id.* ¶¶ 38, 40.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-0252-DOC (RNBx)　　　　　　　　　　　　　　　　　Date: February 5, 2015
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 7

In December 2008, CW1 advised Farrell to conduct a forensic examination of EGC's financial statements. CW1 is not aware if any forensic examination took place. *Id.* ¶ 168(d).

### B. Procedural History

Plaintiffs originally filed this lawsuit on March 2, 2010. Compl. (Dkt. 1). Plaintiffs filed a Consolidated Amended Complaint on September 13, 2010 (Dkt. 22). On January 12, 2011, the Court granted in part and denied in part Defendants' motion to dismiss the Consolidated Amended Complaint (Dkt. 80). The Court dismissed Plaintiffs' then-existing Section 10(b) and Rule 10b-5 claims against Donovan, Christiansen, Houssels, and Farrell for failure to state a claim, but held that Plaintiffs adequately pled their control person status.

Plaintiffs filed a Consolidated Second Amended Complaint ("SAC") on February 11, 2011 (Dkt. 83). In the SAC, Plaintiffs declined to reassert their Section 10(b) and Rule 10b-5 claims against Christiansen, Houssels, and Farrell, but did reassert this claim against Donovan. On May 26, 2011, the Court dismissed Plaintiffs' Section 10(b) and Rule 10b-5 claim against Donovan with prejudice (Dkt. 121). On October 19, 2011, the Court dismissed Plaintiffs' Section 10(b), Rule 10b-5, and Section 20(a) claims against Cole and Boyne without prejudice (Dkt. 184).

Plaintiffs filed the Consolidated Third Amended Complaint on November 21, 2011 (Dkt. 189). On March 6, 2012, the Court granted Cole's motion to strike certain paragraphs of the TAC that were drafted based on information that Plaintiffs had subpoenaed from M&B, EGC's auditor. The Court held that the discovery stay provisions of the Private Securities Litigation Reform Act (PSLRA) prohibited the use of those materials. Order Granting Motion to Strike and Motions to Dismiss, Mar. 6, 2012 (Dkt. 216), at 3-5. With those paragraphs stricken, the Court held, the TAC did not adequately plead violations of Section 10(b) or 20(a) of the Exchange Act. *Id.* at 5.

The Court's March 6, 2012 Order was subsequently reversed by the Ninth Circuit. The Ninth Circuit held that Plaintiffs did not violate the PSLRA discovery stay by using the documents received from M&B because the subpoena was issued at a time when no motion to dismiss was pending and thus no discovery stay was in place. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 968-70 (9th Cir. 2014). The Ninth Circuit also held that the TAC adequately pled falsity and scienter as to Cole and Boyne. The Ninth Circuit declined to reach the question of whether the TAC alleged facts establishing that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-0252-DOC (RNBx)                                                 Date: February 5, 2015
                                                                                                                             Page 8

Control Person Defendants acted in good faith because this Court had not yet decided the question in the first instance. *Id.* at 971.

On remand, the Control Person Defendants filed the instant Motions seeking to dismiss the Section 20(a) claims against them on the grounds that the TAC does not adequately allege control person status and that the allegations in the TAC establish that the Control Person Defendants acted in good faith.

## II.     Legal Standard

### A. Motion to Dismiss and Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009); *see also ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). "If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *ASARCO*, 765 F.3d at 1004 (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)).

A Rule 12(c) motion for judgment on the pleadings follows the same standard as a motion to dismiss. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-0252-DOC (RNBx)                                                                          Date: February 5, 2015
                                                                                                                                                      Page 9

### B. Control Person Liability Under Section 20(a) of the Exchange Act

Section 20(a) of the Securities Exchange Act of 1934 provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

To state a claim for control person liability, the plaintiff must allege (1) a primary violation of the federal securities laws, and (2) facts sufficient to show that the defendant had the authority to exercise power or control over the primary violator. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). "Whether [the defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Id.* (alteration in original). "[A]n individual's status as an officer or director of the issuing corporation is insufficient, standing alone, to demonstrate the exercise of control." *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008). In general, "an officer or director who has signed financial statements containing materially false or misleading statements qualifies as a control person." *Id.*

"To establish the liability of a controlling person, the plaintiff does not have the burden of establishing that person's scienter distinct from the controlled corporation's scienter." *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1398 (9th Cir.1993). However, a control-person defendant may assert a good faith defense if he can show lack of scienter and effective lack of participation. *Howard*, 228 F.3d at 1065.

### III. Discussion

The Control Person Defendants argue that Plaintiffs' Section 20(a) claims should be dismissed because Plaintiffs' boilerplate allegations of the Control Person Defendants' control person status are too sparse and conclusory to satisfy Rule 8 and Plaintiffs have "pled themselves out of court" because their allegations demonstrate that the Control Person Defendants acted in good faith. Resolution of their Motions turns on (1) whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-0252-DOC (RNBx)                                          Date: February 5, 2015
                                                                                                                                Page 10

the TAC alleges a lack of scienter as to each of the Control Person Defendants and (2) whether the TAC adequately alleges each Control Person Defendant's participation.

### A. Lord Steinberg and Farrell

Lord Steinberg and Farrell are alleged to have received tips from CW1 in 2008 that they should examine EGC's financial statements because the statements were not as they should be. TAC ¶ 168(d). Although it is not clear from the allegations whether CW1 was telling them specifically about the 2002 Secret Agreement or the Credit Suisse account (the underlying conduct that would have made EGC's financial statements false or misleading), under Rule 8, these allegations are sufficient to raise a question as to whether Lord Steinberg and Farrell had scienter regarding the falsity of EGC's financial statements. Thus, dismissal of Plaintiffs' claims against them at the motion to dismiss stage based on their affirmative good faith defense is inappropriate.

Additionally, Lord Steinberg and Farrell are alleged to have served as EGC's directors on the Audit Committee with Boyne and Cole. The Audit Committee was responsible for reviewing EGC's financial statements with management and with EGC's auditors. *Id.* ¶¶ 40-41. These allegations are sufficient to allege Lord Steinberg's and Farrell's control person status.

Accordingly, Lord Steinberg's and Farrell's Motions are DENIED.

### B. Donovan

Donovan, who served as CEO and director and eventually an interim co-chair of EGC, is alleged to have made some of the allegedly false and misleading statements about EGC's finances on earnings calls and press releases. *Id.* ¶¶ 111-113, 120, 128-132. Actually making the statements is analogous to signing financial statements, which is generally held to be sufficient to demonstrate control person status. *See In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d at 1037. Accordingly, Plaintiffs have adequately pled a Section 20(a) claim against Donovan and dismissal of the claim based on Donovan's affirmative good faith defense is not appropriate at the pleading stage.

Therefore, Donovan's Motion is DENIED.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-0252-DOC (RNBx)                                Date: February 5, 2015

                                                                                                                      Page 11

### C. Christiansen and Houssels

Unlike for Steinberg, Farrell, and Donovan, there are no specific allegations suggesting that Christiansen and Houssels had scienter or that they were directly involved in the alleged securities fraud. There are only general allegations that the "[e]ach of the Individual Defendants" (including Christiansen and Houssels) was involved in the day-to-day management of EGC; "was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements"; "was aware or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company"; and "approved or ratified these statements in violation of the federal securities laws." *Id.* ¶ 47; *see also id.* ¶ 192 ("[T]he Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading.").

Although the Court is not fond of group pleading or over-use of conjunctions to make overly broad statements, these allegations are specific enough to raise a plausible claim that Christiansen and Houssels had scienter and had day-to-day involvement in and control over EGC's operations, including the production and dissemination of the allegedly false and misleading statements. *See In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d at 1037 (sustaining Section 20(a) claims based on allegations that individual defendants "held positions of control, and that they "participated in drafting, preparing, and/or approving public reports and other statements and communications complained of").

Houssels argues that her "noisy" letter of resignation from EGC, dated January 25, 2010 and filed with the SEC on April 8, 2010, demonstrates her lack of control over EGC because she complained about her inability to get clarification on various issues, including bank confirmations. Houssels Mot. (Dkt. 232-1) at 10; Declaration of Sara M. Folchi, Ex. A (Dkt. 234-1). At most, this letter only raises a dispute of fact.

Accordingly, Plaintiffs have adequately pled Section 20(a) claims against Christiansen and Houssels and dismissal of these claims based on Christiansen's and Houssels's affirmative good faith defense is not appropriate at the pleading stage. Therefore, Christiansen's and Houssels's Motions are DENIED.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-0252-DOC (RNBx)                      Date: February 5, 2015

                                                                                                                                 Page 12

## IV. Disposition

For the foregoing reasons, the Court DENIES Christiansen's, Donovan's, Farrell's, and Houssels's Motions to Dismiss and Lord Steinberg's Motion for Judgment on the Pleadings.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                                  Initials of Deputy Clerk
CIVIL-GEN